Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

|  |  |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated, | |
| Plaintiff | Case No. 3:25-cv-00396-SI |
| vs. | |
| DABELLA EXTERIORS LLC | |
| Defendant. | OPPOSITION TO DEFENDANT'S MOTION TO DISMISS TCPA (47 U.S.C. § 227) DEMAND FOR JURY TRIAL |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS

## I.  INTRODUCTION

Defendant DaBella Exteriors LLC's (DaBella or Defendant's) motion, though it cites a non-binding opinion of this Court, has been superseded by a wealth of subsequent authority which confirms that there exists a private right of action for the Plaintiff's Caller ID claims. And, because the Plaintiff requested the calls to stop by filing this lawsuit, but received a call anyway, the Plaintiff adequately pleads a violation of the TCPA's internal Do Not Call provisions. Defendant's motion should therefore be denied in its entirety.

## II.  FACTUAL BACKGROUND

The Plaintiff filed the instant Amended Complaint alleging violations of the Telephone Consumer Protection Act for unsolicited calls and text messages which Defendant placed to his number on the National Do Not Call Registry. The Defendant has filed a Motion to Dismiss, or in the alternative, to strike class allegations. This response follows.

## III.  LEGAL STANDARD

"The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)." *Matthews v. Mid City Cannabis Club, Inc.*, No. CV 20-07841 PA (JPRx), 2021 WL 1567496, at *2 (C.D. Cal. Mar. 2, 2021). Indeed, as it noted, "[t]he Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing a Rule 12(b)(6) motion to dismiss, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

1

Opposition to Motion to Dismiss

To overcome such a challenge, a plaintiff's "factual allegations in the complaint must suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010). With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party and deny the motion if there are any doubts. *Id.*

## IV.   ARGUMENT

A.    *There exists a private right of action for the TCPA's Caller ID regulations. Subsequent decisions have called* Griffin *into question.*

As DaBella correctly points out, last year, this Court considered *Griffin v. Am.-Amicable*

Opposition to Motion to Dismiss

*Life Ins. Co. of Texas*, where this Court concluded that 47 C.F.R. § 64.1601(e) does not create a private right of action under 47 U.S.C. § 227(c)(5). No. 6:24-CV-00243-MC, 2024 WL 4333373, at *5 (D. Or. Sept. 27, 2024). At least *five* subsequent court decisions from *three* jurisdictions, including Washington, have confirmed that this Court's prior reasoning in *Griffin* was incorrect, including because that decision relied on fundamentally faulty reasoning employed by the District of Maryland in *Worsham v. Travel Options, Inc.*, No. 14-2749, 2016 WL 4592373, at *4-5 (D. Md. Sept. 2, 2016). *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025) (holding 47 C.F.R. § 64.1601(e) confers a private right of action under Section 227(c) of the TCPA) [hereinafter *Dobronski*]; *Newell v. JR Cap., LLC*, -- F. Supp.3d --, 2025 WL 2004706, at *2 (E.D. Pa. July 16, 2025); *Dobronski v. CHW Grp., Inc.*, 2025 WL 2426370, at *7 (E.D. Mich. Aug. 21, 2025); *Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265, at *11 (E.D. Mich. Sept. 17, 2025); *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136, at *5 (W.D. Wash. Oct. 9, 2025).

The issue with this Court's ruling in *Griffin* lies in the fact that it did not consider under which section of the TCPA the subject regulation, 47 C.F.R. § 64.1601(e), was promulgated, nor did it reach its conclusion independently. Instead of tussling with the statute and analyzing it, as in *Dobronski* and its progeny, it simply rested on persuasive authority from other courts which themselves relied on faulty and underdeveloped reasoning and did not engage in extensive analysis as to the precise genesis of this right of action, which is 47 U.S.C. § 227(c), not 47 U.S.C. § 227(d), which contains no private right of action. As best Plaintiff can discern, *Dobronski* was the first court to engage in such analysis, which the *Newell* and subsequent courts credited, including this Court's sister in the Western District of Washington.

As a codified federal regulation dealing with "telemarketing," and with explicit

Opposition to Motion to Dismiss

references to the definitions promulgated under the TCPA in 1991 in 47 C.F.R. § 64.1200(f)(13),

this particular regulation must have been promulgated under *some* part of the TCPA. "It is

axiomatic that an administrative agency's power to promulgate legislative regulations is limited

to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208

(1988). In this regard, only a handful of subsections of the TCPA allow for the promulgation of

regulations:

> • § 227(b)(2) authorizes the FCC to implement requirements that relate to the use of prerecorded voices and automatic telephone dialing systems;
> • § 227(c) authorizes the FCC to promulgate rules relating to the "need to protect residential telephone subscribers' privacy rights";
> • § 227(d)(1)–(3) allow regulations relating to technical and procedural standards related to fax machines, automatic telephone dialing systems, and "systems that are used to transmit any artificial or prerecorded voice message";
> • § 227(e)(3) provides for regulations relating to misleading or inaccurate caller ID; and
> • § 227(i) allows for the FCC to promulgate regulations to streamline information sharing with the FCC related to violations

*Dobronski*, 773 F. Supp. 3d at 376. As the Court observed in *Dobronski*, all but § 227(c)

are quickly eliminated as not even remotely applicable to the statutory provision here. The

statutory provision at issue here could not have been promulgated pursuant to Section 227(d),

because that Section relates only to fax machines and automatic telephone dialing systems, not to

telemarketing calls in general, just as Section 227(b), which is inapplicable for identical reasons.

Section 227(e)(3), though it deals with Caller ID, was enacted *after* § 64.1601(e), so that's out.

And, finally, the transmission of accurate caller ID name has nothing to do with information

sharing with the FCC relating to violations contained in Section 227(i). *Id.*

The problem with *Griffin* is that it places too much reliance on the District of Maryland's

holding in *Worsham*. And, though that decision eliminated Section 227(c) of the TCPA as a

possible source of promulgation authority on questionable logic, *Worsham* did not consider what

*alternative* section the subject regulation was promulgated under. *Worsham* impermissibly

4

presumed either that the language in the regulation was promulgated under a different subsection

without explanation, or no subsection at all, which is an impossibility since language in a

regulation cannot "conjure up a private cause of action that has not been authorized by Congress.

Agencies may play the sorcerer's apprentice but not the sorcerer himself." *Alexander v.*

*Sandoval*, 532 U.S. 275, 291 (2001). As the *Newell* Court explained:

> In my view, *Worsham* misunderstands the structure of the statute. In § 227(c), Congress
> explicitly delegated to the FCC the authority to evaluate different methods and
> procedures to protect privacy rights – including network technologies – and issue
> appropriate regulations. If § 64.1601(e) is promulgated as a "method or procedure" to
> "protect residential telephone subscribers' privacy rights," it fits under § 227(c) and a
> private cause of action exists. And the administrative record establishes that the FCC
> viewed caller ID as a "network technology" that Congress *required* the FCC to evaluate
> as a method and procedure to protect consumer privacy under § 227(c). Thus, caller ID
> fits into § 227(c), even if (c) does not mandate that the FCC adopt technological methods
> and authorizes non-technological methods and procedures as well. *See also Dobronski*,
> 773 F.Supp.3d 373 (concluding, on a motion for reconsideration, that § 64.1601(e) was
> promulgated under § 227(c), and rejecting *Worsham*'s technology-focused arguments).

> Further, § 227(d) only applies to telemarketing made using specific technologies – fax
> machines, automatic telephone dialing systems, and artificial and prerecorded voice
> messages – whereas § 64.1601(e) applies to a broader range of telemarketing calls,
> including traditional manually dialed telemarketing calls. The Third Circuit has cautioned
> that "our starting point [in regulatory interpretation] is to attempt reconciliation of
> seemingly discordant statutes and regulations." *LaVallee Northside Civic Ass'n v. Virgin
> Islands Coastal Zone Mgmt. Comm'n*, 866 F.2d 616, 623 (3d Cir. 1989). It is difficult to
> discern how § 64.1601(e) could have been lawfully promulgated under § 227(d) without
> exceeding the FCC's delegated authority. Section 64.1601(e) thus fits best under §
> 227(c), not (d).

> *Worsham* does not grapple with these issues, but attempts instead to have §
> 64.1601(e) straddle two sections of the statute, an outcome for which I can discern no
> legal authority. The regulation fits comfortably within § 227(c), which supports the
> existence of a private right of action.

*Newell*, 2025 WL 2004706, at *5. Both the decisions in *Newell* and *Dobronski* are

supported by the legislative history under which the instant subsection was enacted. The subject

regulation here, 47 C.F.R. § 64.1601(e), was promulgated in 2003 under rulemaking Congress

explicitly authorized when it passed the Do Not Call Implementation Act of 2003, 15 U.S.C. §

Opposition to Motion to Dismiss

6153 ("2003 Act"), which related to *consumer privacy*, the mainstay of Section 227(c).

Pursuant to that mandate, the FCC began a rulemaking proceeding that expressly sought comment on whether "network technologies have been developed over the last decade," and which ultimately resulted in an order promulgating the implementation and incorporation of the instant caller ID legislative rule, as well as Do Not Call Registry rules. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14118. As the FCC explained in that 2003 TCPA Order rulemaking proceeding, "The new rules will also require all companies conducting telemarketing to transmit caller identification (caller ID) information, when available, and prohibits them from blocking such information." *Id.* at 14017. "[T]he 2003 FCC [TCPA O]rder applies to section 227(c). . . . Therefore, Radvansky may bring a case." *Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1321, 1321 n.3, n.4 (N.D. Ga. 2024).

DaBella extensively cites to the 2003 TCPA Order and its evaluation of "***every single requirement*** in 47 U.S.C. § 227(c)(3)," and concludes this means "that the statutory requirements were satisfied." (MTD at 12) (emphasis original). But DaBella neglects to mention that the 2003 TCPA Order is the *very same Order* that established *both* the Do Not Call regulations contained at 47 C.F.R. § 64.1601(c)(2) *and* the Caller ID regulations contained at 47 C.F.R. § 64.1601(e), under which Plaintiff sues and DaBella challenges. Indeed, in its summary, the FCC stated that "These new rules establish a national do-not-call registry, set a maximum rate on the number of abandoned calls, require telemarketers to transmit caller ID information, and modify the Commission's unsolicited facsimile advertising requirements." 2003 TCPA Order at 44144. Given that DaBella *concedes* that the 2003 TCPA Order appropriately promulgated the TCPA's Do Not Call Regulations, it is simply illogical that the *very same document*, the 2003

Opposition to Motion to Dismiss

TCPA Order, did not similarly and simultaneously promulgate the TCPA's caller ID regulations. Since DaBella concedes a private right of action exists for DNC violations, and both regulations were promulgated in the same order under the same authority, it would be incongruous to find a right of action for only one, or hold they were promulgated under different authority.

And contrary to DaBella's statement that the FCC did not "mention *any* authority it relied on in enacting the Caller ID rules," (MTD at 12) (emphasis original), the FCC *explicitly tied* the Caller ID requirements at issue here to the TCPA's private right of action in Section 227(c), reasoning that "Caller ID requirements will improve the ability of consumers *to identify and enforce* do-not-call rights against telemarketers. . . . Consumers are frustrated by the failure of many telemarketers to transmit caller ID information, which, under certain circumstances, *makes it difficult for consumers to enforce* the TCPA." *Id.* at 14068, 14118 (emphasis added). The 2003 TCPA Order references Section 227(c) no fewer than *54 times* and only one other section, Section 227(d), only *once*, in the context of a 1997 regulation requiring fax broadcasters to print their information on fax messages. *Id.* at 14134. It references no other section of the TCPA as authority for the regulations it promulgated. The FCC appropriately concluded that, pursuant to its authority *under Section 227(c) of the TCPA*, "the caller ID requirements at 47 C.F.R. § 64.1601(e) will go into effect on January 29, 2004." *Id.* at 14143. There can be no question, therefore, that the FCC promulgated the instant regulation under its authority under Section 227(c) of the TCPA, which required the FCC to promulgate privacy regulations.

DaBella's related attempts to classify the subject provision as a "rule," and not a "regulation" prescribed under Section 227(c), is similarly perplexing. (MTD at 12, 12 n.4.) It is well established that Congress intends both terms to have synonymous, coterminous meanings. 1 C.F.R. § 1.1 ("*Regulation* and *rule* have the same meaning."); *Nat'l Treasury Emps. Union v.*

Opposition to Motion to Dismiss

*Weise*, 100 F.3d 157, 160 (D.C. Cir. 1996) ("Courts and Congress treat the terms "regulation"

and "rule" as interchangeable and synonymous."). DaBella thus identifies a distinction without a

difference. The FCC relied on Section 227(c) to enact the Caller ID provision, as it had authority

to do thereunder. No recasting of synonymous terms alters that conclusion, nor does the FCC's

summarization thereof. *See N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 307 (2017) (holding that

lawmakers' statements are "among the least illuminating forms of legislative history"). What

matters is that the instant regulation was promulgated under Section 227(c), and 47 U.S.C. §

227(c)(5) provides a private right of action for any person who has "received more than one

telephone call . . . in violation of *the regulations* prescribed *under this subsection*." The caller ID

regulations are one such regulation. 47 C.F.R. § 64.1601(e). The Do Not Call registry regulations

are another. 47 C.F.R. § 64.1200(c)(2), And neither of those regulations expressly tie back to the

text of 47 U.S.C. § 227(c)(5) or its private right of action.

      As the *Dobronski* Court observed in commenting on the history of the TCPA, its

prescription of regulations, and distinguishing *Worsham*:

> [T]he regulatory history further buttresses its view. In an early rulemaking proceeding under
> the TCPA, the FCC noted that the TCPA directed it to consider a "number of alternatives for
> residential telephone subscribers to avoid receiving unwanted telephone solicitations ...
> includ[ing] a national database, network technologies, special directory markings, time of
> day restrictions, and industry-based or company-specific do-not-call lists." *In the Matter of
> Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752,
> 8758 (1992). There can be little doubt that that direction came from § 227(c). *See* 47 U.S.C.
> § 227(c)(1)(A) (directing the FCC to "compare and evaluate alternative methods and
> procedures [including the use of electronic databases, telephone network technologies,
> special directory markings, industry-based or company-specific "do not call" systems, and
> any other alternative]"). Then, in evaluating those alternatives, the FCC identified the lack
> of widespread caller ID as a barrier to cost-effective network technology implementation. *In
> the Matter of Rules*, 7 F.C.C. Rcd. at 8761.
>
> In 2003, the FCC referred back to the discussion from above, and then it: expressly sought
> comment on whether "network technologies have been developed over the last decade,"
> specifically asked "whether to require telemarketers to transmit the name and telephone
> number of the calling party," assessed caller ID's effectiveness and efficiency in supporting

Opposition to Motion to Dismiss

consumer privacy rights, and "determined to require all sellers and telemarketers to transmit caller ID information." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14118–21 (2003). It elsewhere concluded that "Caller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers." *Id.* at 14068. The agency record thus suggests that caller ID requirements are a telephone network technology or other alternative that the FCC required in an attempt to help consumers enforce their privacy rights against telemarketers. . . . .

In *Travel Options*, the court determined that § 64.1601(e) was promulgated to enforce § 227(d), which lacks a private right of action, because § 64.1601(e)'s caller ID requirement resembles "technical and procedural standards." In doing so, the court noted that the outcome was "not clear." To be sure, § 227(d) is titled "Technical and Procedural Standards," and it is not unreasonable to think that caller ID is "technical" or "procedural." But slotting § 64.1601(e) into § 227(d) on that basis is a little odd, given that § 64.1601(e) focuses on caller ID requirements for all telemarketing calls, and § 227(d) by its own terms governs only fax machines, automatic telephone dialing systems, and artificial or prerecorded voice systems. . . . By contrast, § 227(c) focuses on privacy rights generally and also spoke in terms of "methods and procedures" as well as "telephone network technologies" as mechanisms to protect subscriber privacy rights. . . . But it does not follow that the FCC could not promulgate technology-focused rules (like a caller-ID requirement) under § 227(c)'s "telephone network technologies" language merely because it could also protect subscriber privacy rights in other, non-technological ways. . . . And it is not intuitive why the fact that a rule directly supports § 227(c)'s goals by employing a network technology and "will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers" bolsters the notion that § 64.1601(e) was not promulgated under the statute's subsection focused on protecting privacy rights. The Court sees no textual basis to carve from regulations that "protect" privacy rights those that merely "support" consumers' ability to enforce their rights—i.e., privacy rights are protected in part because wrongdoers are prohibited from hiding behind anonymity. At bottom, subsection 227(c) lets the FCC make rules to protect privacy rights and lets consumers sue when telemarketers violate those rules; § 64.1601(e) is a rule that helps protect privacy rights. *Travel Options's* influential inference seems to run uphill. . . . The other cases add little because they largely rely on *Travel Options* or on each other. . . . Those cases provided little analysis beyond that performed in *Travel Options*.

*Dobronski*, 773 F. Supp. 3d at 377–78.

The Defendant's argument must also fail because, in the 2003 Act, at 15 U.S.C. § 6153, Congress *explicitly* delegated authority to the FCC to promulgate regulations relating to the newly-created National Do Not Call Registry "under the [TCPA]," and the FCC did so by initiating a rulemaking proceeding under subsection (c), the only appropriate subsection dealing with "consumer privacy." *Dobronski*, 773 F. Supp. 3d at 377. The header of Section 1601

Opposition to Motion to Dismiss

addresses "privacy restrictions." Critically, *the FCC also promulgated Section 1601 in the same Order as Section 64.1200(c)*, as outlined above. As *Dobronski* counsels, "That places § 64.1601(e) in the heartland of § 227(c), and thus supports the conclusion that the former was prescribed under the latter and benefits from § 227(c)(5)'s private right of action."

Nor is Section 227(c) of the TCPA solely limited to regulations regarding the Do Not Call Registry, as DaBella seems to insinuate (MTD at 12-13), but also encompasses other regulations protecting consumer privacy, some of which date back to the TCPA's 1991 enactment, including calling hours restrictions and company-specific do-not-call rules. It is evident that, like those rules, the instant Caller ID regulations further the goals of protecting consumer privacy by, *inter alia*, empowering consumers to lodge do not call requests with specific, identifiable companies. A review of 47 U.S.C. § 227(c)(1)(D) confirms that Congress explicitly contemplated and authorized the FCC to "consider whether there is a need for *additional Commission authority* to further restrict telephone solicitations, including those calls exempted under subsection (a)(3) of this section, and, if such a finding is made and supported by the record, *propose specific restrictions to the Congress*." In other words, no part of 47 U.S.C. § 227(c) is limited to the Do Not Call Registry, as incorrectly presumed by this Court in *Griffin*, relying on that same incorrect assumption in *Worsham*.

Given that the 2003 TCPA Order was the *very same Order* that established the National Do Not Call Registry in Section 64.1200(c), under which DaBella concedes there is a cause of action, it would be incongruous to hold that it created a private right of action for the DNC requirements but at the same time failed to create them for the caller ID requirements in Section 64.1601(e). And under the 2003 Congressional mandate, the FCC promulgated the instant regulation, 47 C.F.R. § 64.1601(e), pursuant to its authority *under* the TCPA, and pursuant to the

Opposition to Motion to Dismiss

*explicit authority* Congress in 2003 gave the FCC to conduct rulemaking *"under"* the TCPA, not just with respect to the Do Not Call Registry, as Defendant claims, but the other consumer privacy rulemaking Congress empowered the FCC to promulgate. 15 U.S.C. § 6153; s*ee also Siringi v. Parkway Fam. Mazda/Kia*, No. CV H-23-1499, 2023 WL 7130867, at *2 (S.D. Tex. Oct. 30, 2023) ("The Federal Communications Commission promulgated 47 C.F.R. § 64.1200 under its authority to implement the Telephone Consumer Protection Act."). Reading the 2003 Act as empowering regulations *under the TCPA's Section 227(c)* fits with how statutes, amendments, and administrative rulemaking works–the authorizing statute does not become the base statute or amendment, nor does the authorized rule. *See Alexander*, 532 U.S. at 286, 291 (explaining genesis of a right of action). And it is the plain meaning evident from the text.

There is simply no other statutory subsection "under the TCPA" upon which Congress could direct the FCC to promulgate the Caller ID regulations it ordered the FCC implement (including to align with the FTC), the entire purpose of which is to permit consumers to *lodge their objections against unsolicited telemarketing calls*. There exists a private right of action for violations of 47 C.F.R. § 64.1601(e) (as with 64.1200(c) and (d)), as Congress intended under 47 U.S.C. 227(c)(5). DaBella counters that "Some Courts have thus held that the Caller ID rules were established by the FCC pursuant to 47 U.S.C. § 227(d), which prescribes "[t]echnical and procedural standards," but does not create a private right of action." (MTD at 13). But that's wrong, as *Dobronski* explains, 773 F. Supp. 3d at 378:

> To be sure, § 227(d) is titled "Technical and Procedural Standards," and it is not unreasonable to think that caller ID is "technical" or "procedural." But slotting § 64.1601(e) into § 227(d) on that basis is a little odd, given that § 64.1601(e) focuses on caller ID requirements for *all telemarketing calls*, and § 227(d) by its own terms governs only fax machines, automatic telephone dialing systems, and artificial or prerecorded voice systems.

Opposition to Motion to Dismiss

*Meyer* is distinguishable and problematic for the same reasons as *Worsham* and *Griffin*, because it concludes that the Caller ID regulations were not promulgated pursuant to Sections 227(b) or (c) of the TCPA, without adequately addressing what alternative provision of the TCPA it was promulgated under. *See Meyer v. Cap. All. Grp.*, No. 15-CV-2405-WVG, 2017 WL 5138316, at \*16-\*17 (S.D. Cal. Nov. 6, 2017). Equally applicable is the presumption that executive agencies do not create regulations absent an explicit authorization from Congress, *see Bowen*, 488 U.S. at 204, and it was in this respect that *Meyer* went astray, simply assuming that the FCC (impermissibly) created a rule in the absence of an explicit citation to promulgative authority. *Meyer's* implicit assumption, that the FCC can create § 64.1601(e) without a statutory home, is contrary to both *Bowen* and *Alexander*. It must rest on *some* subsection of § 227, and once subsections, (b), (d), (e), and (i) are eliminated, only (c) is left standing.

*Meyer* cites no authority, other than *Worsham*, for its questionable proposition that the FCC can somehow create a rule to somehow "support consumers' enforcement efforts under the TCPA's subsection c," without simultaneously incorporating, and indeed somehow purporting to sever, subsection c's associated and Congressionally-mandated private right of action. In any event, the FCC referenced Section 227(c) no fewer than *54 times*. The idea that the same order created private enforcement for the Do Not Call Registry but somehow did not create private enforcement for Caller ID regulations, when they were adopted in the same breath, in the same document, and under the same authority, finds no support in the law. *Meyer's* reading, that the instant regulation was somehow promulgated under the auspices of Section 227(c), and yet severed from that section's private right of action, is incongruous with the explicit text of the statute, the explicit remedy provided in 47 U.S.C. § 227(c)(5), and express Congressional intent. This Court should hold, as with *Dobronski* and its progeny, that a private right of action exists.

B.      *Plaintiff is a member of the internal DNC class and it should not be struck.*

As an initial matter, Defendant claims that the Plaintiff isn't a member of the class he

purports to represent because he allegedly did not previously ask for the calls to stop. (MTD at

17). If that is the case, then why did the Plaintiff file this lawsuit? Though it is questionable that

the Plaintiff did not previously explicitly request that the calls stop as an initial matter, as he

called DaBella to cancel the investigative appointment and indicated the same,[1] this *lawsuit itself*

demonstrates that the Plaintiff doesn't want to receive calls from DaBella. This is exactly the

same situation under which the Court *certified* the class in *Mantha v. QuoteWizard.com, LLC*,

347 F.R.D. 376, 386-87 (D. Mass. 2024), rejecting Defendant's very argument:

> QuoteWizard alleges that Verkhovskaya's testimony should be rejected because her
> process failed to identify Mantha, whom she manually added to the Class List. . . . Of
> course, Mantha did not send such a [STOP] text. He nevertheless falls within the
> proposed Class Definition and, as explained below, qualifies as a proper representative
> party. . . . Mantha fits within the proposed Class Definition because (a) his telephone
> number was listed on the NDNCR, (b) he received more than one telemarketing text
> within a twelve-month period from Drips, (c) to promote the sale of QuoteWizard's
> goods or services, and (d) his number is on the Class List. It is irrelevant, for typicality
> purposes, that he was added to the Class List manually if he otherwise satisfies the Class
> Definition.

In *Mantha*, the defendant's calling records were analyzed to create a class list of "opt

out" individuals. *Id.* Because the plaintiff "did not send such a text," defendants argued that

plaintiff was atypical of the other members, who had opted out. But Court went on to explain

that this argument, which Defendant here raises, "conflates the proposed Class Definition with

the methodology used to narrow the Class List." *Id.* at 394 (cleaned up). "Though [his] number

---

[1] DaBella can't seem to take "no" for an answer. Instead of cancelling the appointment, DaBella instead dispatched salesmen to the Plaintiff's home on the date of the cancelled appointment anyway. It then dispatched two more salesmen to the Plaintiff's home on October 20, 2025, *during the pendency of this motion*, who remained at Plaintiff's door step for several minutes and were eventually trespassed from Plaintiff's property by the police.

Opposition to Motion to Dismiss

was not in [Defendant's] DNC files, that is because he *expressed his desire for the texts to cease by suing*, rather than texting back." *Id.* (emphasis added). Just as here, even assuming, *arguendo*, that the Plaintiff did not explicitly opt out, he expressed his desire for the communications to cease by suing. That is just as good, if not better, than an explicit request that the calls stop.

Equally specious is the Defendant's contention that the Plaintiff did not receive "more than one," i.e. "two or more" telemarketing calls or text messages in a 12-month period. The Plaintiff has unquestionably pled that he received *multiple calls* from the same entity-Defendant DaBella-within a twelve-month period, in violation of the TCPA's regulations, precisely as the statute requires. 47 U.S.C. § 227(c)(5). No part of that statute purports to require that multiple calls violate the TCPA in the exact same way, but merely that the Plaintiff have received (1) multiple calls, and that (2) at least one of those calls violates at least one of the provisions "promulgated" thereunder. DaBella's argument relies on a faulty reading of the statute that injects a requirement that is not there and thus relies on an unsupported legal premise by adding words Congress didn't use. The subject provision, 47 U.S.C. § 227(c)(5), provides a right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." The statute sets out two distinct conditions, a numerosity gate – "more than one telephone call" from the same entity within 12 months, and a violations gate – at least one call in "violation of the regulations" under § 227(c). Nothing in the text says that any of the calls must be the same "violation," or even that more than call violate the TCPA. If Congress had intended the threshold to be "more than one *violative* call *under the same regulation*," it knew how to say so. No part of that language requires that the calls all violate the same regulation. Were that the

Opposition to Motion to Dismiss

case, the statute would be worded differently, making clear that a person must receive "more than one *violative* telephone call *under the same regulation*."

The syntactic structure supports Plaintiff's reading. As an initial matter, the structure fits § 227(c)(5)(B)'s remedial hook, as that section permits an action to recover a loss "from such *a* violation," singular, not plural, and damages are awarded "for each such violation." "[M]ore than one telephone call . . . by or on behalf of the same entity" states the numeric and source condition, and the postpositive modifier "in violation of the regulations" describes the actionable conduct within that series, without converting the numeric threshold into a "same violation" prerequisite. The ordinary reading is that the numerosity requirement ("more than one") stands on its own, and the violation clause identifies the various types of wrongful conduct that make the call(s) actionable, permitting, in layman's terms, "mixing and matching" calls and violations. Congress set a threshold of *calls* (not violations), then measures damages per violation once that threshold is crossed. Congress explicitly allowed recovery for even a single violation. Reading the statute to require two violations of the same type would erase the gatekeeping function (the "more than one call" prerequisite) by collapsing it into the violation element and would render "each such violation" needlessly redundant, in addition to contradicting the remedial hook under subsection (c)(5)(B), and would allow rampant exploitation of the TCPA by allowing defendants to change up their violations each time they called or by requiring all violations to be identical, both of which contravene the TCPA's remedial purposes.

Congress often uses a repeat-status gate to screen out certain cases and then ties liability or damages to each violation that occurs once the gate is crossed. This is most often seen in recidivist schemes, such as under the Gun Control Act. For example, in determining a sentence enhancement under 18 U.S.C. § 922(g), the fact of a prior conviction is not a separate element of

Opposition to Motion to Dismiss

the offense but is merely only a conditional threshold relevant to sentencing. *United States v. Santiago*, 268 F.3d 151, 154 (2d Cir. 2001). Once the government proves the repeat-status predicate, it can obtain an enhancement if it proves a present violation. It need not prove two such violations. *Id.* at 155-56. So too here. The statute has a numerosity gate and a violations gate. Reading the numerosity gate to demand two calls which have the same type of violations collapses distinct clauses, contrary to how courts read recidivist/threshold statutes. Put another way, consider a gym that posts a sign, "Anyone who has visited this facility more than once this month and violates the dress code or eats food on the premises will be fined." A patron need not break the dress code twice. The repeat visit requirement and violation requirement are two separate, independent conditions.

Applying that same reasoning to the Plaintiff's class definition, the class definition contains 5 elements, each of which must be met to be a member of the putative Internal DNC class. Each element stands independently. First, the Court will ask, at class certification, whether the Defendant (or a third-party acting on behalf of Defendant) sent two or more telemarketing calls or text messages in a 12-month period to each class member. Then, the Court will ask if the class member previously asked for the calls to stop. If both conditions are met, the class member is in, if not, they are out. And the Plaintiff is plainly a class member by that analysis. Defendant sent the Plaintiff multiple calls, and the Plaintiff had previously asked for the calls to stop. Thus, Plaintiff is part of the class he seeks to represent.

In any event, Defendant also seeks the wrong remedy. The proper remedy is to amend the class definition so that it is clearer and includes the plaintiff, if possible. That is precisely the approach that this Court took in *Murch* and the string citation of other authorities, including *Brown*, advanced by DaBella. Simply put, "[W]hen impermissible class allegations are stricken

16

Opposition to Motion to Dismiss

at this early stage in the litigation, plaintiffs should be given leave to amend their complaint to proceed." *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 (E.D. Mich. 2015). As such, even if the class somehow failed to include Plaintiff (and, to be sure, it does include Plaintiff), the right remedy is to rectify through amendment, not strike.

## V.    CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies as necessary.

RESPECTFULLY SUBMITTED AND DATED this November 11, 2025.

> s/Andrew Roman Perrong
> Andrew Roman Perrong, OSB No. 243320
> a@perronglaw.com
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> 215-225-5529
> Lead Attorney for Plaintiff and the Proposed Class

## <u>CERTIFICATE OF WORD COUNT</u>

This brief complies with the applicable page-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains fewer than 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: November 11, 2025.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.

Opposition to Motion to Dismiss

## **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically

send a copy to all attorneys of record on the case.

Dated: November 11, 2025          */s/ Andrew Roman Perrong*
                                  Andrew Roman Perrong, Esq.

Opposition to Motion to Dismiss