Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
SNELL & WILMER L.L.P.
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
Telephone:  503.624.6800
Facsimile:  503.624.6888
*Attorney for Defendant, DABELLA EXTERIORS, LLC*

Diane J. Zelmer, Esq. (pro hac vice)
FL Bar No. 27251
BERENSON LLP
4495 Military Trail, Suite 203
Jupiter, Florida 33458
Telephone: 561-429-4496
Email: djz@berensonllp.com
*Attorney for Defendant, DABELLA EXTERIORS, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br>　　　Plaintiff<br><br>vs.<br><br>DABELLA EXTERIORS LLC,<br><br>　　　Defendant. | Case No. 3:25-CV-00396-SI<br><br>REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATION |

# **TABLE OF CONTENTS**

Contents

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES .................................................................................................... iii

I.    Summary of Argument ................................................................................................ 1

II.    Memorandum of Law ................................................................................................. 2

   A.    THE COURT SHOULD DISMISS CLAIM II – ON BEHALF OF PLAINTIFF AND THE TELEMARKETING CALLER ID CLASS ...................................................... 2

   B.    THE COURT SHOULD STRIKE THE CLASS DEFINITION IN CLAIM III – THE INTERNAL DNC CLASS ................................................................................... 7

III.    Conclusion ................................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*Cannon v. Univ. of Chi.*, 441 U. S. 677 (1979) .................................................................................. 7

*Charvat v. GVN Michigan, Inc.*, 561 F.3d. 623 (6th Cir 2009) ........................................................ 8

*Cordoba v. DIRECTV, LLC*, 942 F.3d. 1259 (11th Cir 2019) ......................................................... 7

*Griffin v. Am.-Amicable Life Ins. Co. of Texas*, 6:24-CV-00243-MC, 2024 WL 4333373 (D. Or. Sept 27, 2024) ................................................................................................................. 1, 2, 4

*Hossfeld v. Am. Fin. Sec. Life Ins. Co.*, 544 F. Supp. 3d. 1323 (S.D. Fla. 2021) ........................... 8

*Loper Bright Enterprises v. Raimondo*, No. 22-1219, 603 U.S. 369 (June 28, 2024) .................... 7

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 US 146 (2025) ..................... 7

*Meyer v. Cap. All. Grp.,* 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) .............................. 1, 5, 6, 7

*Murch v. GPS Capital Markets, LLC*, 3:24-CV-01854-SB, 2025 WL 2770190 (D. Or. Sept 26, 2025) ......................................................................................................................................... 9

*Noviello v. Adam Wines Consulting, LLC,* 3:22-CV-52-BN, 2023 WL 2776696 (N.D. Tex.. Apr 4, 2023) ..................................................................................................................................... 8

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewi*s, 444 U.S. 11 (1979) ................................. 5

*Worsham v. LifeStation, Inc.*, 2021 WL 5358876 (Md. Ct. Spec. App. Nov. 17, 2021) ................ 5

*Worsham v. Travel Options, Inc.,* JKB-14-2749, 2016 WL 4592373 (D. Md. Sept 2, 2016), *aff'd,* 678 Fed Appx 165 (4th Cir 2017) ................................................................... 2, 3

**Statutes**

47 U.S.C. § 227 ............................................................................................................................... 5

47 U.S.C. § 227(c) ................................................................................................................. passim

47 U.S.C. § 227(d) ................................................................................................................. passim

**Rules and Regulations**

47 C.F.R. § 64.1601(e) .......................................................................................................... passim

*Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-79, 44150 ............................................................................................................. 4

REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE - iii

**Other Authority**

*In the matter of Advanced Methods to Target and Eliminate Unlawful Robocalls, Call Authentication Trust Anchor, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, and Dismissal of Outdated or Otherwise Moot Robocalls Petitions*, FCC 25-76, adopted October 28, 2025 (in comment phase)......................................................... 6

### I.     SUMMARY OF ARGUMENT

Plaintiff's response makes it very clear that there is **absolutely no _express_ provision** that creates a private right of action under 47 U.S.C. § 227(c) for violation of the Caller ID rules. Rather, Plaintiff requests this Court to jump through hoops to try to **_create_** a private right of action through process of elimination, and by mere conjecture through analyzing the number of citations to 47 U.S.C. § 227(c) in the same document. However, relying on "United States Supreme Court's principles of statutory construction," this Court rejected such purported concepts and instead declined "to create a private right of action where none was expressly created." *Griffin v. Am.-Amicable Life Ins. Co. of Texas*, 6:24-CV-00243-MC, 2024 WL 4333373, at *5 (D. Or. Sept 27, 2024) (citing *Meyer*, 2017 WL 5138316, at *16-17 (emphasis in original).

Further, while Plaintiff concedes that this Court already ruled in *Griffin* that no private right of action exists under Section 64.1601(e), he nevertheless raises the **_same arguments_** already considered and rejected by this Court. This Court *did* consider (i) whether or not Section 64.1601(e) was promulgated under 47 U.S.C. § 227(d), (ii) the fact that the rule was promulgated in the same document as the DNC rules, and (iii) other multiple references to 47 U.S.C. § 227(c) within the 2003 Rules. This Court, after thoughtful consideration, rejected those propositions, acknowledging that Section 64.1601(e) was implemented as an *enforcement* mechanism. Further, the fact that Section 227(d) does **_not_** create a private right of action for implementation of **_technical_** procedures emphasizes that Congress did not intend to create a cause of action for violation of technical rules implemented by the FCC, including the Caller ID rules.

Plaintiff's failure to plead that he submitted a request to Defendant to stop calling him is fatal to his Internal DNC Class. Moreover, Plaintiff's alleged mixed class of internal and DNC violations fails because he is not part of the class members who received "two or more calls" in

REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE - 1

violation of the internal DNC. Finally, although Plaintiff seeks to create a mixed class, his internal DNC class as pled is flawed; as such, at a minimum, Plaintiff's class must be re-defined.

For the foregoing reasons, the Court should dismiss Claim II and strike the class definition in Claim III of Plaintiff's First Amended Complaint.

## II. MEMORANDUM OF LAW

### A. THE COURT SHOULD DISMISS CLAIM II – ON BEHALF OF PLAINTIFF AND THE TELEMARKETING CALLER ID CLASS

Plaintiff rightfully concedes that this district court already ruled that 47 C.F.R. § 64.1601(e) does **not** create a private right of action. [ECF No. 27, 2-3]. Nevertheless, Plaintiff argues this Court's reasoning in *Griffin* was flawed, relying on the very *same* arguments that were raised and rejected in *Griffin,* 2024 WL 4333373 (D. Or. Sep. 27, 2024).

First, Plaintiff argues that this Court "did not consider under what section of the TCPA the subject regulation, 47 C.F.R. § 64.1601(e), was promulgated . . . ." [ECF no. 27, p. 3]. Plaintiff argues that the "genesis of this right of action, which is 47 U.S.C. § 227(c), not 47 U.S.C. § 227(d)." *Id*. However, this very same argument was presented to the Court in *Griffin*. There, Griffin specifically argued that 47 C.F.R. § 64.1601(e) could not have been promulgated under 47 U.S.C. § 227(d) because it only referenced this section twice in paragraphs dealing with junk faxes. *Griffin,* 2024 WL 4333373, [ECF No. 15, pp. 19]. Although certain courts[1] have held that 47 C.F.R. § 64.1601(e) was promulgated under 47 U.S.C. § 227(d), this Court did not do so; rather, this Court found that "the FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection c, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim." *Griffin,* 2024 WL 4333373, at *5 (citing *Worsham*,

---

[1] [ECF No. 24, p. 8] (citing *Worsham v. Travel Options, Inc.,* JKB-14-2749, 2016 WL 4592373, at *4 (D. Md. Sept 2, 2016), *aff'd,* 678 Fed Appx 165 (4th Cir 2017)).

REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE - 2

2016 WL 4592373, at *4-5) (emphasis in original). This thoughtful reasoning was adopted from the *Worsham* court in Maryland, *which was affirmed by the Fourth Circuit*, and stated:

> However, it is not clear whether § 64.1601(e) is promulgated under either subsection *b* or subsection *c* of the TCPA. Caller ID technology does not fit neatly into the focus of either subsection, neither of which requires the use of such technology to accomplish their respective purposes. Thus, it is also not clear whether a violation of § 64.1601(e) falls within the private right of action granted by subsection *b* or subsection *c*. **It seems just as likely that the FCC may have only intended to ensure consistency between its preexisting Caller ID regulations and its revised TCPA regulations and/or the FTC's regulations pertaining to telemarketing when the FCC promulgated § 64.1601(e); those efforts all occurred at the same time, in 2003**. Additionally, the FCC said, "Caller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers." 68 Fed. Reg. at 44,156. Therefore, the FCC's rule in § 64.1601(e) appears to support consumers' enforcement efforts under the TCPA's subsection c, rather than to create a separate mechanism upon which a consumer can make an actionable claim.

*Worsham*, 2016 WL 4592373, at *4 (D. Md. Sept 2, 2016), *aff'd*, 678 Fed Appx 165 (4th Cir 2017) (e.s.). Therefore, Plaintiff's argument that "*Worsham* did not consider what alternative section the subject regulation was promulgated" [ECF No. 27, p. 4] is inaccurate, as the District of Maryland expressly stated that it considered both subsections *b* and *c*. In ultimately determining that the Caller ID rules were *enforcement* provisions, the *Worsham* court relied on the <u>express text of the 2003 rules</u>. Indeed, Plaintiff cites to the precise point made by *Worsham* that "the FCC's rule in § 64.1601(e) appears to support consumers' enforcement efforts under the TCPA's subsection c, rather than to create a separate mechanism upon which a consumer can make an actionable claim." *Compare Worsham.*, 2016 WL 4592373, at *4 (emphasis in original) with ECF No. 27, p. 7 ("Caller ID requirements will improve the ability of consumers *to identify* and *enforce* do-not-call rights. . . ."). This is the most logical conclusion given that the FCC never expressly identified the

legal authority it relied upon in enacting § 64.1601(e), nor did it identify any private right of action through the enactment of this rule.

Plaintiff further contends that the FCC must have promulgated 47 C.F.R. § 64.1601(e) under the authority granted in 47 U.S.C. § 227(c) because it was promulgated at the very same time as the Do Not Call regulations, and because 47 U.S.C. § 227(c) is cited no less than fifty-four times and 47 U.S.C. § 227(d) is cited only once. [ECF No. 27, pp. 6-7]. However, these are the same arguments this Court already considered in *Griffin* that were outright rejected. *Griffin,* 2024 WL 4333373 (arguing that (i) the FCC cited 47 U.S.C. § 227(c) thirty-six times in its 2003 order as a basis for concluding that 47 C.F.R. 64.1601(e) was enacted under 47 U.S.C. § 227(c) and (ii) 47 C.F.R. § 64.1601(e) could not have been promulgated under 47 U.S.C. § 227(d) because it only referenced this section twice in paragraphs dealing with junk faxes) [ECF No. 15, pp. 19]. Further, Plaintiff provides *no* authority supporting his argument that the implementation of the Caller ID rules and the Do Not Call rules in the same document has been used by any courts to decide whether a statute or regulation affords a private right of action by its plain terms. [ECF No. 27, p. 7]. Indeed, statutes, regulations and rules implement various points of law in the same document all the time. Further, plaintiff cannot overcome the fact that although the Caller ID rules were created in the same document as the Do Not Call rules – a 35 page document – noticeably absent in the Caller ID rule making process is satisfaction of the statutory requirements under Section 227(c). *Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-79, 44150 ("We conclude that the national do-not-call database adopted jointly by this Commission and the FTC satisfies each of the statutory requirements outlined in 47 U.S.C. 227(c)(3)(A) through (c)(3)(L). We now discuss each such requirement.").

REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE - 4

Moreover, Plaintiff contends that Section 227(d) is only referenced in setting procedural standards for faxes and prerecorded calls. *Id*. However, it is critical to note that 47 U.S.C. § 227(d) clearly encompassed *technical and procedural standards*, which fall squarely into the Caller ID rules. Congress clearly did *not* create a private right of action under 47 U.S.C. § 227(d) for violation of any technical and procedural standards. Moreover, 47 USC § 227(c) does not expressly authorize the FCC to adopt technological methods. Thus, Plaintiff's argument that Congress, and the FCC, intended to create a private right of action for violation of *technical* standards, such as the Caller ID rules, is perplexing and not congruous with the statutory construction of 47 U.S.C. § 227. The fact that Congress eliminated any private cause of action for technical standards in 47 U.S.C. § 227(d) is equally appliable to the violation of the Caller ID rules. As *Meyer* noted, the Court was "unwilling to read a private right of action" "where Congress conspicuously omitted it but explicitly included it in adjacent subjections." *Meyer v. Cap. All. Grp*., 15-CV-2405-WVG, 2017 WL 5138316, at *15 (S.D. Cal. Nov 6, 2017) (citing *Hurley*, 2017 WL 2454325 at *4-5).

The problem with Plaintiff's arguments is that he cannot cite to any *express* statement by the FCC indicating the legal authority upon which it was relying in promulgating Section 64.1601(e). Nor can Plaintiff cite to any *express* statement from the FCC indicating that Section 64.1601(e) created a private right of action. For this reason alone, dismissal is appropriate. It is well-settled that no private right of action exists where a regulation "simply proscribes certain conduct, and does not in terms create or alter any civil liabilities. If monetary liability to a private plaintiff is to be found, it must be read into the Act." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979). Even as stated in *Worsham v. LifeStation, Inc.*, 2021 WL 5358876, at *17 (Md. Ct. Spec. App. Nov. 17, 2021), the determination that Section 64.1601(e)

REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE - 5

creates a private right of action "is not free from doubt and the lines between regulations authorized by § 227(c) and (d) (or, perhaps, some combination of both) could be far clearer[.]"  In a TCPA case, "[w]here a statutory scheme and its implementing regulations have expressly created a private right of action but have not expressly done so elsewhere in the same scheme, it is 'highly improbable' that Congress—or here, the FCC—'absent mindedly forgot to mention an intended private action.'"  *Meyer v. Cap. All. Grp.,* 2017 WL 5138316, at *16 (S.D. Cal. Nov. 6, 2017) (quoting *Transamerica*, 444 US at 19) (finding no private right of action under 47 C.F.R. § 64.1601(e)).

Further, although Plaintiff goes to great lengths through process of elimination to demonstrate that § 64.1601(e), was promulgated under 47 USC § 227(c) – since the original briefing of Defendant's motion – on October 28, 2025, the FCC adopted further proposed rulemaking that largely proposes to broaden caller identification requirements.  *In the matter of Advanced Methods to Target and Eliminate Unlawful Robocalls, Call Authentication Trust Anchor, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, and Dismissal of Outdated or Otherwise Moot Robocalls Petitions*, FCC 25-76, adopted October 28, 2025 (in comment phase).  *See* Req. for Judicial Notice, Exhibit 1.  Notably, although 47 C.F.R. § 64.1601(e) is identified as defining caller identity information, under the "Legal Authority" section of this document, 47 U.S.C. § 227(c) in not even identified as a source of legal authority to authorize these new Caller ID rules.  *Id*., at pp. 10, 25 (seeking comment for authority under Truth in Caller ID Act, the TRACED Act and Section 251(e) of the Communications Act).  Therefore, it remains questionable what specific authority that FCC relied upon to create 47 C.F.R. § 64.1601(e).  The Court cannot create a private right of action based on such doubtful and unexpressed authority.  Further, in light of fairly recent Supreme Court precedent, this Court has

REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE - 6

primary authority to interpret statutes, and need not give any deference to FCC interpretations on the TCPA. *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 US 146, 162 (2025) (in an enforcement proceeding, the court can decide what the statute means under ordinary principles of statutory interpretation, affording appropriate respect to the FCC's interpretation); *Loper Bright Enterprises v. Raimondo*, No. 22-1219, 603 U.S. 369, 413 (June 28, 2024) (striking down the "Chevron deference" doctrine holding that Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority).

Basic canons of statutory interpretation require clear indications that Congress intended to create a private right of action. *See Meyer,* 2017 WL 5138316, at *16 ("[W]here Congress 'intends private litigants to have a cause of action,' the 'far better course' is for Congress to confer that remedy in explicit terms.") (quoting *Cannon v. Univ. of Chi.*, 441 U. S. 677, 717 (1979)). Here, there is no indication from Congress that it intended a private right of action for violation of technical rules; rather, the opposite is true. As such, this Court should refrain from creating a private cause of action where one does not exist.

B. **THE COURT SHOULD STRIKE THE CLASS DEFINITION IN CLAIM III – THE INTERNAL DNC CLASS**

First, "recipients of such calls who never asked the telemarketer to stop calling them do not have standing to sue over violations of the internal do-not-call list regulations because their injuries are not fairly traceable to the telemarketer's failure to maintain an internal do-not-call list." *Cordoba v. DIRECTV, LLC*, 942 F.3d. 1259, 1276 (11th Cir 2019). Thus, it is imperative that Plaintiff plead that he asked Defendant to stop calling. But Plaintiff did not do so. Although Plaintiff cited to a non-binding case in Massachusetts that allowed an internal DNC class to proceed based on his filing of a lawsuit, other Courts have recognized that a do not call request must be independently and expressly made even after a lawsuit is initiated. *Hossfeld v. Am. Fin.*

REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE - 7

*Sec. Life Ins. Co.*, 544 F. Supp. 3d. 1323, 1333 (S.D. Fla. 2021) (Plaintiff lacked standing when calls made after his stop request were unansowereD. Or. used live representatives as "Plaintiff made his first request to not be called on May 22, 2019—after he initiated this lawsuit.")

Second, Plaintiff requests this Court to recognize a "mixed" internal DNC class. Essentially, Plaintiff seeks to have this court certify a class that includes class members who have both a DNC registry violation and an internal DNC violation in order to satisfy the more than one call requirement. This is problematic because Plaintiff has already alleged a DNC registry class, and may not recover damages for multiple violations of the same call. *Noviello v. Adam Wines Consulting, LLC,* 3:22-CV-52-BN, 2023 WL 2776696, at *5 (N.D. Tex. Apr 4, 2023) (citing *Charvat v. GVN Michigan, Inc.*, 561 F.3d. 623, 632 (6th Cir 2009). As such, Plaintiff would lack standing to proceed on the Internal DNC class to the extent he was also a member of the DNC Registry Class for the same call. Moreover, the class would also include any member who received more than one call in violation of the internal DNC. However, Plaintiff is **_not_** a member of an internal DNC class who received *more than one* call *after* he allegedly requested calls to stop -- he fails the typicality and commonality requirements of Rule 23.

Finally, Plaintiff did not define the class properly:

> **Internal DNC Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) **two or more** telemarketing calls or text messages in a 12-month period, (3) who were not current customers of the Defendant at the time of the calls, (4) **who had previously asked for the calls to stop** and (5) within the four years prior to the filing of the Complaint.

[ECF No. 23, ¶ 62] (e.s.). The phrase "who had *previously* asked for the calls to stop" modifies the phrase "two or more." Thus, as pled, each member of Plaintiff's class, including himself, would have had to receive two or more calls *after* he requested for the calls to stop. Accordingly, in order for Plaintiff to properly plead the "mixed" class, he would have to allege that he received

REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE - 8

***at least one call*** *after* he previously asked for the calls to stop, not "two or more." Thus, at a minimum, Plaintiff's Internal DNC class must be re-defined.

Finally, Plaintiff has not alleged how a purported class of a "mixed" nature would be numerous and involve other potential class members enough to even support a class in addition to the DNC class. *Murch v. GPS Capital Markets, LLC*, 3:24-CV-01854-SB, 2025 WL 2770190, at *1 (D. Or. Sept 26, 2025) (dismissing for failure to allege that receipt of Defendant treated other individuals in a similar manner).

### III.   CONCLUSION

WHEREFORE, DaBella respectfully requests the Court to dismiss Claim II and strike the class definition in Claim III, and for such other relief as the Court deems just and advisable.

Dated:  November 25, 2025                Respectfully submitted,

Drew L. Eyman, OSB No. 163762
Snell & Wilmer LLP

-and-

/s/ Diane J. Zelmer, Esq.
Diane J. Zelmer, Esq., *pro hac vice*
BERENSON LLP
4495 Military Trial, Suite 203
Jupiter, Florida 33458
Tel:  (561) 429-4496
Fax: (703) 991-2195
Email:  djz@berensonllp.com
Secondary Email:  hcc@berensonllp.com
*Attorneys for Dabella Exteriors LLC*