Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
SNELL & WILMER L.L.P.
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
Telephone:  503.624.6800
Facsimile:  503.624.6888
*Attorney for Defendant, DABELLA EXTERIORS, LLC*

Diane J. Zelmer, Esq. (pro hac vice)
FL Bar No. 27251
BERENSON LLP
4495 Military Trail, Suite 203
Jupiter, Florida 33458
Telephone: 561-429-4496
Email: djz@berensonllp.com
*Attorney for Defendant, DABELLA EXTERIORS, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>DABELLA EXTERIORS LLC,<br><br>    Defendant. | Case No. 3:25-CV-00396-SI<br><br><br>DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S FIRST CLAIM<br><br>ORAL ARGUMENT REQUESTED |

## <u>TABLE OF CONTENTS</u>

Contents

TABLE OF CONTENTS....................................................................................................ii

TABLE OF AUTHORITIES ...........................................................................................iv

LR 7-1 CERTIFICATION ...............................................................................................1

MOTION...........................................................................................................................1

MEMORANDUM .............................................................................................................1

I.    STATEMENT OF UNDISPUTED MATERIAL FACTS ......................................1

II.    SUMMARY OF ARGUMENT ...............................................................................7

III.    ARGUMENT ...........................................................................................................8

   A.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT...............................................8

   B.    PLAINTIFF'S FIRST CLAIM ON BEHALF OF PLAINTIFF AND THE DNC CLASS IS BARRED AS A MATTER OF LAW.................................................................................................9

      1.    Historical Framework ......................................................................................9

      2.    Plaintiff Does Not Have Standing as He Did Not Register His Number on the DNC Registry.........................................................................................................13

         a. *Rombough* Was Correctly Decided Based on the Express Language of the Rules and Regulations ....................................................................................14

         b. The DNC Registration for Weingrad's Telephone Number is Invalid .......15

            i. ....*The Reassignment of the Telephone Number from a Prior Owner to Weingrad Required its Removal from the DNC Registry* .....................................15

            ii.*The Telephone Number was and is Held Out to the World as a Business Number* ...................................................................................................17

         c. If the Telephone Number Was Not Reassigned, the Exemptions Applicable to the Prior DNC Registrant Apply to Weingrad....................................................17

         d. Holding DaBella Liable for Telephone Solicitations to a Reassigned Number Would Not Adequately Balance Interests........................................................18

      3.    Plaintiff Lacks Standing to Bring Claims Under the TCPA Because His Cellular Number is Associated with a Business....................................................20

4.    Plaintiff Did Not "Receive" "More than One" Telephone Call in Violation of the National DNC Registry ............................................................................................................ 22

a. Plaintiff Only "Received" One Telephone Call ............................................................ 23

b. The Plaintiff Established a Business Relationship on the First Call ............................ 24

5.    Plaintiff Cannot Establish Concrete Injury ................................................................ 25

IV.    RESERVATION ........................................................................................................... 26

V.    CONCLUSION ............................................................................................................. 27

CERTIFICATE OF COMPLIANCE ............................................................................ 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F3d 687 (D.C. Cir. 2018) .......................................... 19

*Cannon v. Univ. of Chi.*, 441 U. S. 677 (1979) ........................................................................... 15

*Charvat v. Southard Crop.*, 2019 WL 13128407 (2019) ............................................................. 24

*Gillam v. Reliance First Cap., LLC,* No. 21-4774, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ......................................................................................................................................... 23, 24

*Great Lakes Dredge & Dock Co. v. Miller*, 957 F.2d 1575 (11th Cir. 1992) ............................... 8

*Greene v. Select Funding, LLC*, No. 20-7333, 2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) ....... 24

*Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099 (W.D. Mo. 2020) ....................................... 20

*Human v. Fisher Investments*, 2025 WL 2614039 (E.D. Miss Sept. 10, 2025) ............................ 26

*Jackson v. Danberg*, 594 F.3d 210 (3d Cir. 2010) ....................................................................... 8

*Laccinole v. Inter. Union of Police Assoc.*, 638 F. Supp. 3d 110 (D.R.I. Oct. 26, 2022) ............ 25

*Morris v. Copart*, No. 4:15-CV-724, 2016 WL 6608874 (E.D. Tex. Nov. 9, 2016) ..................... 4

*Morris v. Unitedhealthcare Ins. Co.*, No. 415-CV-00638, 2016 WL 7115973 (E.D. Tex. Nov. 9, 2016) ........................................................................................................................................ 26

*N. L. by Lemos v. Credit One Bank, N.A.*, 960 F3d 1164 (9th Cir. 2020) .................................... 20

*Orsatte v. N.J. State Police*, 71 F.3d 480 (3d Cir. 1995) ............................................................. 8

*Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-cv-15,, 2022 WL 2713278 (N.D. Iowa June 9, 2022) ........................................................................................................................... 13

*Sandoe v. Boston Sci. Corp.*, CV 18-11826-NMG, 2020 WL 94064 (D. Mass. Jan 8, 2020) ...... 19

*Shelton v. Target Advance LLC*, No. 18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019) ...... 25

*Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648 (W.D. Tenn. 2020) ............................. 20

*Stoops v. Wells Fargo Bank, N.*A., 197 F.Supp.3d 782 (W.D. Pa. 2016) .................................... 25

*Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div.,* 932 F.2d 1384 (11th Cir. 1991) ...................... 8

*Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) ............................................... 15

*United States v. Edwards*, 156 F. App'x 954 (9th Cir. 2005) ...................................................... 25

*Weingrad v. Top Healthcare Options*, 2024 WL 4228149 (E.D. Pa Sept. 17, 2024).................. 23

**Rules**

Fed. R. Civ. P. 56(c) ..................................................................................................................... 8

**Regulations**

16 C.F.R. § 310.4(b)(1)(iii)(B) ................................................................................................... 21

47 C.F.R. § 1200(c)(2).................................................................................................................. 17

47 C.F.R. § 64.1200(l)(2)................................................................................................... 14, 16, 18

47 C.F.R. § 64.2305(d) ................................................................................................................ 21

47 U.S.C. § 227(c) ........................................................................................................................ 9

47 U.S.C. § 227(c)(1)..................................................................................................................... 9

47 U.S.C. § 227(c)(2)..................................................................................................................... 9

47 U.S.C. § 227(c)(3)..................................................................................................................... 9

*Consumer & Governmental Affairs Bureau Provides Additional Guidance for Users of the Reassigned Numbers Database*, 39 FCC Rcd 391 (Jan. 25, 2024)........................................... 16

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protect Act of 1991*, CG Docket No. 02-278, FCC 08-147, Report and Order, 23 FCC Rcd. 9779............... 16

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ¶ 31 (July 3, 2003)...................................................................................... 10

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788 (2005)............................................................................................................. 17, 22

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protect Act of 1991*, CG Docket No. 02-278, FCC 08-147, Report and Order, 23 FCC Rcd. 9779 (June 11, 2008)................................................................................................................................... 12

*Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144 ....................................................................................................................... 18

*Statement of Commissioner J. Adelstein*, *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, FCC 08-147, 23 FCC Rcd. at 9779 (June 11, 2008) ................................................................................................................ 11

The Do-Not-Call Improvement Act of 2007, Pub. L. No. 110-187, 122 Stat. 633 (2008) .......... 11

**LR 7-1 CERTIFICATION**

Defendant, DABELLA EXTERIORS LLC ("DABELLA"), hereby certifies that in compliance with Local Rule 7-1, the parties made a good faith effort through email on August 27, 2025 and August 29, 2025, and teleconferences on August 26, 2025 and September 3, 2025, to resolve the dispute in this motion, but have been unable to agree on a resolution.

**MOTION**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7, DaBella hereby moves for summary judgment as to Count I of the Plaintiffs' First Amended Class Action Complaint ("Complaint") [ECF No. 1] on the following counts:

- Claim 1 - Violation of the Telephone Consumer Protection Act ("TCPA") (47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class

This Motion is supported by the following memorandum, the Declaration of Josiah McMillan (Dabella), the Declaration of Diane Zelmer (with attached selected portions of Plaintiff's deposition transcript), Defendant's Request for Judicial Notice, the Declaration of David Kalat, the Court's file, and such further evidence and argument as this Court may entertain.

**MEMORANDUM**

**I.    STATEMENT OF UNDISPUTED MATERIAL FACTS**

**Plaintiff's Consent and Expression of Interest**

1.    Defendant's records show that it obtained the lead with Plaintiff, LEON WEINGRAD's telephone number, from https://searchrenovation.us.  Defendant received an express submission of consent for Defendant to call Plaintiff's telephone number.  The consent form included Plaintiff's address and telephone number, under the name of "Robert Bronson." [McMillan Decl., ¶ 3-4, Ex. A].

DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 1

2.      The Plaintiff's lead information is identified as having received input from source IP address XX.XXX.XXX.153, and the user is identified as using Windows 10 operating system and accessing through the Edge search engine.  [McMillan Decl., ¶ 5].

3.      When the registration form was completed, the user agreed to the following language:

> By clicking Submit, you represent that you are 18+ years of age and agree to the Privacy Policy and Terms & Conditions. By clicking Submit, "you agree by your electronic signature that you give express written consent to receive marketing communications regarding Solar and Home services by automatic dialing system and pre-recorded calls and artificial voice messages and one or more of its Marketing Partners at the phone number and e-mail address provided by you, including wireless numbers, if applicable, even if you have previously registered the provided number on the Do Not Call Registry. SMS/MMS and data messaging rates may apply." Your understand that my consent here is not a condition for buying any goods or services.

[McMillan Decl., ¶ 6, Ex. A].  DaBella, DaBella Exteriors, DaBella Exteriors LLC, and DaBella Home Improvement are all listed as "Marketing Partners."

https://www.searchrenovation.us/legal/.

4.      Any outbound communications made by DaBella to Plaintiff were made after DaBella obtained express written consent to call his telephone number.  [McMillan Decl., ¶ 7].

5.      Any and all communications made by DaBella to Plaintiff were made under a good faith belief that Plaintiff submitted his express written consent, and identified an interest to be contacted by DaBella.  [McMillan Decl., ¶ 8].

**Plaintiff Verifies the Information on the Consent Form, and Makes an Appointment**

6.      Defendant only communicated with Plaintiff on one outgoing call on February 7, 2025 at 11:50 a.m.  On that particular occasion, Defendant called Plaintiff, and asked Plaintiff if she was "speaking with Robert."  Plaintiff responded "Yes."  [McMillan Decl., ¶ 9]; [Zelmer Decl., Ex. 2, (Weingrad depo, 38:9-14, Ex. 7)].

DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 2

7.      DaBella stated:

> Hi Robert I was just reaching out to you in regards to a windows inquiry
> that we had received.  It looks like you were needing some assistance.
> Do you know about how many of those windows you were looking into?

Plaintiff responded:  "Um I think it was um, it was 10."  [McMillan Decl., ¶ 9]; [Zelmer Decl.,

Ex. 2, (Weingrad depo, p. 39:19-41:4)].  Plaintiff admitted that this was not a correct statement

as he was not looking for 10 windows.  [Zelmer Decl., Ex. 2, (Weingrad depo,  40:19-41-4)].

8.      DaBella asked Plaintiff whether there is "anyone else should be present to make

decisions on the home or again just you, Robert?"  Plaintiff responded "just me."  [McMillan Decl.,

¶ 10].

9.      On the call, Plaintiff further verified his address at "███████████."  [McMillan

Decl., ¶ 11]; [Zelmer Decl., Ex. 2, (Weingrad depo, 42:12-15, Ex. 7)].  Plaintiff verified that the

house is a "███████████" on a "██████" and that the color of the home is "████" [Zelmer

Decl., Ex. 2, (Weingrad depo, 4:13-5:1, Ex. 7)].  Plaintiff indicated that he "owns [the home]

alone" stated that there are "draft" issues with the windows that are "wood" and he verified that

the windows are "original to the home."  [Zelmer Decl., Ex. 2, (Weingrad depo, 40:25-42:4, Ex.

7)].  Plaintiff made an appointment with DaBella for ████████████.  [Zelmer

Decl., Ex. 2, (Weingrad depo, 42:16-19, Ex. 7)].

10.      Defendant stated that it has the email address ████████████ and

asked whether that is "still a good one" and Plaintiff verified "Yeah just switch it to the one

███████████."  [McMillan Decl., ¶ 11]; [Zelmer Decl., Ex. 2, (Weingrad depo,

42:21-44:23)].  Plaintiff admitted that he wanted DaBella to email him.  [Zelmer Decl., Ex. 2,

(Weingrad depo, 44:18-23)].

DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 3

**DNC Registration**

11.     The DNC registration upon which Plaintiff relies states that the telephone number was registered on August 28, 2021.  [Zelmer Decl., Ex. 2 (Weingrad depo 33:20-34:25, Ex. 6)]. Plaintiff did not obtain the telephone number 503-XXX-XXXX until about a year ago, i.e., in August 2024. [Zelmer Decl., Ex. 2 (Weingrad depo 14:2-7)].  Plaintiff admitted he did not register the telephone number 503-XXX-XXXX on the DNC.  [Zelmer Decl., Ex. 2 (Weingrad depo 35:16-25)].  Moreover, the DNC registration fails to provide the date on which the DNC registration was verified, and Plaintiff could not provide any documentation to support his allegation that he attempted to register his telephone on the DNC.[1]  [Zelmer Decl., Ex. 1 (Weingrad depo 33:20-36:16, Ex. 6)].

12.     The most authoritative third-party data sources established by the U.S. Government, the RND and the Do Not Call Registry, have no record of any permanent disconnection and reassignment of the 503 number since November 1, 2023.  [Kalat Decl., ¶¶ 15, 17-18, Ex. 4].  The most authoritative third -party data sources do not show that the 503 number that is the subject of this litigation was ever used by any person other than the prior subscriber, Joe Arnold, who supplied that number to Defendant.  *Id*.

**Business Use**

13.     The telephone number 503-XXX-XXXX is associated with a business under the name of "Merlin Home Magic" on various sources throughout the internet beginning as early as

---

[1] The undersigned received objections from Plaintiff's counsel to this inquiry; Plaintiff's counsel advised that he would provide the date of obtaining the document, but no subsequent information has been received as of this date.  Any self-serving testimony about the substance of written evidence that a party has not produced should be discarded. *Morris v. Copart*, No. 4:15-CV-724, 2016 WL 6608874, at *3 (E.D. Tex. Nov. 9, 2016) ("[t]he law is very clear: evidence that was not properly produced during discovery cannot be used to support or oppose summary judgment.").

the beginning of the business October 23, 2017 to the time of the opening of the file with the Better Business Bureau February 4, 2021, and the telephone number is still being advertised for business purposes. [Request for Judicial Notice, Exs. 1-6]. Indeed, Plaintiff's telephone number is listed on multiple internet sources, including, the yellowpages.us.com, cylex.us.com, the Better Business Bureau, buzzfile.com, and hotfrog.com. *Id.*

14.    Plaintiff's telephone number is advertised in connection with "Merlin Home Magic" as a "residential general contractor." [McMillan Decl., ¶ 18]; [Request for Judicial Notice, Exs. 1-5]. The voicemail specifically identified it as a business line by answering "Merlin Home Magic." [McMillan Decl., ¶ 18].

15.    Mr. Leon Weingrad has also received calls made to his other telephone number beginning with 267 seeking to speak with the owner of Merlin Home Magic. *Weingrad v Franchise Creator, LLC*, Case No. 1:25-cv-22746-CMA, (S.D. Fla. 2025) [ECF No. 1, p. 6, ¶ 29].

**Prior Consent**

16.    DaBella obtained a prior consent received in 2023 for Plaintiff's telephone number. While the phone number may have been associated with a prior registrant, Joseph Arnold, Plaintiff testified on August 18, 2025 that he had been the subscriber of this telephone number for over a year. [Zelmer Decl., Ex. 2, (Weingrad depo, 14:2-7)].

**Calls**

17.    Plaintiff's call log shows three incoming calls from Defendant, Plaintiff admits that he only answered, and spoke to DaBella, on ***one*** incoming call. [Zelmer Decl., Ex. 2 (Weingrad depo, 31:12-18)].

DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 5

**Other Litigation**.[2]

18.    Plaintiff has filed ***at least 34 other TCPA cases***.  *See* PACER locater.[3]  There are

common characteristics of lawsuits that have been filed by Leon Weingrad through use of two

different telephone numbers.  Since October 2024, beginning ***only a few months after Leon***

***Weingrad obtained the telephone number*** 503-XXX-XXXX, Mr. Weingrad has filed ***at least 19***

***TCPA cases***.

---

[2] At the time the deposition was taken, the Court did not permit DaBella to inquire Leon Weingrad about other lawsuits; therefore, this information is based on public records.  DaBella expressly reserves the right to submit additional evidence in support of this Motion based on additional discovery obtained, including a second deposition of Leon Weingrad.

[3] *See e.g., Weingrad v. First American Home Warranty Corporation* (E.D. Pa. 2:24-cv-05488); *Weingrad v. Premium Merchant Funding One, LLC* (E.D. Pa. 2:24-cv-06247); *Weingrad v. Posigen Developer, LLC* (E.D. Pa. 2:24-cv-06503); *Weingrad v. Fund Mate, LLC et al* (E.D. Pa. 24-cv-04716);*Weingrad v. Quotelab, LLC* (E.D. Pa. 2:23-cv-05007) (voluntary dismissal with prejudice); *Weingrad v. National Health Enrolment Centre* (E.D. Pa. 2:23-cv-05114); *Weingrad v. RFR Capital LLC* (E.D. Pa. 2:24-cv- 02636) (voluntary dismissal without prejudice); *Weingrad v. Westmount Funding LLC* (E.D. Pa. 2:24-cv-03705); *Weingrad v. Iban Global LLC et al* (E.D. Pa. 2:24-cv-04212); *Weingrad v. Baker Solutions Inc.* (E.D. Pa. 2:25-cv-01792). *See also Weingrad v. SmartMatch Insurance Agency, LLC* (M.D. Pa. 1:24-cv-02067) (voluntary dismissal with prejudice); *Weingrad v. Yelp Inc.* (M.D. Pa. 24-cv-01330) (voluntary dismissal without prejudice); *Weingrad v. Quotewizard.com, LLC* (M.D. Pa. 1:25-cv- 00002) (voluntary dismissal individual claims with prejudice); *Weingrad v. Synergy BPO LLC* (N.D. Tex. 4:24-cv-00610) ) (voluntary dismissal without prejudice); *Weingrad v. DH & RK Investments LLC* (C.D. Ca. 2:24-cv-05981) (voluntary dismissal without prejudice); *Weingrad v. Top Healthcare Options Insurance Agency Inc.* (S.D. Fl. 24-cv-61930) (voluntary dismissal without prejudice); *Weingrad v. Direct Health Solutions Insurance Agency, LLC* (S.D. Fl. 24-cv-62282) (settlement indicating dismissal with prejudice); *Weingrad v. DH & RK Investments LLC* (S.D. Fl. 24-cv-80701); *Weingrad v. Tier One Insurance Company* (M.D. Ga. 4:25-cv-00124) (voluntary dismissal with prejudice); *Weingrad v. Block Equity Group LLC* (E.D. N.Y. 2:24-cv-02618) (voluntary dismissal with prejudice); *Weingrad v. Slingshot Enterprises Inc.* (E.D. N.Y. 2:24-cv-03736) (voluntary dismissal with prejudice); *Weingrad v. K9 Bookkeeping, LLC* (S.D. N.Y. 1:24-cv-06256); *Weingrad v. BuyerLink Inc. et al* (D. Or. 3:24-cv-02114) (voluntary dismissal with prejudice); *Weingrad v. CHW Group, Inc.* (D. Or. 3:25-cv-00370) (dismissal of individual claims with prejudice); *Weingrad v. DaBella Exteriors LLC* (D. Or. 3:25-cv-00396); *Weingrad v. LifeWave, Inc.* (D. Or. 3:25-cv-00752); *Weingrad v. Exact Care Pharmacy, LLC* (E.D. Pa. 2:25-cv-01843) (order of dismissal with prejudice upon settlement); *Weingrad v. Franchise Creator, LLC* (S.D. Fla. 25-cv-22746) (voluntary dismissal without prejudice); *Weingrad v. David Dixon (E.D. N.Y. 2:25-mc-01930); Weingrad v. Business Capital, LLC (E.D. Penn. 2:25-cv-06344-JHS); Weingrad v. Westmount Funding, LLC* (E.D. Penn. 2:24-cv-03705-GAW) (order dismissing class claims); *Weingrad v. Everquote, Inc.*, (D. Mass. 1:26-cv-10197-PGL).

DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 6

19. The common theme is that the (1) identity of the user who has submitted Mr. Weingrad's information is concealed, (2) in some cases, the name of the individual on the consent form contains a name different than Leon Weingrad, and (3) in the communication with the caller, Mr. Weingrad enters into voluntary communications and makes admissions conceding to the call and the details of the inquiry submitted. For example, in *Weingrad v Quotewizard.com*, Weingrad's telephone number 503-XXX-XXXX was submitted to the RateKick website on December 13, 2024 under the name "Gary Williams" using an unidentifiable (potentially spoofed) IP address with a location in Pakistan. *Weingrad v Quotewizard.com, LLC*, Case No.1: 25-cv-00002-JPW, in the Middle District of Pennsylvania. [ECF No. 5-2, ¶¶ 5, 17]. In *Weingrad v. Exact Care Pharmacy, LLC*, Case No. 2:25-cv-1843-MMB, in the Eastern District of Pennsylvania, the consent form was submitted with an IP address ending in 3.160 under the name of "Joseph Arnold" and Weingrad identified himself as "Jill Herrala." [ECF No. 19-1, pp. 4-5, Ex. 1, ¶¶ 8-9]. In both these cases, like here, Plaintiff voluntarily communicated and conceded consent.

## II.    SUMMARY OF ARGUMENT

Plaintiff's claims are barred. The TCPA creates a right of action for a DNC violation only for a person who actually registers their telephone number on the DNC. Plaintiff admittedly did no such thing. Rather, Plaintiff inappropriately relies on a *prior* DNC registration. The FTC and FCC have made it clear that telephone numbers are required to be removed from the DNC upon reassignment. Not only is Plaintiff unable to rely on that prior DNC registration, but that is especially true where, as here, the prior owner consented for DaBella to call him, and used his telephone number for business purposes. As such, the DNC registration is defective and invalid.

Moreover, Plaintiff lacks standing because his telephone number continues to be held "out to the world" as a business telephone number, not a residential line. Thus, Plaintiff cannot meet

its burden to prove that the telephone number is being used for residential and not business purposes.

Further, to allege a violation of the DNC, Plaintiff must prove that *more than one* call was made to him within a 12 month period. Plaintiff's DNC claim fails, where, as here, only one call was made to Plaintiff prior to Plaintiff establishing a business relationship with Defendant.

Finally, Plaintiff lacks standing because he cannot establish injury where, as here, he induced Defendant to call him by expressing an interest in its products, and is a serial litigant that is using the TCPA for a profit making scheme.

For the foregoing reasons, the Court should enter summary judgment in favor of Defendant on Count I, and hold that Plaintiff's individual claims are barred.

## III.     <u>ARGUMENT</u>

### A. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

A court may grant summary judgment when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Great Lakes Dredge & Dock Co. v. Miller*, 957 F.2d 1575, 1578 (11th Cir. 1992). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div.,* 932 F.2d 1384, 1387-88 (11th Cir. 1991). The non-movant's burden is heavy at this point: it "must point to concrete evidence in the record;" mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatte v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010) (citations omitted). Here, Plaintiff cannot establish essential elements of his claims, and as such, summary judgment is appropriate.

**B. PLAINTIFF'S FIRST CLAIM ON BEHALF OF PLAINTIFF AND THE DNC CLASS IS BARRED AS A MATTER OF LAW**

The Code of Federal Regulations provides, in part, that "[n]o person or entity shall initiate any telephone solicitation to" "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. 64.1200(c)(2). As such, Plaintiff must have registered his number on the DNC registry to establish a claim. In addition, Plaintiff must be a "residential" and not a business subscriber.

**1. Historical Framework**

Under 47 U.S.C. § 227(c)(1), Congress required the Commission to initiate a rulemaking proceeding within 120 days after December 20, 1991[4] aimed at protecting "residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The rulemaking proceeding expressly requested evaluation of "do not call" systems, and permitted "establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3). Thus, the statutory text enacted back in 1991 demonstrates that Congress initially envisioned establishment of a National DNC Registry.

After implementing initial rules and regulations in 1991, the FCC (in connection with the FTC) established a national do-not-call list effective as of October 1, 2003. *Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 Fed. Reg. 44144-79 (July 25, 2003) (FCC indicates that it adopted a "national do-not-call registry" "[p]ursuant to [its] authority under 47 U.S.C. 227(c)").[5] The original version of the 47 C.F.R. § 64.1200(c) required

---

[4] The regulations were initially required to be established "[n]ot later than 9 months after December 20, 1991." 47 U.S.C. § 227(c)(2).

[5] The FTC established the National Do Not Call Registry in 2003 in response to the Do-Not-Call

DNC registrations to be honored for five years.[6]   The FCC stated that "[s]ubject to certain exemptions, telemarketers will be prohibited from contacting *those consumers that register their telephone numbers* on the national list."  68 Fed. Reg. at 44145 (e.s.).  The Commission expressly excluded liability for sellers who either (1) established a business relationships, (2) received an inquiry, or (3) obtained prior express permission from such consumers listed on the DNC registry. *Id*. at 44148, 44158-60 ¶¶ 20, 21, 22, 81-83, 92.  The sellers are entitled to contact consumers with whom they have established a business relationship for a period of 18 months from the last payment or transaction, or 3 months in the event of an inquiry, even when listed on the DNC registry.  *Id.*   The Commission concluded that a five-year registration period coupled with a monthly purging of disconnected telephone numbers adequately balances the need to maintain accuracy in the national registry with any burden imposed on consumers to re-register periodically their telephone numbers.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14036-37, ¶ 31 (July 3, 2003).  In doing so, the FCC recognized the FTC's indication "that to guard against the possibility of including disconnected or reassigned telephone numbers, technology will be employed on a monthly basis to check all registered telephone numbers against national databases, and remove those numbers that have been

---

Implementation Act of 2003.  15 U.S.C. § 6101.

[6] The version effective as of December 14, 2006 to November 13, 2008 read as follows:

(c) No person or entity shall initiate any telephone solicitation, as defined in paragraph (f)(12) of this section, to:

. . . .

(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government. **Such do-not-call registrations must be honored for a period of 5 years.**

47 C.F.R. § 64.1200 (e.s.).  Effective November 14, 2008, the C.F.R. was amended to replace "for a period of 5 years" with the term "indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the data administrator."

disconnected or reassigned." 68 Fed. Reg. at 44146, ¶ 9. The FCC indicated that the "administrator will check all telephone numbers in the do-not-call registry each month against national databases, and those numbers that have been disconnected or reassigned will be removed from the registry." *Id*. at 44151, ¶ 38. *See also*, 18 FCC Rcd. 14014, 14051 ¶ 60.

On February 15, 2008, Congress enacted the Do-Not-Call Implementation Act, prohibiting the expiration date for telephone numbers registered on the DNC. The Act specifically includes a section requiring removal of invalid, disconnected and reassigned telephone numbers:

> '(b) REMOVAL OF INVALID, DISCONNECTED, AND REASSIGNED TELEPHONE NUMBERS.—The Federal Trade Commission shall periodically check telephone numbers registered on the national 'do-not-call' registry against national or other appropriate databases and **shall remove from such registry those telephone numbers that have been disconnected and reassigned**. **Nothing in this section prohibits the Federal Trade Commission from removing <u>invalid</u> telephone numbers from the registry at any time**.

The Do-Not-Call Improvement Act of 2007, Pub. L. No. 110-187, 122 Stat. 633 (2008) (e.s.). Congress enacted this statute because "the registrations of roughly 10 million consumers were set to expire at the end of this month, with an estimated 50 million more set to expire over the next year." *Statement of Commissioner J. Adelstein*, *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, FCC 08-147, 23 FCC Rcd. at 9779, 9797 (June 11, 2008). The decision was made to avoid imposing a burden on consumers to re-register their numbers. *Statements of Commissioners R. McDowell and K. Martin, Id.* at 9795, 9799.

Likewise, effective November 14, 2008, the FCC amended the C.F.R. in 2008 to require DNC registrations to apply "indefinitely," and the current version of the Code of Federal Regulations provides:

(c) No person or entity shall initiate any telephone solicitation to:
. . .
(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. . . .

47 C.F.R. § 64.1200(c). In its order, the FCC addressed concerns for maintaining the accuracy of the DNC registry, and stated "[w]e anticipate that the FTC will continue to remove any disconnected and reassigned numbers from the Registry, as required by the DNC Act." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protect Act of 1991*, CG Docket No. 02-278, FCC 08-147, Report and Order, 23 FCC Rcd. 9779, 9785, ¶¶ 12, 13 (June 11, 2008). The FCC "encourage[d] LECs to report information on disconnected and reassigned numbers to the FTC subcontractor as timely as possible so that such numbers might be purged more than once per month" and committed to "work closely with the FTC to consider options to enhance the Registry's accuracy." *Id.* Although the FCC had declined to remove business numbers from the registry, it nevertheless stated that "[t]o the extent that some business numbers have been inadvertently registered on the national registry, calls made to such numbers will not be considered violations of our rules." *Id.* at ¶ 14.

When changing the DNC registration requirement from 5 years to "indefinitely," the FCC issued its news release announcing this change on June 17, 2008, indicating:

This rule change serves to minimize the inconvenience to consumers of having to re-register their phone numbers every five years and furthers the underlying goal of the Registry to protect consumer privacy rights.

To enhance the **accuracy** of the Registry, the Commission encourages telephone companies **to convey information on disconnected and reassigned numbers** to the FTC, the administrator of the Registry, in a timely and accurate manner. The Commission also

said it will continue to coordinate with the FTC on additional ways to improve the Registry's accuracy.

*Rules Amended to Require Telemarketers to Honor Do-Not-Call List Registrations Indefinitely*, CG Docket No. 02-278, FCC News Release, (June 17, 2008) (e.s.).[7]

### 2. <u>Plaintiff Does Not Have Standing as He Did Not Register His Number on the DNC Registry</u>

Only individuals who personally listed their phone number(s) have standing to sue. *See Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-cv-15, 2022 WL 2713278 at *2 (N.D. Iowa June 9, 2022) ("The plain language of 47 C.F.R. § 64.1200(c)(2), indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber ***who has registered his or her telephone number*** on the national do-not-call registry." (e.s.)). A National DNC Registry violation requires a "residential telephone subscriber ***who has registered*** his or her [own] telephone number" on the Do Not Call Registry Class. 47 C.F.R. § 64.1200(c)(2) (emphasis added).

Under the plain language of 47 C.F.R. § 64.1200(c)(2), therefore, the mere fact that a number is listed on the DNC Registry is not sufficient to state a claim. Instead, a plaintiff, him or herself, must have actually registered the number on the DNC Registry. *See Rombough*, 2022 WL 2713278, at *5 (dismissing the case with prejudice where Plaintiff failed to allege that she personally registered her telephone on the DNC registry).

Here, it is undisputed that Plaintiff did not register his telephone number on the DNC. [Zelmer Decl., Ex. 2, (Weingrad depo, 35:16-25)]. Indeed, the registration was completed in 2021 at a time when a former owner was the user and registrant of the telephone number 503-XXX-XXXX. [Zelmer Decl., Ex. 2, (Weingrad depo, ¶ 14:2-7, 33:20-34, Ex. 6)]. Finally, the one and

---

[7] https://docs.fcc.gov/public/attachments/DOC-282946A1.pdf

only document upon which Plaintiff relies to verify the DNC registration does not indicate the date. [Zelmer Decl., Ex. 2, (Weingrad depo, Ex. 6)]. Thus, there is no proof that Plaintiff's number was registered on the DNC on February 7, 2025. In any event, Plaintiff is not entitled to rely on the DNC registration made by another individual.

 a. <u>Rombough</u> Was Correctly Decided Based on the Express Language of the Rules and Regulations

Although other district courts, including one Oregon district court,[8] have rejected the reasoning in *Rombough,* DaBella contends that *Rombough* was correctly decided based on a detailed review of the statutes, regulations and rules.

Respectfully, although some district courts have ruled that the FCC created a DNC registration that remained on the registry "indefinitely," the fact that Plaintiff's telephone number remained on the DNC Registry after reassignment does ***not*** result in entitling him to a private right of action under the TCPA.

First and foremost, in analyzing the express text of the rule, the term "indefinitely" refers back to that ***individual's personal registration only***. 47 C.F.R. § 64.1200 (e.s.) ("Such do-not-call registrations" that must be honored indefinitely refers back to that particular "***residential telephone subscriber who has registered*** his or her telephone number on the national do-not-call registry").

More importantly, the express text of the C.F.R. only prohibits a telephone solicitation to "[a] residential subscriber ***who has registered*** his or her number on the national do-not-call registry of ***persons*** who do not wish to receive telephone solicitations." 47 C.F.R. § 64.1200(c)(2) (e.s.). The express language of this C.F.R. does ***not*** prohibit calls placed to persons who remain on the DNC Registry after acquiring the number. The FCC certainly could have stated that a violation

---

[8] *Murch v. GPS Capital Markets, LLC*, 3:24-CV-01854-SB, 2025 WL 2466576, at *13 (D. Or. June 6, 2025), report and recommendation adopted in part, rejected in part, 3:24-CV-01854-SB, 2025 WL 2770190 (D. Or. Sept 26, 2025).

occurs when solicitations are made to *any number registered on the DNC*, including reassigned numbers, but it did not. Rather, it created a personal right to the individual ***who*** actually registered their number on the DNC. To allow Weingrad to proceed would require the Court to read language into the statute which is not expressly included. The United States Supreme Court principles of statutory construction is controlling, and a private right of action does not exist where none was created. *Meyer v. Capital Alliance Grp.*, 2017 WL 5138316, *16–17 (S.D. Cal. Nov. 6, 2017) (where "a statutory scheme and its implementing regulations have expressly created a private right of action but have not expressly done so elsewhere in the same scheme, it is 'highly improbable' that Congress---or here, the FCC '"absent mindedly forgot to mention an intended private right of action.'") (quoting *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979) (internal quotation and citation omitted). *See also Cannon v. Univ. of Chi.*, 441 U. S. 677, 717, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (stating that where Congress "intends private litigants to have a cause of action," the "far better course" is for Congress to confer that remedy in explicit terms).

Finally, to hold otherwise would create an opt-in approach requiring a subscriber to opt-in to receive telemarketing communications. However, that approach was expressly declined by the FCC. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14040 (FCC 2003) ("we decline to adopt an 'opt-in' approach that would ban telemarketing to any consumer who has not expressly agreed to receive telephone solicitations").

> b. The DNC Registration for Weingrad's Telephone Number is Invalid

> > i. *The Reassignment of the Telephone Number from a Prior Owner to Weingrad Required its Removal from the DNC Registry*

Further, although *Rombough* has been rejected by certain district courts on the basis that DNC registrations "must be honored indefinitely or until the registration is cancelled by the consumer or the telephone number is removed by the data base administrator," here, the

reassignment of Weingrad's telephone number from a prior owner to Weingrad ***required*** the administrator to remove his number from the DNC registry. [Kalat Decl., ¶ 6]. In enacting the "indefinite" rule, the FTC and FCC indicate that the purpose of the indefinite registration was to avoid requiring persons to re-register, not to pass along the DNC registry to a new subscriber. The FCC and FTC addressed concerns about maintaining an ***accurate*** DNC Registry, and expressly ***required*** removal of numbers on disconnection and/or reassignment. *See also*, Section 64.1200(l); *Consumer & Governmental Affairs Bureau Provides Additional Guidance for Users of the Reassigned Numbers Database*, 39 FCC Rcd 391 (Jan. 25, 2024) (indicating that the rule is ***obligatory*** and does not include any exceptions). Here, although telephone numbers are required to be removed from the DNC upon reassignment, the most authoritative third party sources do not have any record that the 503 telephone number was removed from the DNC when that telephone number was reassigned to him. [Kalat, Decl. ¶¶ 17-18]. Indeed, the FTC has statutory authority to remove "invalid telephone numbers from the registry at any time." 122 Stat. 633. Thus, if anything, as *required upon reassignment*, Weingrad's DNC Registry is indeed invalid and should be removed due to the reassignment of the phone number from a prior user to him. Accordingly, DaBella could not violate the TCPA by calling Weingrad. As the FCC noted in the business context, a DNC Registration in and of itself does not necessarily result in a violation, where, as here, that DNC registration is invalid. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protect Act of 1991*, CG Docket No. 02-278, FCC 08-147, Report and Order, 23 FCC Rcd. 9779, 9785 ¶¶ 14 (calls made to business inadvertently registered on the DNC Registry "will not be considered violations of our rules").

> ii. *The Telephone Number was and is Held Out to the World as a Business Number*

Further, even if Plaintiff could rely on the initial registration on the DNC, the DNC registration itself was defective as the Plaintiff's telephone number was previously used *for business purposes*.[9] *See, infra*, Part IV.B.3. It is well settled that the TCPA's DNC registry protects **_residential numbers only_**, not numbers associated with a business. 47 C.F.R. § 1200(c)(2) (defining DNC protections in relation to "residential telephone subscriber[s]"). *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3793 (2005) ("To the extent that some business numbers have been inadvertently registered on the national registry, calls made to such numbers will not be considered violations of our rules.") Therefore, any registration that may have been transferred to Plaintiff and "honored indefinitely" was ineffective and invalid since the telephone number was used for business purposes at the time of the registration; thus, Plaintiff cannot resurrect an invalid DNC registration, especially where, as here, the telephone number is still associated with a business on multiple websites on the internet.

> c. <u>If the Telephone Number Was Not Reassigned, the Exemptions Applicable to the Prior DNC Registrant Apply to Weingrad</u>

The RND shows **_no_** reassignment of the telephone number. [Kalat Decl., ¶¶ 12-15, 17-18]. Accordingly, to the extent the Court rejects *Rombough*, then nevertheless, any prior express consent, inquiry, or established business relationship that is exempt under the DNC registration,

---

[9] District courts consider the following factors in determining whether a phone was used for business purposes: (1) how plaintiffs hold their phone numbers out to the public; (2) whether plaintiffs' phones are registered with the telephone company as residential or business lines; (3) how much plaintiffs use their phones for business or employment; (4) who pays for the phone bills; and (5) other factors bearing on how a reasonable observer would view the phone line. *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022).

DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 17

must likewise apply to Weingrad.  Any other result would be inconsistent[10] as it would allow a new subscriber to rely on the former registrant's DNC while not binding it to actions taken by that registrant to ***exempt*** any violations of the DNC.  Accordingly, because DaBella ***did*** receive an inquiry and obtain prior express consent for the former DNC registrant, and because the former registrant used its number as a business line, DaBella cannot be held liable for any DNC violation in calling Weingrad.  [McMillan Decl., ¶ 18].

> d.  Holding DaBella Liable for Telephone Solicitations to a Reassigned Number Would Not Adequately Balance Interests

Furthermore, to hold that a business telephone number that was previously registered on the DNC applies to a new consumer upon reassignment creates an unworkable situation.  Indeed, it fails to "adequately balance[] the need to maintain accuracy in the national registry with any burden imposed on consumers to re-register periodically their telephone numbers."  *Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-01.  The FCC has ***required*** monthly reporting for disconnected numbers so that these numbers can be used on a national reassigned database.  47 C.F.R. § 64.1200(l)(2).  If, as here, a telephone company fails to remove the telephone number from the DNC upon reassignment then the third-party data sources established by the U.S. Government still show that a prior subscriber is in use of that number.  As such, using the most authoritative sources, companies, such as DaBella, do not have any knowledge that a business or a prior subscriber who had consented to calls, had given up its telephone number, that it had been reassigned to a residential subscriber, and that the new

---

[10] *Cf. Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265, 1267 (11th Cir. 2014) (finding liability for autodialing plaintiff even though defendant obtained consent from former owner and was unaware that the number was no longer assigned to former customer).  However, if consent or other exemptions cannot follow the telephone number, then the DNC registration cannot follow the telephone number.  DaBella's interpretation of 47 C.F.R. § 64.1200(c)(2) is consistent with *Breslow*.

residential subscriber is now relying on and enforcing the DNC registration while rejecting any prior established exemptions. [Kalat Decl., ¶¶ 12-15, 17-18]. As such, there cannot be any TCPA liability for a Defendant who calls a reassigned number in good faith, and without knowledge of any reassignment, especially where, as here, Defendant had consent to call the prior subscriber.

The FCC has acknowledged concerns and attempted to impose some type of relief to overcome this concern. Indeed, Courts have sought review and overturned certain FCC's orders which sought to clarify aspects of the TCPA and impose harsh strict liability against a caller for reassigned numbers. For example, the District Court of Columbia expressly rejected the FCC's attempt to impose a one-call safe harbor approach alone for reassigned numbers. In doing so, the Court rejected the FCC's attempt to hold a caller "strictly liable for all calls made to the reassigned number, even if she has no knowledge of the reassignment." *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F3d 687, 708 (D.C. Cir. 2018). The Court stated:

> We cannot say without any substantial doubt that the agency would have embraced the "severe" implications of a pure, strict-liability regime even in the absence of any safe harbor. As a result, we must set aside the Commission's treatment of reassigned numbers as a whole.

*Id*. at 708-09. The TCPA was never intended to create such a harsh result as to impose liability on a defendant for making calls to a new registrant who did not himself register on the DNC, especially where there is no record of any reassignment of the number. Even in absence of statutory or regulatory language creating any defense to a caller beyond the safe harbor, Courts have nevertheless imposed such a defense of reasonable reliance finding "persuasive the FCC's order emphasizing that the TCPA does not require the impossible of callers." *Sandoe v. Boston Sci. Corp*., CV 18-11826-NMG, 2020 WL 94064, at *4 (D. Mass. Jan 8, 2020) (citations omitted) (upholding reasonable reliance defense).[11] This is especially true where, as here, the suggested

---

[11] Courts can interpret the TCPA in the absence of agency guidance and have already done so.

DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 19

work-arounds to identify a reassigned number were in fact impossible. *N. L. by Lemos v. Credit One Bank, N.A.*, 960 F3d 1164, 1171 (9th Cir. 2020) (calling to confirm the number is not reassigned, reverse lookup, or using reassigned number database).[12]

In sum, Plaintiff has no standing to pursue the TCPA action where, as here: (1) he did not register the telephone number on the DNC, (2) prior express consent was provided to call the person on the DNC registry prior to the reassignment, (3) the DNC registration is invalid due to the administrator's failure to remove Weingrad's number from the registry after reassignment, and (4) the DNC registration is invalid due to the telephone number being used for business purposes. For any or all of these reasons, Plaintiff lacks standing.

### 3. Plaintiff Lacks Standing to Bring Claims Under the TCPA Because His Cellular Number is Associated with a Business

Plaintiff cannot show that he is a "residential telephone subscriber" as required under the TCPA to state a claim. 47 C.F.R. § 64.1200(c)(2). Because Plaintiff's telephone number is a cellular telephone number, he has the burden to show his telephone is being used for residential purposes. *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 656 (W.D. Tenn. 2020) (citations omitted); *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1120 (W.D. Mo. 2020) (further proof may be required to show that a wireless subscriber uses their wireless phone in the same manner in which they would use their residential landline phone).

Indeed, a plaintiff lacks standing to bring claims under the TCPA for calls to telephone numbers listed on the DNC when the phone number is also for business use. As the Eastern District

---

*Jiminez v. Credit One Bank, N.A.*, 377 F Supp 3d 324, 336 (SDNY 2019) (citing *Pieterson v. Wells Fargo Bank, N.A.*, 2018 WL 3241069, at *3 (N.D. Cal. July 2, 2018) (denying similar request for a stay in part because "interpreting the term 'called party' does not necessarily require any particular expertise that the FCC might offer").

[12] Weingrad advised DaBella on February 6, 2025, that he was "Robert Bronson," and neither a reverse lookup or reassigned number database reflect the reassignment.

in Pennsylvania stated:

> The Phone Number is also for business use, and business numbers are not permitted to be registered on the National Do Not Call Registry. *Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Red. 9779, 9785 (June 17, 2008) ("As the Commission has previously stated, the National Do Not Call Registry applies to 'residential subscribers' and does not preclude calls to businesses."); 47 C.F.R. § 64.1200(c)(2) (prohibiting telephone solicitation to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."); *cf.* 16 C.F.R. § 310.4(b)(1)(iii)(B) ("It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to ... intiat[e] any outbound telephone call to a person when ... [t]hat person's telephone number is on the 'do-not-call' registry[.]"); id. § 310.6(b)(7) (exempting from liability, "[t]elephone calls between a telemarketer and any business, except calls to induce the retail sale of nondurable office or cleaning supplies."). Indeed, the website of the Federal Trade Commission ("FTC") regarding the National Do Not Call Registry features frequently asked questions, one of which is asked and answered as follows. "Can I register my business phone number or a fax number? The National Do Not Call Registry is only for personal phone numbers. Business-to-business calls and faxes are not covered." Federal Trade Commission Consumer Information, https://www.consumer.ftc.gov/articles/0108-national-do-not-call-registry (last visited Apr. 16, 2019). The FTC's website also has a page titled "Q & A for Telemarketers & Sellers About DNC ["Do Not Call"] Provisions in TSR ["Telemarketing Sales Rule"]," which states under the heading "Business-to-Business Calls," "Most phone calls to a business made with the intent to solicit sales from that business are exempt from the Do Not Call Provisions." https://www.ftc.gov/tips-advice/business-center/guidance/qa-telemarketers-sellers-about-dnc-provisions-tsr (last visited Apr. 16, 2019). Accordingly, because Plaintiff held the Phone Number out to the world as a business phone number, he could not register it on the National Do Not Call Registry for purposes of avoiding business-to-business calls, such as those giving rise to this action. Thus, Plaintiff has not suffered an injury-in-fact by way of receiving business-to-business robocalls on a phone number he registered on the National Do Not Call Registry, and his claims predicated on § 227(c)(3)(F) are dismissed for a lack of standing.

*Shelton v. Target Advance LLC*, No. CV 18-2070, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019).

A review of publicly available information on the internet demonstrates that Plaintiff's number is associated with a ***business*** and, thus, is not residential. 47 C.F.R. § 64.2305(d) (A "residential telephone subscriber" is a "subscriber to a telephone exchange service that is not a

business subscriber.").  Indeed, Plaintiff's telephone number is advertised in connection with "Merlin Home Magic" as a "residential general contractor."  [McMillan Decl., ¶ 18]; [Request for Judicial Notice, Exs. 1-5]. The websites specifically advertise and invite callers to contact the company and lists Plaintiff's telephone number.  *Id*.  Thus, Plaintiff is ***inviting*** and ***consenting*** to calls not only from customers, but also from other contractors who may want to do business with Plaintiff. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3793 (2005) ("To the extent that some business numbers have been inadvertently registered on the national registry, calls made to such numbers will not be considered violations of our rules.").  DaBella has identified a prior consent received in 2023 for this same telephone number and thus, had an additional consent to call the Plaintiff's telephone number. In addition, the voicemail specifically identified it as a business line by answering "Merlin Home Magic."  [McMillan Decl., ¶ 18].  While this business may have been associated with a prior owner, Joseph Arnold, Plaintiff has testified that he has been the subscriber of this telephone number for over a year.  [Zelmer Decl., Ex. 2, (Weingrad depo, 14:2-7)].  There is no evidence to show that Plaintiff made any attempt to remove his number as being associated with this business. Plaintiff cannot hold DaBella liable under the TCPA when Plaintiff's phone number is being held "out to the world" as associated with a business.  Accordingly, the Court should grant summary judgment in favor of DaBella.

### 4. <u>Plaintiff Did Not "Receive" "More than One" Telephone Call in Violation of the National DNC Registry</u>

In the First Cause of Action of its First Amended Class Action Complaint, Plaintiff has raised a violation of the National DNC Registry on behalf of himself and the class under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c).  Section 47 U.S.C. § 227(c)(5) expressly provides a right of action only if a plaintiff receives "more than one telephone call within any 12-month period"

that is in violation of the regulations.  47 C.F.R. § 64.1200(c) states that "[n]o person or entity

shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered

his or her telephone number on the do-not-call registry . . . ."[13]    Therefore, Plaintiff must be able

to show that Defendant called him more than once in violation of his DNC registration.  However,

Plaintiff cannot do so.

   a. <u>Plaintiff Only "Received" One Telephone Call</u>

  District Courts have held that only "answered" telephone calls are considered "received."

Indeed, under very similar circumstances as here, the Pennsylvania Eastern District dismissed a

case *filed by this same Plaintiff on <u>this very issue</u>* in *Weingrad v. Top Healthcare Options*, 2024

WL 4228149 (E.D. Pa Sept. 17, 2024), even though the Defendant had placed nine calls to Mr.

Weingrad.  As the Pennsylvania Eastern District Court held:

> Top Healthcare Options placed nine calls to Mr. Weingrad. **But Mr. Weingrad
> only answered one of these calls. Mr. Weingrad does not allege more than one
> telephone solicitation within a twelve-month period.** He does not presently
> allege Top Healthcare Options violated the Telephone Consumer Protection Act.

*Weingrad v. Top Healthcare Options*, 2024 WL 4228149 (E.D. Pa Sept. 17, 2024) (e.s.) (citing

*Gillam v. Reliance First Cap., LLC*, No. 21-4774, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023)

(call recipient failed to plausibly state a claim because blocked, missed, or declined calls are not

"telephone solicitations" under the Act).

---

[13] The Plaintiff must also first establish an individual claim to qualify as a class representative of
the class he has alleged, as follows:
> **National Do Not Call Registry Class:**  All persons within the United States: (1)
> whose residential telephone numbers were on the National Do Not Call Registry
> for at least 31 days; (2) but who *received* **more than one telephone solicitation**
> call from Defendant or any third party acting on Defendant's behalf; (3) within a
> 12-month period; (4) within the four years prior to the filing of the Complaint.
[ECF No. 1, ¶ 47] (e.s.).

Similarly, here, as in the *Top Healthcare Options* and *Gillam* matter, Plaintiff cannot prove that he *received* more than one "telephone solicitation call" in a 12 month period.  Although Plaintiff's call log shows three incoming calls from Defendant, Plaintiff admits that he only answered, and spoke to DaBella, on **_one_** incoming call.  [Zelmer Decl., Ex. 2 (Weingrad depo, 31:12-18)].  Therefore, Plaintiff's individual claim fails.  *See also Greene v. Select Funding, LLC*, No. 20-7333, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (emphasis in original) ("[W]hile [plaintiff] alleges that he received eight calls from Defendant's number within a one-year period, he only answered one of these calls—on April 10, 2020. Thus, at best, Plaintiff has only alleged one telephone solicitation ... [and] has not alleged the content of the other calls that would allow the Court to reasonably infer that these other calls were solicitations.").  As the next section explains, the alleged call made on September 11, 2025 does not change this result as Plaintiff had already established a business relationship with Defendant.

### b.  The Plaintiff Established a Business Relationship on the First Call

The Commission has expressly excluded liability for sellers who either (1) established a business relationship, (2) received an inquiry, or (3) obtained prior express permission from such consumers listed on the DNC registry.  *Id.* at 44148, 44158-60 ¶¶ 20, 21, 22, 81-83, 92.  The sellers are entitled to contact consumers with whom they have established a business relationship for a period of 18 months from the last payment or transaction, or 3 months in the event of an inquiry, even when listed on the DNC registry.  *Id.*  Courts have acknowledged that false affirmation that a registrant is interested establishes a business relationship, excusing subsequent calls.  *See*, *Charvat v. Southard Crop.*, 2019 WL 13128407 (2019) (a plaintiff's "false affirmation" that he is interested in a caller's services establishes a business relationship, excusing subsequent calls").  Here, Plaintiff himself acknowledged consent and interest in DaBella's products, and made an

appointment.[14]  Thus, any calls made thereafter were not violations of the DNC Registry.  To the extent that Plaintiff asserts that the lawsuit served as notice to stop calling, then the September 11, 2025 call could only be alleged as a violation of the internal DNC that are included in his allegations in the Third Claim, and **_not_** the National DNC registry as alleged in the First Claim.

### 5.  **Plaintiff Cannot Establish Concrete Injury**

Courts also grant summary judgment against a plaintiff for lack of a concrete injury (i.e., standing) where the evidence established that the calls at issue were induced for the purpose of bringing a TCPA claim. *See Stoops v. Wells Fargo Bank, N.*A., 197 F.Supp.3d 782, 797, 800–06 (W.D. Pa. 2016) (summary judgment granted where plaintiff welcomed calls to profit from bringing TCPA claims and therefore did not have Article III constitutional or "prudential" standing as the calls were not "unwanted"); *see also Shelton v. Target Advance LLC*, No. 18-2070, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019) (summary judgment denied on standing grounds because additional discovery was needed, but strongly suggested that if plaintiff's sole purpose was to "drum up TCPA litigation by inducing … robocalls," then plaintiff's claims would be barred); *Laccinole v. Inter. Union of Police Assoc.*, 638 F. Supp. 3d 110, 116 (D.R.I. Oct. 26, 2022) (accord and dismissed for lack of standing).  Here, Plaintiff engaged in an extensive and voluntary interaction with Defendant regarding its products and services, and made an appointment to obtain a quote; he intentionally induced Defendant to call him.  *See supra*, Part I., ¶¶ 6-10.  This voluntary invitation and expression of interest by Plaintiff is consistent with other cases filed by Plaintiff.

---

[14] This is not simply a situation where a plaintiff falsely affirmed interest.  Plaintiff made direct statements of fact that were false and verified the identity of "Robert" on the consent form received by DaBella.  Plaintiff further verified a Robert Bronson email address, and stated that he owned a home and owned it alone.  [Zelmer Decl., Ex. 2, (Weingrad depo, Aug. 18, 2025, 38:12-14, 40:13-42:4].  He should not be able to now dispute his admission of consent to the call and verification of the inquiry that DaBella received.  *United States v. Edwards*, 156 F. App'x 954, 956 (9th Cir. 2005) (prior false statements may have some relevance to a witness's credibility).

*Id.* at ¶¶ 18-19.  Indeed, Plaintiff records all calls and indicated that such recordings assist him in TCPA actions.  [Zelmer Decl., Ex. 2, (Weingrad depo, p. 32:3-6)].

Additionally, courts have recognized that "TCPA suits have, in many instances, been abused by serial litigants; and going forward each such case merits close scrutiny. . . ." *Morris v. Unitedhealthcare Ins. Co.*, No. 415-CV-00638, 2016 WL 7115973, at *6 (E.D. Tex. Nov. 9, 2016).  *See also, Human v. Fisher Investments*, 2025 WL 2614039 (E.D. Miss Sept. 10, 2025) (finding that filing of over 65 actions in a one year period and the idea that Human received so many unsolicited calls "taxes the credulity of the credulous").  Similar to these cases, Weingrad has filed at least 34 TCPA class actions over the last two years; most cases that have been resolved have been voluntarily dismissed.  *See*, PACER locater *supra*, fn. 3.  In addition to filing multiple TCPA actions using his old telephone number, immediately after obtaining his *new* telephone number, Plaintiff has filed over 19 TCPA lawsuits since October 2024.  These cases involve Plaintiff identifying himself as other individuals, including Gary Williams and Jill Herrala.  *See supra* Part I. ¶ 19.  As stated in *Human*, the idea that Weingrad received so many unsolicited calls "taxes the credulity of the credulous."  As such, the Court should grant summary judgment in favor of Defendant.

## IV.    RESERVATION

This motion for summary judgment is submitted based on limited discovery obtained to date.  Defendant reserves all rights to submit a subsequent motion for summary judgment.[15]

---

[15] On July 18, 2025, the Court indicated that it would not limit Defendant to one summary judgment motion.

DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 26

### V.     C<small>ONCLUSION</small>

WHEREFORE, DABELLA respectfully requests the Court to enter judgment in its favor

on Plaintiffs' first claim and for such other relief as the Court deems just and advisable.

Dated: February 10, 2026             Respectfully submitted,

Drew L. Eyman, OSB No.: 163762
Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, OR 97204-3229
T: (971) 213-1070
Email:  deyman@swlaw.com
*Counsel for Dabella Exteriors LLC*

-and-

/s/ Diane J. Zelmer, Esq.
Diane J. Zelmer, Esq., *pro hac vice*
BERENSON LLP
4495 Military Trial, Suite 203
Jupiter, Florida 33458
Tel:  (561) 429-4496
Fax: (703) 991-2195
Email:  djz@berensonllp.com
Secondary Email: hcc@berensonllp.com
*Attorneys for Dabella Exteriors LLC*

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b),

54-1(c), or 54-3(e) because it contains 8,678 words, including headings, footnotes, and quotations,

but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits,

and any certificates of counsel.

s/ Diane J. Zelmer
Diane J. Zelmer, FL Bar 27251 (pro hac vice)
*Counsel for DaBella Exteriors LLC*

DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 27