Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
SNELL & WILMER L.L.P.
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
Telephone:  503.624.6800
Facsimile:  503.624.6888
*Attorney for Defendant, DABELLA EXTERIORS, LLC*

Diane J. Zelmer, Esq. (pro hac vice)
FL Bar No. 27251
BERENSON LLP
4495 Military Trail, Suite 203
Jupiter, Florida 33458
Telephone: 561-429-4496
Email: djz@berensonllp.com
*Attorney for Defendant, DABELLA EXTERIORS, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>DABELLA EXTERIORS LLC,<br><br>      Defendant. | Case No. 3:25-CV-00396-SI<br><br>DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION OR STRIKE CLASS ALLEGATIONS<br><br>ORAL ARGUMENT REQUESTED |

## <u>TABLE OF CONTENTS</u>

Contents

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................... iv

LR 7-1 CERTIFICATION ........................................................................................... 1

MOTION ..................................................................................................................... 1

MEMORANDUM ....................................................................................................... 1

**A.**   STATEMENT OF THE NATURE OF THE MATTER BEFORE THE COURT .................................. 1

**B.**   SUMMARY OF ARGUMENT ............................................................................... 2

**C.**   STATEMENT OF FACTS ..................................................................................... 3

**D.**   STATEMENT OF QUESTION PRESENTED ............................................................ 10

**E.**   ARGUMENT ..................................................................................................... 10

   1.   *DEFENDANT RECEIVED EXPRESS WRITTEN CONSENT TO CALL PLAINTIFF, AND PLAINTIFF'S ACTIONS ESTABLISH A PATTERN OF VOLUNTARY SUBMISSION OF HIS EXPRESS WRITTEN CONSENT* 10

   2.   *PLAINTIFF'S CLAIM CONSTITUTES A "WRONG NUMBER" OR "FRAUDULENT LEAD" CASE THAT IS NOT CERTIFIABLE* ............................................................................... 12

   3.   *PLAINTIFF'S DNC CLASS CLAIMS SHOULD BE STRICKEN BECAUSE HE CANNOT MEET THE STRICT REQUIREMENTS OF RULE 23* ........................................................... 15

     a.   Plaintiff Cannot Show That Common Questions Predominate Under Rule 23(b)(3) Or That a Class Action is a Superior Method of Adjudicating This Case. ............................... 17

      i. Individual Issues Will Predominate Over Common Inquiries at Trial. 17

       1.Individual Issues of Consent Predominate and Preclude Certification. ................................................................................................. 19

       2.Individual Issues of the *Validity* of the Consent Predominate and Preclude Certification. ................................................................................. 20

4906-9350-5934

3.Individualized Issues Also Predominate With Respect to  Whether an Arbitration Clause or Class Waiver Applies. ............................................................... 23

4.Individualized Questions Also Predominate With Respect to  Whether the Plaintiff's Telephone Number is Used and Held Out to the World For Business. ...................... 24

ii. Plaintiff Cannot Show Superiority Because Myriad Individual Issues Exist That Do Not Lend Themselves to a Single Trial. ............................................................... 25

iii.Plaintiff Cannot Establish Any of the Other Prerequisites for Class Certification Under Rule 23(a). ................................................................................................... 26

1.Plaintiff's Claims Are Not Typical to the Broad Class Because They Involve a Unique, One-Off Situation and No Other Putative Plaintiff Would Be Similarly Situated. ...... 26

2.Plaintiff Cannot Establish Commonality Because Common Answers to Core Questions Will Not Drive the Resolution of the Claims. ............................................ 27

3.Plaintiff Cannot Establish Numerosity Because It Is Unlikely that There Would Be a Sufficient Number of Defendants Similarly Situated. .................................................. 28

4.    *ALTERNATIVELY, THE COURT SHOULD STRIKE PLAINTIFF'S CLASS DEFINITION* ................... 29

a.    The Class Definition is Overbroad ................................................................. 29

b.    The Class Definition is Not Common to Plaintiff's Claim ........................................... 31

I. Plaintiff's Class Definition Should Exclude Calls to Individuals who Consented. ....... 31

ii. Plaintiff's Class Definition Should Exclude Calls to Individuals Who Had Established Business Relationships. ........................................................................................... 32

III.Plaintiff's Class Definition Should Exclude Those with Arbitration Agreements or Class Action Waivers. ................................................................................................... 32

iv.Plaintiff's Class Definition Should be Narrowed to Fraudulent Leads Submitted Under a Wrong Name. ........................................................................................................... 33

v. Plaintiff's Class Definition Should be Narrowed to Lead Forms Submitted Through https://www.searchrenovation.us. .................................................................................. 34

vi.Plaintiff's Class Definition Should be Narrowed to the IP Address in Oregon. 34

vii.Plaintiff's    Class    Definition    Should    be    Narrowed    to    Oregon    Leads. 34

**F.    CONCLUSION** ................................................................................................ 35

CERTIFICATE OF COMPLIANCE .......................................................................... 37

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002) ......................................................... 24

*Agne v. Papa John's Int'l, Inc.,* 286 F.R.D. 559 (W.D. Wash.  2012) ......................................... 22

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ............................................................ 23

*Balthazor v. Cent. Credit Servs., Inc.*, No. 10-62435-CIV, 2012 WL 6725872 (S.D. Fla. Dec. 27, 2012) ......................................................................................................................................... 28

*Banarji v. Wilshire Consumer Cap., LLC*, No. 3:14-cv-02967-BEN-KSC, 2016 WL 595323 (S.D. Cal. Feb. 12, 2016) ................................................................................................................... 17

*Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019) ......................... 13

*Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019 (D. Nev. 2018) ................................................ 20

*Brodsky v. Humana Dental Ins. Co.*, 910 F.3d 285 (7th Cir. 2018) ............................................. 22

*Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) ......................... 26

*Charvat v. Southard Crop.*, 2019 WL 13128407 (2019) .............................................................. 11

*Clark v. Via Renewables, Inc.*, 24-CV-00568-JSC, 2025 WL 2968027 (N.D. Cal. Oct. 21, 2025) .............................................................................................................................. 2, 13, 34

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .......................................................................... 17

*Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574 (S.D. Cal. 2013) ................ 20, 31

*Cuthie v. Fleet Reserve Ass'n*, 743 F.Supp.2d 486 (D. Md. 2010) .............................................. 17

*Davis v. AT&T Corp.*, No. 15-CV-2342, 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017) ...... 20

*Davis v. Cap. One, N.A.*, No. 1:22-CV-00903 (AJT/IDD), 2023 WL 6964051 (E.D. Va. Oct. 20, 2023) ......................................................................................................................................... 14

*Deiter v. Microsoft Corp.*, 436 F.3d 461 (4th Cir. 2006) ............................................................. 27

*EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) ............................................................... 27

*Espejo v. Santander Consumer USA, Inc.*, No. 11-C-8987, 2016 WL 6037625 (N.D. Ill. Oct. 14, 2016) ........................................................................................................................... 20

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982)........................................................ 15, 26

*Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008) ............................................ 19

*Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674 (D. Md. 2017)....................................... 19, 22

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003) ............................................. 18

*Hanon v Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)...................................................... 25

*Hansen v. United Airlines, Inc.*, No. 20 CV 2142, 2021 WL 4552552 (N.D. Ill. Oct. 5, 2021) .. 31

*Hirsch v. US Health Advisors, LLC*, 337 F.R.D. 118 (N.D. Tex. 2020)....................................... 22

*Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124 (3d Cir. 2000) ....................... 29

*Human v. Fisher Investments*, 2025 WL 2614039 (E.D. Miss Sept. 10, 2025)............................ 12

*Jamison v. First Credit Servs.*, 290 F.R.D. 92 (N.D. Ill. 2013) .................................................... 20

*Kamm v. California City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975)................................................ 16

*Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557 (7th Cir. 2011) .................................................. 16

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672 (7th Cir. 2009)........... 29, 30

*Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019) .................................................. 17

*Laccinole v. Inter. Union of Police Assoc.*, 638 F. Supp. 3d 110 (D.R.I. Oct. 26, 2022)............. 12

*Lawson Tan v. Grubhub, Inc.*, 2016 WL 4721439 (N.D. Cal. 2016), aff'd sub nom. *Lawson v. Grubhub, Inc.*, 13 F.4th 908 (9th Cir. 2021)............................................................................ 13

*Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138 (4th Cir. 2001) .................................................. 26, 27

*Mattson v. New Penn Fin., LLC, 3:18-CV-00990-YY,* 2023 WL 8452659 (D. Or. Oct 12, 2023), report and recommendation adopted, 3:18-CV-00990-YY, 2024 WL 21568 (D. Or. Jan 2, 2024) ............................................................................................................. 3, 17, 18, 25

*Mattson v. Rocket Mortgage, LLC,* 3:18-CV-00989-YY, 2024 WL 4794710 (D. Or. Sept 16, 2024), report and recommendation adopted, 3:18-CV-00989-YY, 2024 WL 4794639 (D. Or. Nov 14, 2024) ..................................................................................................... 3, 25

*Mattson v. United Mortgage Corp.*, 3:18-CV-00996-YY, 2024 WL 4794711 (D. Or. Sept 16, 2024), report and recommendation adopted, 3:18-CV-00996-YY, 2024 WL 4794641 (D. Or. Nov 14, 2024) ................................................................................................................... 25

*Mattson v. United Mortgage Corp.*, 3:18-CV-00996-YY, 2024 WL 4794711, at *2 (D. Or. Sept 16, 2024), report and recommendation adopted, 3:18-CV-00996-YY, 2024 WL 4794641 (D. Or. Nov 14, 2024) ................................................................................................................... 3

*Messner v. Northshore Univ. Health Sys.*, 699 F.3d 802 (7th Cir. 2012) ..................................... 30

*Miller v. 3G Collect, LLC*, 302 F.R.D. 333 (E.D. Pa. 2014) .................................................. 10, 32

*Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301 (S.D. Fla. 2017) ........................................... 22

*Morris v. Unitedhealthcare Ins. Co.*, No. 415-CV-00638, 2016 WL 6608874 (E.D. Tex. Nov. 9, 2016) ........................................................................................................................... 12

*Murch v. GPS Cap. Markets, LLC*, No. 3:24-CV-01854-SB, 2025 WL 2770190 (D. Or. Sept. 26, 2025) ........................................................................................................................... 16

*Nagel v. DFL Pizza, LLC*, No. 1:21-CV-00946-DDD-SBP, 2024 WL 5095298 (D. Colo. Dec. 4, 2024) ........................................................................................................................... 33

*Newman v. Direct Energy, LP*, No. GJH-21-2446, 2022 WL 4386235 (D. Md. Sept. 22, 2022) 16, 17

*Paper Sys. Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601 (E.D. Wis. 2000) ....................................... 35

*Pavelka v. Paul Moss Ins. Agency, LLC, No. 1:22 CV 02226,* 2023 WL 3728199 (N.D. Ohio May 29, 2023) ................................................................................................................... 10, 31

*Piotrowski v. Wells Fargo Bank, NA*, 2015 WL 4602591 (D. Md. July 29, 2015) .......... 18, 21, 25

*Radulescu v. W. Union Co.*, No. 1:19-cv-03009-DDD-SKC, 2023 WL 9035367 (D. Colo. Nov. 27, 2023) ........................................................................................................................... 33

*Richardson v. Bledsoe*, 829 F.3d 273 (3d Cir. 2016) .................................................................... 16

*Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D.Ill.1986) ............................................................. 35

*Shelton v. Target Advance LLC*, No. 18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019) ...... 12

*Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255 (M.D. Fla. 2019) .................................... 22

*Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267 (4th Cir. 2010) ............................................. 18

*Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp.3d 782, 797 (W.D. Pa. 2016) ............................ 12

*Strange v. Norfolk & W. Ry.*, No. 85–1929, 1987 WL 36160 (4th Cir. Jan. 12, 1987) .......... 15, 16

*Tillman v. Ally Fin. Inc.,* No. 2:16-CV-313-FTM-99CM, 2017 WL 7194275 (M.D. Fla. Sept. 29, 2017) ............................................................................................................................. 20, 24

*Ung v. Univ. Acceptance Corp.*, 319 F.R.D. 537 (D. Minn. 2017) ............................................ 22

*Vallagio at Inverness Residential Condo. Ass'n, Inc. v. Metro. Homes, Inc.*, 412 P.3d 709, (Colo. App. 2015), aff'd, 395 P.3d 788 (Colo. 2017) ....................................................................... 33

*Vann v. Dolly, Inc*., 2020 WL 902831 (N.D. Ill. Feb. 25, 2020) ............................................... 29

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) .................................................... 28

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ......................................................... 17, 31

*Zimmerman v. Bell*, 800 F.2d 386 (4th Cir. 1986) ................................................................... 25

**Other Authorities**

Gensler & Mulligan, 1 *Federal Rules of Civil Procedure, Rules and Commentary,* Rule 23 ...... 25

**Rules**

Fed. R. Civ. P. 23(b)(3) ............................................................................................................... 25

Fed. R. Civ. P. 23 ................................................................................................. 12, 32, 33, 35

Fed. R. Civ. P. 23(a) ........................................................................................................... 16, 26

Fed. R. Civ. P. 23(a)(1) ............................................................................................................... 28

Fed. R. Civ. P. 23(a)(2) ............................................................................................................... 31

**Treatises**

47 CFR 64.1200(c)(2) .................................................................................................................. 31

47 CFR 64.1200(f)(5) .................................................................................................................. 32

47 U.S.C. § 227(c)(3) .................................................................................................................. 30

## LR 7-1 CERTIFICATION

Defendant, DABELLA EXTERIORS LLC ("DaBella" or "Defendant"), hereby certifies that in compliance with Local Rule 7-1, the parties made a good faith effort through email on August 27, 2025 and August 29, 2025, and teleconferences on August 26, 2025 and September 3, 2025, to resolve the dispute in this motion, but have been unable to agree on a resolution.

## MOTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, DaBella moves to deny class certification and strike the class allegations. In support, DaBella provides the following memorandum, the Declaration of Josiah McMillan (Dabella), the Declaration of Diane Zelmer, Defendant's Request for Judicial Notice, the Court's file, and such further evidence and argument as this Court may entertain.

## MEMORANDUM

### A.    STATEMENT OF THE NATURE OF THE MATTER BEFORE THE COURT

On March 6, 2025, Plaintiff, LEON WEINGRAD ("Plaintiff" or "WEINGRAD") filed a Class Action Complaint against Defendant, alleging violations of Telephone Consumer Protection Act § 227 in connection with alleged calls he received from Defendant, which he amended on September 30, 2025. [ECF No. 23]. In the Amended Complaint, Plaintiff alleges that his telephone number (503) XXX-XXXX[1] has been registered on the DNC for over a year prior to the calls at issue. [ECF No. 23, p. 5 ¶ 21]. Plaintiff alleges that he did not consent for Defendant to call him. [ECF No. 23, p. 5 ¶ 26]. Plaintiff seeks to certify the following class:

> **National Do Not Call Registry Class:**  All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call

---

[1] This is the same 503 area code telephone number currently being used by the Plaintiff that is the subject of this lawsuit as filed in the Complaint.

DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION - 1

from Defendant or any third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

Plaintiff's First Amended Complaint also includes a Caller ID Class and Internal DNC Class. [ECF No. 23]. As to these two claims, Defendant has filed a motion to dismiss, which is currently pending before the Court. [ECF No. 24].

B.     <u>SUMMARY OF ARGUMENT</u>

This is ***not*** a situation where DaBella made calls to individuals on the National DNC Registry *en masse*. To the contrary, DaBella's TCPA policies require consent prior to placing *any* marketing calls to an individual on the DNC, and DaBella obtained a consent form to call Plaintiff's telephone number in this specific case. Although Plaintiff contends that he is not the one who visited the website and submitted the consent form; even if true, Plaintiff's claims cannot survive class certification, where, as here, he is alleging – at best – that a fraudulent consent form was submitted by an unknown individual and/or source. Relying on Ninth Circuit authority, district courts have held that fraudulent lead cases, such as this one, do not meet the adequacy and typicality requirements of Rule 23, and are not appropriate for class certification. *Clark v. Via Renewables, Inc.*, 24-CV-00568-JSC, 2025 WL 2968027, at *7 (N.D. Cal. Oct. 21, 2025). Indeed, the factual circumstances involving the Plaintiff's consent are so unique that that is not appropriate for class certification as Plaintiff's claims are not similar to any other putative class members. Further, discovery in this matter would require mini-trials of each class member to determine if they, as plaintiff, dispute the express written consent provided.

Moreover, under the very circumstances here, where Plaintiff's telephone number is held "out to the world" as a business number, this district court has denied class certification ***three times***, finding that Plaintiff could not "meet the typicality and commonality requirements of [Federal Rule of Civil Procedure] because individual questions concerning whether he is a

residential subscriber subject to the TCPA's protections will predominate the litigation." *Mattson v. New Penn Fin., LLC, 3:18-CV-00990-YY,* 2023 WL 8452659 (D. Or. Oct 12, 2023), report and recommendation adopted, 3:18-CV-00990-YY, 2024 WL 21568 (D. Or. Jan 2, 2024); *Mattson v. United Mortgage Corp*., 3:18-CV-00996-YY, 2024 WL 4794711, at *2 (D. Or. Sept 16, 2024), report and recommendation adopted, 3:18-CV-00996-YY, 2024 WL 4794641 (D. Or. Nov 14, 2024); *Mattson v. Rocket Mortgage*, LLC, 3:18-CV-00989-YY, 2024 WL 4794710, at *2 (D. Or. Sept 16, 2024), report and recommendation adopted, 3:18-CV-00989-YY, 2024 WL 4794639 (D. Or. Nov 14, 2024).

Finally, Plaintiff's alleged class definition as pled is overbroad and not common to Plaintiff. If not narrowed, Plaintiff's class encompasses *all* of Plaintiff's lead sources, and such inquiries would involve different consent forms and terms of use for each class member that would require individual inquiry into each class member, and determination if certain clauses, such as arbitration or class waiver clauses, bar such claims.

Moreover, Plaintiff cannot meet the numerosity requirement. DaBella's policy is to obtain a consent for every call that it makes to an individual on the DNC. Even if the class was construed as broadly as Plaintiff requests this Court to do, the class would be limited to any other individuals who alleged fraudulent leads, which would not be numerous enough to support a class.

Accordingly, the Plaintiff's class claims are not appropriate and do not comply with Rule 23 requirements.

C.    STATEMENT OF FACTS

**Plaintiff's Consent and Expression of Interest**

1.    Defendant's records show that it obtained the lead with Plaintiff, LEON WEINGRAD's telephone number, from https://searchrenovation.us.    Defendant received an

express submission of consent for Defendant to call Plaintiff's telephone number. The consent form included Plaintiff's address and telephone number, under the name of "Robert Bronson." [McMillan Decl., ¶ 3-4, Ex. A].

2.      The Plaintiff's lead information is identified as having received input from source IP address XX.XXX.XXX.153, and the user is identified as using Windows 10 operating system and accessing through the Edge search engine. [McMillan Decl., ¶ 5].

3.      When the registration form was completed, the user agreed to the following language:

> By clicking Submit, you represent that you are 18+ years of age and agree to the Privacy Policy and Terms & Conditions. By clicking Submit, "you agree by your electronic signature that you give express written consent to receive marketing communications regarding Solar and Home services by automatic dialing system and pre-recorded calls and artificial voice messages and one or more of its Marketing Partners at the phone number and e-mail address provided by you, including wireless numbers, if applicable, even if you have previously registered the provided number on the Do Not Call Registry. SMS/MMS and data messaging rates may apply." Your understand that my consent here is not a condition for buying any goods or services.

[McMillan Decl., ¶ 6, Ex. A]. DaBella, DaBella Exteriors, DaBella Exteriors LLC, and DaBella Home Improvement are all listed as "Marketing Partners." https://www.searchrenovation.us/legal/.

4.      Any outbound communications made by DaBella to Plaintiff were made after DaBella obtained express written consent to call his telephone number. [McMillan Decl., ¶ 7].

5.      Any and all communications made by DaBella to Plaintiff were made under a good faith belief that Plaintiff submitted his express written consent, and identified an interest to be contacted by DaBella. [McMillan Decl., ¶ 8].

DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION- 4

**Plaintiff Verifies the Information on the Consent Form, and Makes an Appointment**

6.      Defendant only communicated with Plaintiff on one outgoing call on February 7, 2025 at 11:50 a.m.  On that particular occasion, Defendant called Plaintiff, and asked Plaintiff if she was "speaking with Robert."  Plaintiff responded "Yes."  [McMillan Decl., ¶ 9]; [Zelmer Decl., Ex. 2, (Weingrad depo, 38:9-14, Ex. 7)].

7.      DaBella stated:

Hi Robert I was just reaching out to you in regards to a windows inquiry that we had received.  It looks like you were needing some assistance.  Do you know about how many of those windows you were looking into?

Plaintiff responded:  "Um I think it was um, it was 10."  [McMillan Decl., ¶ 9]; [Zelmer Decl., Ex. 2, (Weingrad depo, p. 39:19-41:4)].  Plaintiff admitted that this was not a correct statement as he was not looking for 10 windows.  [Zelmer Decl., Ex. 2, (Weingrad depo,  40:19-41-4)].

8.      DaBella asked Plaintiff whether there is "anyone else should be present to make decisions on the home or again just you, Robert?"  Plaintiff responded "just me."  [McMillan Decl., ¶ 10].

9.      On the call, Plaintiff further verified his address at "████████████."  [McMillan Decl., ¶ 11]; [Zelmer Decl., Ex. 2, (Weingrad depo, 42:12-15, Ex. 7)].  Plaintiff verified that the house is a "████████████" on a ████████" and that the color of the home is ████" [Zelmer Decl., Ex. 2, (Weingrad depo, 4:13-5:1, Ex. 7)].  Plaintiff indicated that he "owns [the home] alone" stated that there are "draft" issues with the windows that are "wood" and he verified that the windows are "original to the home."  [Zelmer Decl., Ex. 2, (Weingrad depo, 40:25:42:4, Ex. 7)].  Plaintiff made an appointment with DaBella for ████████████.  [Zelmer Decl., Ex. 2, (Weingrad depo, 42:16-19, Ex. 7)].

10.    Defendant stated that it has the email address ████████████ and asked whether that is "still a good one" and Plaintiff verified "Yeah just switch it to the one ████████████." [McMillan Decl., ¶ 11]; [Zelmer Decl., Ex. 2, (Weingrad depo, 42:21-44:23)]. Plaintiff admitted that he wanted DaBella to email him. [Zelmer Decl., Ex. 2, (Weingrad depo, 44:18-23)]

## Lead Information

11.    The consent form submitted on httpss://searchrenovations.us identified the source IP address of XX.XXX.XXX.153. [McMillan Decl., ¶ 5]. Byran Van Cleave was identified as the user of the IP address on February 6, 2025, the date of the submission of the consent form. [Zelmer Decl., Ex. 1, (Van Cleave depo, Ex. 2)]. Mr. Van Cleave testified that he has no knowledge of anyone who utilized his IP address on February 6, 2025 and does not know who completed the online form. [Zelmer Decl., Ex. 1, (Van Cleave depo, 15:16-22, 21:20-23)].

## Leon Weingrad's Deposition

12.    Mr. Weingrad admitted that he only answered, and spoke to DaBella, on **_one_** outbound call made to him from DaBella on February 7, 2025. [Zelmer Decl., Ex. 2, (Weingrad depo, 31:12-18)]. Mr. Weingrad admitted that he made an inquiry for windows during that call. [Zelmer Decl., Ex. 2, (Weingrad depo, 54:17-23)]. He received no further calls from DaBella after calling back and cancelling the appointment. [Zelmer Decl., Ex. 2, (Weingrad depo, 47:13-16)].

13.    Mr. Weingrad admitted that the information he provided to DaBella on the February 7, 2025 call was false. [Zelmer Decl., Ex. 2, (Weingrad depo, 38:12-14, 40:13-42:4)].

14.    Mr. Weingrad admitted that he does not know the purpose of DaBella's telephone calls other than the one he answered on February 7, 2025. [Zelmer Decl., Ex. 2, Weingrad depo, 53:19-23)].

15.    Mr. Weingrad testified that he records all calls unless it's a contact in his phone. [Zelmer Decl., Ex. 2, (Weingrad depo, p. 32:3-6)].  He admitted the recordings have been useful in TCPA filings. [Zelmer Decl., Ex. 2, (Weingrad depo, 33:10-19)].

16.    Mr. Weingrad indicated that he never visited the website, and had no knowledge of the identity of the individual who submitted the consent form on his behalf to searchrenovation.net. [Zelmer Decl., Ex. 2, (Weingrad depo, 22:18-23:2)].

17.    Mr. Weingrad conceded that other than communications with his attorney, he knew of no facts other than the call that he has been receiving to substantiate his statement that submission of false leads are common.  [Zelmer Decl., Ex. 2, (Weingrad depo,  62:5-64:3-24)].

**Mr. Van Cleave's Deposition**

18.    Mr. Van Cleave testified that he never visited the site "https://searchrenovation.us" and that nobody else in his house has access to his IP address.  [Zelmer Decl., Ex. 1, (Van Cleave depo, 11:11-13)].  Mr. Van Cleave stated that he was not affiliated with a lead generator, and does not know if a lead generator accessed his IP address on February 6, 2025.  [Zelmer Decl., Ex. 1, (Van Cleave depo, 22:17-23:22)].

19.    Mr. Van Cleave purchased a new mobile telephone from Boost Mobile on February 31, 2025.  [Zelmer Decl., Ex. 3, (Van Cleave Email, Boost Mobile receipt, pp. 15-16)].  Mr. Van Cleave stated when he first got it, it had a "bunch of pop-ups all the time" and he "had to do a factory reset to it, to get it to work correctly."  [Zelmer Decl., Ex. 1, (Van Cleave depo, 27:9-15)].  Mr. Van Cleave did not know for sure if he was hacked, but talked with his brother who said he was probably hacked.  [Zelmer Decl., Ex. 1, (Van Cleave depo, 8:4-11)].

DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION- 7

**DaBella's TCPA Policies**.

20.     DaBella maintains a TCPA written policy to ensure, *inter alia*, compliance with the national-do-not-call rules.  [McMillan Decl., ¶ 13, Ex. B].    DaBella posts these policies in every cubicle in its call center.  *Id*.

21.     DaBella maintains a TCPA policy to obtain consent to call numbers on the DNC, though it obtains that consent in unique ways, via dozens of unique lead forms and of data sources. The consent forms obtained by DaBella have varying terms of conditions, including arbitration clauses  and  class  action  waivers.    https://dabella.us/consumer-privacy-texting-and-dispute-resolution-policy/.  [McMillan Decl., ¶ 15].

22.     DaBella is only aware of a handful of other individuals, out of the hundreds of thousands of calls made per month, that are similarly situated to Plaintiff, who formally contended (via demand letter or lawsuit)[2] that they did not submit the consent form received by DaBella. [McMillan Decl., ¶ 17].

**Other Litigation**.[3]

23.     Plaintiff has filed ***at least 34 other TCPA cases***.[4]  There are common characteristics of lawsuits that have been filed by Leon Weingrad through use of two different telephone numbers.

---

[2] Of  the  7  demands/lawsuits  over  the  last  year,  4  have  involved  the  same  website  here https://searchrenovation.us, owned by Richardson Marketing Group.  DaBella paused all traffic from Richardson Marketing Group on October 8, 2025.

[3] At the time of the deposition, the Court did not permit DaBella to inquire Leon Weingrad about other lawsuits; therefore, this information is based on public records.  DaBella expressly reserves the right to submit additional evidence in support of this Motion based on additional discovery obtained, including a second deposition of Leon Weingrad.

[4] *See e.g., Weingrad v. First American Home Warranty Corporation* (E.D. Pa. 2:24-cv-05488); *Weingrad v. Premium Merchant Funding One, LLC* (E.D. Pa. 2:24-cv-06247); *Weingrad v. Posigen Developer, LLC* (E.D. Pa. 2:24-cv-06503); *Weingrad v. Fund Mate, LLC et al* (E.D. Pa. 24-cv-04716);*Weingrad v. Quotelab, LLC* (E.D. Pa. 2:23-cv-05007) (voluntary dismissal with prejudice); *Weingrad v. National Health Enrolment Centre* (E.D. Pa. 2:23-cv-05114); *Weingrad v. RFR Capital LLC* (E.D. Pa. 2:24-cv- 02636) (voluntary dismissal without prejudice); *Weingrad*

Since October 2024, beginning **only a few months after Leon Weingrad obtained the telephone number** 503-XXX-XXXX, Mr. Weingrad has filed **_at least 19 TCPA cases_**.

24.     The common theme is that the (1) identity of the user who has submitted Mr. Weingrad's information is concealed, (2) in some cases, the name of the individual on the consent form contains a name different than Leon Weingrad, and (3) in the communication with the caller, Mr. Weingrad enters into voluntary communications and makes admissions conceding to the call and the details of the inquiry submitted.   For example, in *Weingrad v Quotewizard.com*, Weingrad's telephone number 503-XXX-XXXX was submitted to the RateKick website on December 13, 2024 under the name "Gary Williams" using an unidentifiable (potentially spoofed) IP address with a location in Pakistan.  *Weingrad v Quotewizard.com, LLC*, Case No.1: 25-cv-

---

*v. Westmount Funding LLC* (E.D. Pa. 2:24-cv-03705); *Weingrad v. Iban Global LLC et al* (E.D. Pa. 2:24-cv-04212); *Weingrad v. Baker Solutions Inc.* (E.D. Pa. 2:25-cv-01792). *See also Weingrad v. SmartMatch Insurance Agency, LLC* (M.D. Pa. 1:24-cv-02067) (voluntary dismissal with prejudice); *Weingrad v. Yelp Inc.* (M.D. Pa. 24-cv-01330) (voluntary dismissal without prejudice); *Weingrad v. Quotewizard.com, LLC* (M.D. Pa. 1:25-cv- 00002) (voluntary dismissal individual claims with prejudice); *Weingrad v. Synergy BPO LLC* (N.D. Tex. 4:24-cv-00610) ) (voluntary dismissal without prejudice); *Weingrad v. DH & RK Investments LLC* (C.D. Ca. 2:24-cv-05981) (voluntary dismissal without prejudice); *Weingrad v. Top Healthcare Options Insurance Agency Inc.* (S.D. Fl. 24-cv-61930) (voluntary dismissal without prejudice); *Weingrad v. Direct Health Solutions Insurance Agency, LLC* (S.D. Fl. 24-cv-62282) (settlement indicating dismissal with prejudice); *Weingrad v. DH & RK Investments LLC* (S.D. Fl. 24-cv-80701); *Weingrad v. Tier One Insurance Company* (M.D. Ga. 4:25-cv-00124) (voluntary dismissal with prejudice); *Weingrad v. Block Equity Group LLC* (E.D. N.Y. 2:24-cv-02618) (voluntary dismissal with prejudice); *Weingrad v. Slingshot Enterprises Inc.* (E.D. N.Y. 2:24-cv-03736) (voluntary dismissal with prejudice); *Weingrad v. K9 Bookkeeping, LLC* (S.D. N.Y. 1:24-cv-06256); *Weingrad v. BuyerLink Inc. et al* (D. Or. 3:24-cv-02114) (voluntary dismissal with prejudice); *Weingrad v. CHW Group, Inc.* (D. Or. 3:25-cv-00370) (dismissal of individual claims with prejudice); *Weingrad v. DaBella Exteriors LLC* (D. Or. 3:25-cv-00396); *Weingrad v. LifeWave, Inc.* (D. Or. 3:25-cv-00752); *Weingrad v. Exact Care Pharmacy, LLC* (E.D. Pa. 2:25-cv-01843) (order of dismissal with prejudice upon settlement); *Weingrad v. Franchise Creator, LLC* (S.D. Fla. 25-cv-22746) (voluntary dismissal without prejudice); *Weingrad v. David Dixon (E.D. N.Y. 2:25-mc-01930); Weingrad v. Business Capital, LLC (E.D. Penn. 2:25-cv-06344-JHS); Weingrad v. Westmount Funding, LLC* (E.D. Penn. 2:24-cv-03705-GAW) (order dismissing class claims); *Weingrad v. Everquote, Inc.*, (D. Mass. 1:26-cv-10197-PGL).

00002-JPW, in the Middle District of Pennsylvania. [ECF No. 5-2, ¶¶ 5, 17].  In *Weingrad v. Exact Care Pharmacy, LLC*, Case No. 2:25-cv-1843-MMB, in the Eastern District of Pennsylvania, the consent form was submitted with an IP address ending in 3.160 under the name of "Joseph Arnold" and Weingrad identified himself as "Jill Herrala."  [ECF No. 19-1, pp. 4-5, Ex. 1, ¶¶ 8-9].  In both these cases, like here, Plaintiff voluntarily communicated and conceded consent.

### D.    STATEMENT OF QUESTION PRESENTED

First, should the court deny class certification or strike the class allegations for the DNC class, where, as here, the Defendant received an express consent form for Defendant to call?

Second, should the Court deny class certification or strike the class allegations where, as here, Plaintiff denies ever visiting the website, and thus, the issue of consent involves unique circumstances involving an allegedly fraudulently submitted lead?

Third, should the Court deny class certification or strike the class allegations, where, as here, factual discovery would require mini-trials of every single class member?

### E.    ARGUMENT

1.    *DEFENDANT RECEIVED EXPRESS WRITTEN CONSENT TO CALL PLAINTIFF, AND PLAINTIFF'S ACTIONS ESTABLISH A PATTERN OF VOLUNTARY SUBMISSION OF HIS EXPRESS WRITTEN CONSENT*

The TCPA specifically exempts a caller from liability if the caller has received "prior express invitation or permission" from the recipient to be called.  47 CFR 64.1200(c)(2).  Such prior express consent is a complete defense to a TCPA claim. *Pavelka v. Paul Moss Ins. Agency, LLC, No. 1:22 CV 02226,* 2023 WL 3728199, at *3 (N.D. Ohio May 29, 2023). ("[P]rior express consent to receive the calls at issue is a complete defense to TCPA claims."); *see also Miller v. 3G Collect, LLC*, 302 F.R.D. 333, 338 (E.D. Pa. 2014).

It is DaBella's policy to obtain express consent from any lead on the National DNC before calling them. [McMillan Decl., ¶ 15]. Indeed, here, DaBella received a submitted claim form for Plaintiff, which contained his phone number, name and email, expressly consenting for Defendant to call him despite being on the do not call list. [McMillan Decl., ¶ 3, Ex. A]. In fact, Plaintiff confirmed his name, address, and email, in the first and only call which he answered from DaBella, and he proceeded to acknowledge an interest in DaBella's products and set an appointment to obtain a quote from Defendant [McMillan Decl., ¶ 9]; [Zelmer Decl., Ex. 2, (Weingrad depo, p. 38:9-14, Ex. 7)]. Thus, at a minimum, an "established business relationship" ("EBR") was established from this two-way voluntary communication. *See Charvat v. Southard Crop.*, 2019 WL 13128407 (S.D. Ohio 2019) (a plaintiff's "false affirmation" that he is interested in a caller's services establishes a business relationship, excusing subsequent calls"). Therefore, Plaintiff established a business relationship with the Defendant on that call whether he submitted the consent form or not. Moreover, this is not the typical "false affirmation" where, as here, Plaintiff admitted that he was "Robert" the individual identified in the consent form submitted to DaBella, and verified a "Robert Bronson" email address. [McMillan Decl., ¶ 9, 11]; [Zelmer Decl., Ex. 2, (Weingrad depo, 38:9-14, 42:21-44:23, Ex. 7)]. Further, Plaintiff provided false information that he was experiencing "draft" issues and was interested in 10 windows. [Zelmer Decl., Ex. 2, (Weingrad depo, 40:19-42-4, Ex. 7)]. Accordingly, Plaintiff should not be able to now contend that he did not consent to the call.

This situation is further exacerbated under the particular circumstances here that indicate a ***pattern*** of consent being provided to several companies to contact the phone number at issue, Mr. Weingrad making admissions which concede that he requested an inquiry from such companies, Mr. Weingrad admitting that he is the individual on whose behalf the consent was provided, and

then filing a lawsuit to try and receive compensation for calls made pursuant to that express consent.[5]  Under these circumstances, Plaintiff cannot deny that he submitted his express consent, and thus, he is not a proper class representative.  Alternatively, the circumstances here are so unique as to Plaintiff's consent that Plaintiff cannot act as a class representative under Rule 23 as described below.

2.  *PLAINTIFF'S CLAIM CONSTITUTES A "WRONG NUMBER" OR "FRAUDULENT LEAD" CASE THAT IS NOT CERTIFIABLE*

This case involves very fact specific allegations.  While Defendant obtained a consent form from https://searchrenovation.us to call the Plaintiff's telephone number, Plaintiff states that he never visited the website and did not submit the consent form.  [Zelmer Decl., Ex. 2, (Weingrad depo, 22:18-23:2)].  A fraudulent lead case with these facts cannot meet the requisites of typicality and commonality in an alleged fraudulent lead case.  Indeed, the Northern District of California denied class certification, in a very similar case, stating:

> Here, the requirements of typicality and adequacy are not met. ***Because Plaintiff swears he did not visit the bestamericansavings.com website and provide his contact information, he cannot raise arguments on behalf of absent class members who did input their contact information into a website vendor used by***

---

[5] Relatedly, Courts also dismiss claims for lack of a concrete injury (i.e., standing) where the evidence established that the calls at issue were induced for the purpose of bringing a TCPA claim. *See Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp.3d 782, 797, 800–06 (W.D. Pa. 2016) (summary judgment granted where plaintiff welcomed calls to profit from bringing TCPA claims and therefore did not have Article III constitutional or "prudential" standing as the calls were not "unwanted"); *see also Shelton v. Target Advance LLC*, No. 18-2070, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019) (summary judgment denied on standing grounds because additional discovery was needed, but strongly suggested that if plaintiff's sole purpose was to "drum up TCPA litigation by inducing … robocalls," then plaintiff's claims would be barred); *Laccinole v. Inter. Union of Police Assoc.*, 638 F. Supp. 3d 110, 116 (D.R.I. Oct. 26, 2022) (accord and dismissed for lack of standing).  Additionally, courts have recognized that "TCPA suits have, in many instances, been abused by serial litigants; and going forward each such case merits close scrutiny. . . ." *Morris v. Unitedhealthcare Ins. Co.*, No. 415-CV-00638, 2016 WL 7115973, at *6 (E.D. Tex. Nov. 9, 2016).  *See also, Human v. Fisher Investments*, 2025 WL 2614039 (E.D. Miss Sept. 10, 2025) (finding that filing of over 65 actions in a one year period and the idea that Human received so many unsolicited calls "taxes the credulity of the credulous").

> ***Defendant***. For example, in response to Defendant's consent defense, Plaintiff argues the consent language was not always present on the various websites, including bestamericansavings.com, and even if the consent language was present, it does not constitute valid consent under the TCPA. (Dkt. No. 68-1 at 19-24.) ***But because Plaintiff never saw the bestamericasavings.com website, let alone inputted his contact information, he does not have standing to challenge whether the website disclosures were sufficient to provide Defendant consent to contact the absent class members***. To put it another way, his attack on Defendant's consent defense—I did not visit the website and input my contact information—is not typical of the consent defense of absent class members who did visit the websites and provide their contact information. And, for the same reason, he is not an adequate representative of such absent class members.

*Clark v. Via Renewables, Inc.*, 24-CV-00568-JSC, 2025 WL 2968027, at *7 (N.D. Cal. Oct. 21, 2025) (e.s.).  The Northern District came to this conclusion relying on *Lawson Tan v. Grubhub, Inc.*, 2016 WL 4721439 (N.D. Cal. 2016), aff'd sub nom. *Lawson v. Grubhub, Inc.*, 13 F.4th 908 (9th Cir. 2021), noting that it was "binding Ninth Circuit authority that he could not." *Id*.  There, the named plaintiff was one of two individuals to opt out of an arbitration agreement. *Id*.  The Court held the claims were not typical of the putative class members and that he could not adequately represent the interest of those members because he would be unable to make unconscionability arguments on behalf of the class members. *Id*.

The Northern District also relied on *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019).  "There, as here, the named plaintiff had 'never visited' the defendant's websites yet sought to challenge on a class-wide basis the websites' compliance with the TCPA's consent requirements." *Id*.  In *Berman*, "[t]he district court denied a motion for class certification on the grounds the plaintiff had not demonstrated typicality and adequacy because he asserted he did not visit the website through which the defendant claimed to have garnered consent to be contacted." *Id*.

The same is true here.  Plaintiff alleges that he did not visit the website https://www.searchrenovation.us.  Because he did not visit that website, he is not an adequate class

member for those who did visit that website, or any other website from where Defendant obtained

consent to call other individuals.  As such, the Court must deny class certification because Plaintiff

cannot meet the typicality and adequacy requirements in a fraudulent lead case, as the one that has

been raised in this action.

Other courts have held the same in other contexts because consent disputes create

individualized issues that are not certifiable.  As the Eastern District of Virginia stated when

denying class certification on the basis that "the proposed class cannot meet the ascertainability or,

alternatively, the predominance requirements of Rule 23":

> Courts in these cases generally all found that class certification was inappropriate because of a lack of ascertainability and the predominance of individualized issues over common issues.  *See Wilson*, 329 F.R.D. at 459 (denying class certification after finding Plaintiff's the inquiry into whether individuals consented to receive the calls "is likely to dwarf the much simpler question of whether Defendant called a given class member with a prohibited system."); *Hunter*, 2019 WL 3812063, at *17 ("Any common issues regarding how class members were called...are overshadowed by the individual inquiries that would be required to determine whether the alleged wrong number recipients identified by Plaintiffs were eligible for class membership or ineligible on grounds of consent."); *Sandoe*, 333 F.R.D. at 9 (declining to certify a class because Verkhovskaya's testimony did not demonstrate that the class was ascertainable or demonstrate that common issues would predominate); *Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 540–41 (D. Minn. 2017) (declining to certify a class because "the issue of consent is unique to each individual class member."); *Shamblin v. Obama for America*, 2015 WL 1909765, at *13 (M.D. Fla. Apr. 27, 2015) (denying certification after finding plaintiff did not satisfy the commonality prong of Rule 23(a)(2) or the predominance requirement of Rule 23(b)); *see also Newhart v. Quicken Loans Inc.*, 2016 WL 7118998, at *5 (S.D. Fla. Oct. 12, 2016) ("[T]his Court thus joins the chorus of other courts faced with TCPA class actions that have found such individualized inquiries on the consent issue would predominate over any common issues.") (citation omitted).

*Davis v. Cap. One, N.A.*, No. 1:22-CV-00903 (AJT/IDD), 2023 WL 6964051, at *15 (E.D. Va.

Oct. 20, 2023).  Similarly, here, there is no methodology to identify class members without

individualized inquiries.  Before calling a party on the DNC, DaBella's TCPA standards require

"an approved proof of consent" "given using TrustedForm or Jornaya or similar systems."

[McMillan Decl., Ex. B].  In particular, here, the lead was obtained from the website https://www.searchrenovation.us, and DaBella would have obtained the very same or similar consent form for *all* leads received through this website.  [McMillan Decl., ¶¶ 4, 15].  Therefore, the only way to ascertain the lead would be to perform ***discovery for every single class member***, including but not limited to, obtaining testimony as to (1) whether or not the individual completed the consent form, and (2) whether or not the IP address used to access the website is accurate.  This is exactly the type of case that ***cannot*** be certified as there is no methodology to obtain classwide evidence for any alleged fraudulently submitted consent form.

3.  *PLAINTIFF'S DNC CLASS CLAIMS SHOULD BE STRICKEN BECAUSE HE CANNOT MEET THE STRICT REQUIREMENTS OF RULE 23*

The Court should grant Defendant's Motion to Deny Class Certification because incontrovertible evidence establishes that class certification is impossible. Rule 23(c)(1)(A) provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).  While the Rule does not specify when such an order may be issued, the Supreme Court has instructed that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  That principle is reflected by Rule 23(d)(1)(D), which provides that in conducting an action under Rule 23, a court may issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).

Relying on these authorities, several Federal Courts (including this district court) have concluded that defendants may file early, preemptive motions to deny class certification before discovery is complete under Rule 23.  *See Strange v. Norfolk & W. Ry.*, No. 85–1929, 1987 WL

36160, at *3 (4th Cir. Jan. 12, 1987) (unpublished table decision); *Murch v. GPS Cap. Markets, LLC*, No. 3:24-CV-01854-SB, 2025 WL 2770190, at *1 (D. Or. Sept. 26, 2025) ("Plaintiff's class claims should be dismissed under Rule 12(b)(6); *Newman v. Direct Energy, LP*, No. GJH-21-2446, 2022 WL 4386235, at *4 (D. Md. Sept. 22, 2022) ("Rule 23 permits defendants to file preemptive motions to deny certification before discovery is completed") (internal quotation and citations omitted).[6]  This result should especially apply where, as here, the evidence is clear that Plaintiff cannot meet his class certification burden under Rule 23.  *Strange*, 1987 WL 36160, at *3.

Under Rule 23(a), Plaintiff must prove: "(1) the class is so numerous that joinder of all class members is impracticable; (2) there are questions of law or fact common to the class; (3) [his] claims or defenses . . . are typical of the claims or defenses of the class; and (4) [he and his counsel] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Under Rule 23(b), Plaintiff must prove that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

As discussed below, even if the Court does not deny class certification based on the evidence that demonstrates that Plaintiff does not have an individual claim against Defendant, then given the unique circumstances leading to the calls at issue, the incontrovertible evidence confirms that Plaintiff cannot meet any of the Rule 23 requirements to certify his broad class.  As such, the

---

[6] *Accord Richardson v. Bledsoe*, 829 F.3d 273, 288–89 (3d Cir. 2016) (either party is permitted to raise issue of class certification even before discovery); *Kasalo v. Harris & Harris, Ltd*., 656 F.3d 557, 563 (7th Cir. 2011) (court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination") (citation omitted); *Kamm v. California City Dev. Co*., 509 F.2d 205, 210 (9th Cir. 1975) ("Where the necessary factual issues may be resolved without discovery, it is not required."); *Byrd*, 456 F.2d at 885 ("One opposing a class action may move for an order determining that the action may not be maintained as a class suit.') (citation omitted).

Court should deny class certification now, before dozens of third parties are inconvenienced by burdensome class discovery that would serve no purpose. *New Penn Fin., LLC*, 3:18-CV-00990-YY, 2023 WL 8452659, at *4 (where there are individualized hotly contested fact issues unique to plaintiff, the Court need not allow for further discovery before ruling on class certification). *See Banarji v. Wilshire Consumer Cap., LLC*, No. 3:14-cv-02967-BEN-KSC, 2016 WL 595323, at *2 (S.D. Cal. Feb. 12, 2016) (denying request for class-wide discovery because the evidence the plaintiff sought to discover would "not affect the uniqueness of [the plaintiff's] case").

      a.  <u>Plaintiff Cannot Show That Common Questions Predominate Under Rule 23(b)(3) Or That a Class Action is a Superior Method of Adjudicating This Case</u>.

Plaintiff's class is uncertifiable because it is riddled with individualized issues that preclude certification. "To obtain certification under Rule 23(b)(3), the plaintiff must show both that '[1] questions of law and fact common to class members predominate over any questions affecting only individual class members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *See Newman*, 2022 WL 4386235, at *6 (quoting *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 655 (4th Cir. 2019)). "These two requirements have been labeled 'predominance' and 'superiority.'" *Id.* Here, as discussed *supra* and in more detail below, individualized issues swarm any common inquiries and, as such, a class action is also not a superior way of adjudicating this case.

      i.  <u>Individual Issues Will Predominate Over Common Inquiries at Trial</u>.

The predominance inquiry focuses on whether the question of liability is subject to class-wide proof or requires individualized and fact-intensive determinations. *Cuthie v. Fleet Reserve Ass'n*, 743 F.Supp.2d 486, 499 (D. Md. 2010). Whether common questions predominate over individual questions is a separate inquiry, distinct and more demanding than the requirements in Rule 23(a). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Ealy v. Pinkerton Government*

*Services, Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 358 (2011)). "Rule 23(b)(3)'s commonality-predominance test is qualitative rather than quantitative," comparing the quality of the common questions to the non-common questions. *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 272 (4th Cir. 2010) (citing *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003)). Thus, to meet the predominance prong of Rule 23(b)(3), "a plaintiff must demonstrate that the elements of the legal claim [and defenses thereto] are capable of proof at trial through evidence that is common to the class rather than individual." *Piotrowski v. Wells Fargo Bank*, *NA*, Civil Action No. DKC 11-3758, 2015 WL 4602591, at *20 (D. Md. July 29, 2015) (quotation omitted). This district court has held that the predominance prong is not met when Plaintiff's claims involve unique defenses, such as whether or not the telephone is used for business or residential purposes. *New Penn Fin., LLC*, 2023 WL 8452659, at *4.

Here, as discussed below, the factual and legal inquiries are highly individualized at each step to determine whether there are other instances like what occurred in this case. It would require, among other things: (1) individualized documentary evidence relating to unique contact information submitted in each of hundreds of thousands of Defendant's consent forms; (2) documents and testimony and the historical website information for lead sources evidencing whether any given lead had consented, the scope of the consent, and whether specific jurisdictional provisions apply, such as an arbitration provision or class waiver; and (3) individualized testimony from each of hundreds of thousands of call recipients regarding whether they requested the call and consented to receive it, and if consent is disputed, inquiries into the source IP address; and (4) individualized testimony as to whether or not each class member uses their phone for business

purposes.  As discussed below, this is the most important reason why the Court should deny class certification.

       1.  <u>Individual Issues of Consent Predominate and Preclude Certification</u>.

Consent is a complete defense to the TCPA claims at issue in this case.  47 U.S.C. § 227(b)(1)()(iii).  Here, Defendant maintains a policy to obtain consent to call those on the National DNC, though it obtains that consent in unique ways, via dozens of unique lead forms and of data sources.  [McMillan Decl., ¶ 15, Ex. B].    The proof of each consent form will require highly individualized evidence at trial from each putative class member, each lead generator, and each internet provider who provided the source IP address for the consent.  No such case could ever be tried, as testimony would be required from hundreds or thousands of witnesses.  Importantly, certain courts have found—in cases where consent practices were far more standardized than here—that issues relating to how consent was obtained predominated over any common issues such that "myriad mini-trials cannot be avoided" on the issues of consent and revocation. *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 688 (D. Md. 2017) (holding that a "standard practice of seeking consent from customers" on standardized application turns on "individualized issues relating to consent and revocation") (citing *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008)).

As the *Ginwright* court found, the Fifth Circuit's decision in *Gene And Gene* (involving fax transmissions that were allegedly sent without consent) is informative.  There, like here, recipients' numbers were collected "over time and from a variety of sources."  541 F.3d at 328. As a result, the court held that generalized, class-wide proof as to who consented and who did  not was impossible, even though (unlike here) the defendant "sent its fax advertisements in accordance with the same procedure."  *Id.* at 329.  In fact, the individualized questions relating to consent in

this case are significantly more pronounced because consumer's consents have been received  from multiple sources who used different consent procedures.  Under these facts, Plaintiff cannot possibly identify on a class wide basis the individuals to whom Defendant might be liable under the TCPA.  "This prevents the purported class from having the required cohesiveness and defeats the predominance requirement."  *Gene And Gene*, 541 F.3d at 329; *see also Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 577–78 (S.D. Cal. 2013) (no predominance where cell phone numbers were obtained from different sources with "dissimilar opportunities for the expression of consent").[7]

2.    Individual Issues of the ***Validity*** of the Consent Predominate and Preclude Certification.

Next, the unique circumstances of Plaintiff's claim that involves an allegedly fraudulent consent form demonstrates conclusively that the putative class's claims and the defenses thereto cannot be tried with common evidence.  Indeed, vastly individualized proof would be required for each putative class member to determine whether each consent is allegedly disputed or fraudulent.

---

[7] In a similar vein, Courts across the country have recognized that individualized inquiries into every call at issue are necessary to resolve the issue of consent in cases like this one, where there is no way to determine if and how consent may have been obtained or "lost" in one fell swoop, thereby precluding certification.  *See*, *e.g.*, *Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1037 (D. Nev. 2018) ("[I]ndividual issues of consent predominate and render the class action an inferior method to fairly and efficiently adjudicate the TCPA claims of the proposed members"); *Tillman*, 2017 WL 7194275, at *7 (individualized issues relating to consent language in contract predominates); *Davis v. AT&T Corp.*, No. 15-CV-2342, 2017 WL 1155350, at *6 (S.D. Cal. Mar. 28, 2017) (denying class certification because "a complete analysis of the customer status issue would require an inquiry into each call recipient's individual circumstances"); *Espejo v. Santander Consumer USA, Inc.*, No. 11-C-8987, 2016 WL 6037625, at *10 (N.D. Ill. Oct. 14, 2016) (class certification denied in light of the multitude of individualized issues where "the defendant produce[d] evidence of a practice of obtaining prior consent from the parties it contacts."); *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding a lack of predominance where the defendant had shown evidence that a significant percentage of the putative class had consented to receive calls).

"Fraud" by nature requires a factual inquiry of each and every lead that is not appropriate for class certification. Thus, Plaintiff has not and cannot satisfy his burden to show that common issues would predominate over those "subject to individualized proof" at trial. *Piotrowski,* 2015 WL 4602591, at *22.

The facts leading up to the calls to the named Plaintiff (without looking further) verify the uniqueness of any potential class member's claims, assuming that is, that other putative class members have a claim. For example, the calls to Plaintiff alone resulted from a lead received with Plaintiff's telephone number which included completion of a written consent form on a website (https://searchrenovation.us) that had a specific consent form and procedure. As every single lead obtained with this website would have completed this form, there would need to be an inquiry into ***each individual*** to determine whether the call recipient actually submitted that consent form or otherwise had an established business relationship with Defendant.

It follows that determining liability for each of hundreds of thousands of calls will require proof through highly individualized evidence to trace each call back to its source: first, whether it resulted from an inbound call from a consumer or outbound call from a lead submitted online; and then, even if the lead was submitted online, the Court would have to trace the consent form (which could have come from different sources, as well as Defendant's own sources) through different inflow processes into Defendant's database, and to the calls made to the ultimate recipient. And, after all of those inquiries, the Court would have to determine whether that individual was the intended recipient, whether the recipient consented, whether the consent was valid, and whether the consent was ever revoked.

Here, Defendant's call records would only show whether the consent form was received or not; the records would not indicate whether the form was submitted fraudulently by a party who

claims that they did not submit a consent form. Thus, the only way to make the determination that a consent is fraudulent or disputed would be to examine the person who made the call, the person who received the call, the source from which the consent was received (which would involve inquiries into the user of the IP address and historical searches on each device submitting such consent). Moreover, this evidence is bound to be too speculative for the employee or the recipient to remember the exact details of the consent and each call. For these reasons and others, Plaintiff's class fails the predominance inquiry.

In stark contrast, TCPA cases that are amenable to class certification generally involve one of two scenarios: (1) communications blasted out to consumers without *any* consent; or (2) where the alleged consent (including the named Plaintiff's alleged consent) came from a single, uniformly non-compliant source. The facts here cannot be further afield from these cases. *Compare Gene And Gene*, 541 F.3d at 329 (certification hinges on each call's unique facts); *Brodsky v. Humana Dental Ins. Co.*, 910 F.3d 285, 291–92 (7th Cir. 2018) ("The question of what suffices for consent is central, and it is likely to vary from recipient to recipient."); *Ginwright*, 280 F. Supp. at 689 (emphasizing that courts have only certified classes where there was *no* claim of individualized consent); *Hirsch v. US Health Advisors, LLC*, 337 F.R.D. 118, 130, 134 (N.D. Tex. 2020) (no predominance because "no way to establish consent on a classwide basis"); *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 280 (M.D. Fla. 2019) (individualized issues of consent predominated and foreclosed class certification); *and Ung v. Univ. Acceptance Corp.*, 319 F.R.D. 537, 540 (D. Minn. 2017) ("[T]he issue of consent is unique to each individual class member."); *with Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) (predominance met because defendant could not identify "a single instance" where consent was obtained; *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 567, 570 (W.D. Wash. 2012)

(predominance only satisfied because all putative class members consented to receiving text messages in the identical manner—the purchase of a pizza at a franchise location—and the validity of consent could be resolved in "one stroke").

In sum, Plaintiff's class action is premised on the assumption that DaBella called leads on the DNC *en masse*, who, like Plaintiff, did not visit the website and submit consent. But this allegation is wrong, and Plaintiff has no evidence to support such an assumption. Instead, to the extent Plaintiff could prove that Plaintiff did not submit the consent that Defendant has located in its records, then Plaintiff's receipt of unwanted calls would have resulted from a ***very unique factual circumstance*** that is not consistent with DaBella's policy of calling only customers on the National DNC who consented to receive calls because they sought out DaBella's service. For this reason alone, the Court should deny class certification, and individual issues predominate with respect to consent.

3. <u>Individualized Issues Also Predominate With Respect to Whether an Arbitration Clause or Class Waiver Applies</u>.

In addition to individualized issues of consent, Plaintiff's class cannot be certified because his claims require individualized inquiries into whether the recipient was bound by certain unique terms and conditions, such as an arbitration provision or class waiver. Plaintiff's class as pled necessarily includes thousands of customers who may be bound by an arbitration provision or class waiver provision, and therefore, who are prohibited from pursuing a TCPA claim in court or participating in this case. Thus, fact-intensive inquiries would be necessary to determine not only which class members used Defendant's services, but also which were subject to class action waivers contained in the lead forms. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (observing that the Federal Arbitration Act makes arbitration agreements "valid, irrevocable, and enforceable" as written and "requires courts to stay litigation of arbitral claims

pending arbitration of those claims in accordance with the terms of the agreement") (citations omitted); *see also Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("The FAA requires a court to stay any suit or proceeding pending arbitration of any issue referable to arbitration under an agreement in writing for such arbitration.  This stay-of-litigation provision is mandatory.") (internal quotations and citations omitted).  Because Defendant uses multiple lead providers who themselves generate leads through a variety of websites with a variety of different terms, this would even further complicate the assessment of what terms and conditions apply to each individual and each number.  In other words, whether an arbitration provision governs any individual's claim will require a case-by-case, lead-by-lead inquiry to determine which Defendant's source provided the lead and whether the operative consent form or contract included an arbitration provision or class waiver.  Thus, these issues also preclude certification.  *See Sliwa*, 333 F.R.D. at 280-81 (resolving applicability of even one company's arbitration clause "will require significant individualized inquiries"); *Tillman v. Ally Fin. Inc.,* No. 2:16-CV-313-FTM-99CM, 2017 WL 7194275, at *7 (M.D. Fla. Sept. 29, 2017) (whether contract contained an arbitration provision constitutes individualized factual issue precluding certification).

> 4. Individualized Questions Also Predominate With Respect to Whether the Plaintiff's Telephone Number is Used and Held Out to the World For Business.

Not only does this case involve disputes concerning the validity of the consent which itself requires too many factual issues, but it also involves determinations as to whether the Plaintiff's telephone number is a residential or business number.  [Mot. Summary Judgment, III.B.3].  Under these same circumstances, this district court has denied class certification ***three*** *times,* finding that Plaintiff could not "meet the typicality and commonality requirements of [Federal Rule of Civil Procedure] because individual questions concerning whether he is a residential subscriber subject

to the TCPA's protections will predominate the litigation." *New Penn Fin., LLC,* 2023 WL 8452659, at *1; *United Mortgage Corp.*, 2024 WL 4794711, at *2; *Rocket Mortgage, LLC,* 2024 WL 4794710, at *2. Likewise, to the extent that Plaintiff disputes that his number is used for business, he is not an appropriate class representative as these unique issues threaten to become the focus of the litigation. *Id. See Hanon v Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.").

> ii.  Plaintiff Cannot Show Superiority Because Myriad Individual Issues Exist That Do Not Lend Themselves to a Single Trial.

Relatedly, Plaintiff must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *See* Fed. R. Civ. P. 23(b)(3). Class certification is not a superior method to adjudicating a controversy when there are "highly individualized questions" at issue that cannot be adjudicated on a class-wide basis. *Piotrowski*, 2015 WL 4602591, at *23.

Here, class certification is not a superior method of adjudicating this dispute. As discussed above, a myriad individual issues exist. DaBella would be entitled, as a matter of due process, to call *tens of thousands* of witnesses at trial to resolve these issues. Gensler & Mulligan, 1 *Federal Rules of Civil Procedure, Rules and Commentary,* Rule 23. No such class action could ever be tried. The predominance of individual issues would create significant management problems, thereby defeating the economy and efficiency contemplated by class action treatment. *See Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) (no superiority where "individual rather than common issues predominate" because "the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified.") (internal quotations and citation omitted); *Piotrowski,* 2015 WL 4602591, at *23 (predominance of

individual issues defeats superiority).  These types of claims are *far* better suited for individual treatment.  Thus, Plaintiff cannot meet his burden to show that a class action is the superior method to fairly adjudicate the claims of putative class members.

        iii.   <u>Plaintiff Cannot Establish Any of the Other Prerequisites for Class Certification Under Rule 23(a)</u>.

Even if Plaintiff was able to establish predominance and superiority (which he cannot) under Rule 23(b)(3), the Court should still deny class certification because the evidence is clear, even at this early stage, that Plaintiff also cannot meet any of the four requirements of Rule 23(a): typicality, commonality, adequacy, or numerosity.

        1.   <u>Plaintiff's Claims Are Not Typical to the Broad Class Because They Involve a Unique, One-Off Situation and No Other Putative Plaintiff Would Be Similarly Situated</u>.

Plaintiff's claims are not typical of the broad, nationwide class that he seeks to certify, as the circumstances leading up to him receiving calls from DaBella were so unusual as to be a one-off.  "Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'"  *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

As discussed above, the calls Plaintiff received resulted from a consent form that DaBella believed to be valid.  As such, Plaintiff cannot possibly testify regarding the core issues that will drive the outcome of liability for the other class members: whether the recipient consented to receiving calls (or revoked consent), whether consent forms were fraudulently submitted, and whether certain terms and conditions, such as arbitration and class waiver clauses govern those persons' claims.  Indeed, the factual issues leading up to the calls Plaintiff received bears no relevance to whether other class members who received calls they requested or consented to

receiving. *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (denying class certification in part because Plaintiff was not typical of class because plaintiff could not "advance the same factual and legal arguments" as the putative class.) In fact, Plaintiff conceded that other than communications with his attorney, he knew of no facts other than the call that he has been receiving to substantiate his statement that submission of false leads are common. [Zelmer Decl., Ex. 2, (Weingrad depo, 62:5-64:3-24)].  As such, Plaintiff is atypical of the class he proposes to represent and cannot serve as an adequate stand-in for all such persons at trial. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-68 (4th Cir. 2006) (finding plaintiff was not typical of the proposed class because "[t]he representative party's interest in prosecuting his own case [did not] simultaneously tend to advance the interests of the absent class members"); *Newman,* 2022 WL 4386235, at *5 ("Representativeness requires that the class representatives 'will fairly and adequately protect the interests of the class.'") (quoting *Lienhart*, 255 F.3d at 146)).

2.  <u>Plaintiff Cannot Establish Commonality Because Common Answers to Core Questions Will Not Drive the Resolution of the Claims</u>.

Further foreclosing any possibility of class certification, common questions of law and fact will not drive the resolution of this litigation.  "Commonality requires that 'there are questions of law or fact common to the class.'" *Lienhart,* 255 F.3d at 146 (quoting Fed. R. Civ. P. 23(a)(2)). "The common questions must be dispositive and over-shadow other issues." *Id.*

For this requirement to be met, the proceeding must not only raise common questions, but must also be able "to generate common *answers* apt to drive the resolution of the litigation." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (quoting *Dukes*, 564 U.S. at 350).  Here, as discussed above, issues of consent will necessarily involve mini trials into individualized issues relating to whether any specific call resulted from a lead that conveyed valid consent.  *See*

*Ginwright*, 280 F. Supp. 3d at 687 (denying class certification on commonality grounds where "the proposed class has been so broadly defined as to draw no distinctions between . . . whether class members consented to receive calls or later revoked such consent."); *Balthazor v. Cent. Credit Servs., Inc.*, No. 10-62435-CIV, 2012 WL 6725872 (S.D. Fla. Dec. 27, 2012) (denying class certification on commonality and predominance grounds where consent issues were individualized). As explained above, the dispositive and individualized issues of whether there was consent for a specific call, whether the consent form was fraudulently submitted using an individual's telephone number who did not consent, whether the individual was on the DNC list, and whether other terms and conditions, such as arbitration and class waiver provisions, governed those persons' claims will drive the resolution of each individual claim, so this case is not appropriate for class certification.

3. Plaintiff Cannot Establish Numerosity Because It Is Unlikely that There Would Be a Sufficient Number of Defendants Similarly Situated.

Finally, given the allegedly bizarre unique situation that resulted in the calls to Plaintiff, he cannot identify other class members that are similarly situated, let alone establish a class "so large that 'joinder of all members is impracticable," as required by Rule 23(a)(1). *Lienhart*, 255 F.3d at 146 (quoting Fed. R. Civ. P. 23(a)(1)); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (concluding that a movant must provide the court with sufficient proof to support a reasoned finding that the certified class would meet the numerosity requirement). As explained *supra* Part E.2, Plaintiff would only be able to establish a class for those consent forms received by Defendant from https://www.searchrenovation.us who, like Plaintiff, allege that they *did not visit the website* or submit the consent form. These facts are so unique that there likely is at a maximum very few to join such a class (especially, where, as here, there is no way to determine

any alleged fraudulent leads in one stroke on a class basis without obtaining testimony from each

class member). Thus, Plaintiff will not be able to establish numerosity. *See Sliwa*, 333 F.R.D. at

273 (denying class certification on numerosity grounds because Plaintiff failed to establish that a

sufficient number of persons fall into proposed class). Accordingly, Plaintiff plainly cannot meet

any of the four prerequisites for class certification under Rule 23(a), and the Court should grant

Defendant's preemptive motion to deny class certification at the outset.

4. *ALTERNATIVELY, THE COURT SHOULD STRIKE PLAINTIFF'S CLASS DEFINITION*

Plaintiff's class broadly includes:

> **National Do Not Call Registry Class:** All persons within the United States: (1)
> whose residential telephone numbers were on the National Do Not Call Registry
> for at least 31 days; (2) but who received more than one telephone solicitation call
> from Defendant or any third party acting on Defendant's behalf; (3) within a 12-
> month period; (4) within the four years prior to the filing of the Complaint.

This class is entirely too broad and not common to Plaintiff's unique circumstances, and Plaintiff

does not qualify as a Class Representative for this Particular Class.

a. The Class Definition is Overbroad

Courts regularly decline to certify overbroad classes. *See Holmes v. Pension Plan of

Bethlehem Steel Corp*., 213 F.3d 124, 138 (3d Cir. 2000) (affirming denial of class certification

because the proposed class was overly broad). And, where a "defined class is facially overbroad,

it is appropriate to strike the class allegations at the pleadings stage." *Vann v. Dolly, Inc*., 2020

WL 902831, at *5 (N.D. Ill. Feb. 25, 2020).

Allowing an overbroad class to proceed past the pleadings stage creates an inherent

unfairness to the defendant in view of the "in terrorem character of a class action." *Kohen v. Pac.

Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 677- 78 (7th Cir. 2009) ("[A] class should

not be certified if it is apparent that it contains a great many of persons who have suffered no

injury.").  As the Seventh Circuit has aptly observed: "Even if a class's claim is weak, the sheer number of class members and the potential payout that could be required if all members prove liability might force a defendant to settle a meritless claim in order to avoid breaking the company. While that prospect is often feared with large classes, the effect can be magnified unfairly if it results from a class defined so broadly as to include many members who could not bring a valid claim even under the best of circumstances."  *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 825 (7th Cir. 2012) (citing *Oshana*, 472 F.3d at 514) (emphasis added). This is particularly true in TCPA actions where the statute provides for up to $500 in statutory damages per violation. 47 U.S.C. § 227(c)(3); *see also Kohen*, 571 F.3d at 678 ("When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company, even if the betting odds are good.").

In sum, where, as here the facts demonstrate that calls that Defendant obtained a consent form to call Plaintiff, and that Plaintiff disputes ever visiting that very website, Plaintiff's alleged class is entirely too broad.  Plaintiff could only be a class representative over a very limited subset of persons who also contend that Defendant called them based on a consent form received from https://www.searchrenovation.us, even though they did not visit the website or submit the consent form.  *Clark,* 2025 WL 2968027, at *7.  Plaintiff is unable to be a class representative for those who *did* visit this particular website and submit a consent form, nor can Plaintiff be a class representative for those consent forms received by Defendant from *other* websites.  *Id*.  *See also*, *Murch*, 2025 WL 2770190, at *1 (striking class where plaintiff failed to adequately allege Defendant treated other individuals in similar manner).

   b. The Class Definition is Not Common to Plaintiff's Claim

   Rule 23(a)(2) mandates that there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality requires more, however, than merely raising common questions "but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation" is required. *Dukes*, 564 U.S. at 350 (emphasis in original).  If "the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question" and commonality is absent. *Hansen v. United Airlines, Inc.*, No. 20 CV 2142, 2021 WL 4552552, at \*5 (N.D. Ill. Oct. 5, 2021).  Stated differently, the putative class's "claims must depend upon a common contention … that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350; *see, e.g., Connelly,* 294 F.R.D. at 578 (finding no commonality).

   Here, because the class definition fails to account for class members that lack valid claims (i.e., those who consented, had an established business relationship, consented to arbitration or a class action waiver), there is no conceivable method to prove the validity of all class member claims' "in one stroke." *Dukes*, 564 U.S. at 350.  Some class members will lack a valid claim because it would be impossible to determine through common evidence who has a valid claim amongst the entire class.  Moreover, Plaintiff's circumstances, which involve an alleged fraudulent lead, is not common to the entire class.

   i. <u>Plaintiff's Class Definition Should Exclude Calls to Individuals who Consented</u>.

   The TCPA specifically exempts a caller from liability if the caller has received "prior express invitation or permission" from the recipient to be called.  47 CFR 64.1200(c)(2).  Prior express consent is a complete defense to a TCPA claim. *Pavelka,* 2023 WL 3728199, at \*3.

("[P]rior express consent to receive the calls at issue is a complete defense to TCPA claims."); *see also Miller,* 302 F.R.D. at 338. Accordingly, since there is no liability for calls made to those who submitted their express consent to call, then the Court should limit such class definition to exclude those individuals who consented.

> ii.    Plaintiff's Class Definition Should Exclude Calls to Individuals Who Had Established Business Relationships.

In addition, a defendant is not liable under the TCPA when calls are made in accordance with an EBR. An EBR is "formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party." *Id.* at 64.1200(f)(5) (e.s.). Accordingly, since there is no liability for calls made to those with EBR's, then the Court should limit such class definition to exclude those with EBRs.

> iii.    Plaintiff's Class Definition Should Exclude Those with Arbitration Agreements or Class Action Waivers.

Plaintiff's class definition should also be stricken because it includes consumers who entered into arbitration agreements. DaBella obtains leads through various sources, including its own website, which includes an arbitration clause and class action waiver. As indicated by the District Court of Colorado below, Plaintiff cannot meet the typicality, adequacy, commonality or superiority requirements of Rule 23 for those consumers subject to arbitration:

> Plaintiff also argues that, even if the arbitration agreements exist, "the Court has no way of evaluating whether [they] are enforceable." Dkt. 120 at 15. This argument is flawed for a few reasons. First, as one who is not party to an arbitration agreement, Plaintiff has no standing to challenge the provisions of the other putative members' contracts, i.e., it is not

Plaintiff's argument to make.7 *Radulescu v. W. Union Co*., No. 1:19-cv-03009-DDD-SKC, 2023 WL 9035367, at *4 (D. Colo. Nov. 27, 2023) (citing *Vallagio at Inverness Residential Condo. Ass'n, Inc. v. Metro. Homes, Inc.*, 412 P.3d 709, 718, (Colo. App. 2015), aff'd, 395 P.3d 788 (Colo. 2017)). Second, no one in the present action can know what position other putative class members might take regarding their arbitration agreements—will they honor them, challenge them in litigation, pursue settlement, or suggest other courses. These uncertainties caution against using these proceedings to render a judgment about other putative members' contracts. *Id*. at *5. **Third, the uncertainties about whether other putative class members can properly litigate in this Court at all highlights that common issues do not predominate for the large majority of the putative class and undermines Plaintiff's ability to fulfill the typicality and adequacy requirements of Rule 23(a)(3) and (4) and the common question and superiority requirements of Rule 23(b)**. At the very least, should this case proceed as the class is currently constituted, Plaintiff would not be able to raise arbitration-related defenses that would inevitably become a point of focus for a majority of the class. None of this is acknowledged in Plaintiff's class allegations, which describe a class of potential litigants that is too broadly defined to satisfy Rule 23. As a result, I grant DFL's motion and deny certification of Plaintiff's proposed class. **Plaintiff's amended complaint must narrow the putative class to include individuals who, like him, have not entered into an arbitration agreement. Plaintiff may then seek to have that class certified under Rule 23**.

*Nagel v. DFL Pizza, LLC*, No. 1:21-CV-00946-DDD-SBP, 2024 WL 5095298, at *5 (D. Colo. Dec. 4, 2024) (e.s.).

Thus, if the class were to proceed as pled, the Court would first require a determination as to whether *each and every* class member is subject to an arbitration clause or class action waiver. Therefore, the "class" asserted by Plaintiff would impermissibly require the Court to consider very factually unique circumstances of each consumer and require multiple mini-trials. Thus, as in *Nagel*, this Court should require Plaintiff to narrow the class to those consumers who are not subject to the terms of an arbitration agreement or class action waiver.

     iv.   <u>Plaintiff's Class Definition Should be Narrowed to Fraudulent Leads Submitted Under a Wrong Name.</u>

Plaintiff's entire class action relies on calls he allegedly received in response to a fraudulent consent form submitted under the name of "Robert Bronson" and by an unidentified user. Thus, to the extent that the Court permits *any* class discovery, the Court should limit the proposed class to

fraudulent leads that were submitted *in a different name* than the user. This is especially true where, as here, it is DaBella's policy to obtain consent forms for persons on the National DNC which it calls, and there is no way to readily determine which, if any, consumers may object to having submitted any consent forms.

v.   <u>Plaintiff's Class Definition Should be Narrowed to Lead Forms Submitted Through https://www.searchrenovation.us.</u>

Plaintiff's entire theory relies on *the website* involved in the submission of a false consent form. Thus, to the extent that the Court permits *any* class discovery, the Court should limit the proposed class to those who submitted consent form through the same website from which Plaintiff's consent form was submitted – through https://www.searchrenovation.us. Plaintiff has no basis to suggest that leads received from other sources were fraudulent, and even if he did, such other sources are not common and typical to Plaintiff's claims. *Clark,* 2025 WL 2968027, at *7.

vi.   <u>Plaintiff's Class Definition Should be Narrowed to the IP Address in Oregon.</u>

Plaintiff's entire theory rests on the premise that the lead was obtained fraudulently through use of an IP address in Portland, Oregon. Comcast has identified that particular IP address as being assigned to a subscriber by the name of Bryan Van Cleave. [Zelmer Decl., Ex. 1, (Van Cleave depo, Ex. 2)]. Mr. Van Cleave testified that he did not submit the consent form, and has further provided testimony that may suggest that he was hacked. [Zelmer Decl., Ex. 1, (Van Cleave depo, 15:16-22, 18, 21:20-23)]. To the extent that this is true, then it suggests *a very specific attack* on a particular user's IP address, and as such, the class should be limited to leads submitted through that particular IP address.

vii.   <u>Plaintiff's Class Definition Should be Narrowed to Oregon Leads.</u>

Plaintiff's class, if any, would be rather small given that Plaintiff must have some common interest with other potential class members that would involve a fraudulent consent. However,

DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION- 34

Plaintiff does not limit the class to those individuals who reside in Oregon. That is precisely a factor that the Court may consider in denying class certification. *Paper Sys. Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 604 (E.D. Wis. 2000) (citing *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill.1986) (finding that because the twenty-nine proposed class members resided in nine states, joinder was impracticable)). Where, as here, any proposed class would be so small, the class should be limited to those individuals who reside in Oregon as any other joinder would be impracticable. Moreover, such class members could seek out mini-TCPA claims under state law, which would be impracticable to apply for persons in other states.

F.    <u>CONCLUSION</u>

Plaintiff cannot establish *any* of the Rule 23 requirements for class certification. Plaintiff's proposed class would be riddled with a host of individualized inquiries to determine liability, including the issues concerning the potential submission of a false consent, and the determination of Plaintiff's status as a residential subscriber. Accordingly, this Court should grant Defendant's Motion to Deny Class Certification, or alternatively, narrow the class to the unique circumstances here involving an alleged fraudulent consent submitted from https://www.searchrenovation.us.

**WHEREFORE**, DaBella requests this Court to deny class certification and strike the class allegations.

Dated: February 10. 2026          Respectfully submitted,


                              Drew L. Eyman, OSB No.: 163762
                              Snell & Wilmer
                              601 SW 2nd Avenue, Suite 2000
                              Portland, OR 97204-3229
                              T: (971) 213-1070
                              Email: deyman@swlaw.com
                              *Counsel for Dabella Exteriors LLC*

                              -and-

/s/ Diane J. Zelmer, Esq.
Diane J. Zelmer, Esq.
Florida Bar No. 27251
BERENSON LLP
4495 Military Trial, Suite 203
Jupiter, Florida 33458
Tel: (561) 429-4496
Fax:  (703) 991-2195
Email:  djz@berensonllp.com
Secondary  Email:  hcc@berensonllp.com  *Counsel for Dabella Exteriors LLC*

DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION- 36

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 11,732 words but no more than 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

<u>s/ Diane J. Zelmer</u>
Diane J. Zelmer, FL Bar 27251 (pro hac vice)
*Counsel for DaBella Exteriors LLC*

DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION- 37