Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

|  |  |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>　　　　Plaintiff<br><br>vs.<br><br>DABELLA EXTERIORS LLC<br><br>　Defendant. | Case No. 3:25-cv-00396-SI<br><br><br>OPPOSITION TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE TCPA (47 U.S.C. § 227) DEMAND FOR JURY TRIAL |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
REQUEST FOR JUDICIAL NOTICE**

Defendant DaBella's Request for Judicial Notice is a blatant attempt to sneak in inadmissible, unreliable, hearsay materials in support of the two motions it has filed, including a motion for summary judgment. This court should strike and refuse to consider Exhibits 1, 2, 3, 4, 5, and limit its consideration of Exhibits 6, 7, and 8, on the bases set forth in this opposition.

## LAW AND ARGUMENT

A.    *The various "Merlin Home Magic" websites are not properly the subject of judicial notice.*

Courts in the Ninth Circuit have consistently held that it is improper for a court to take judicial notice of a random third-party websites for the truth of the facts contained within them. Federal Rule of Evidence 201(b) permits judicial notice only of facts "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Advisory Committee Notes stress that "[a] high degree of indisputability is the essential prerequisite" for judicial notice. *Id.*

But all DaBella does for Exhibits 1 through 5 is cite to random third-party business directory websites, at least one of which appears to be a Yellow Pages knock off,[1] and the other three of which are obscure business directory websites. And the BBB website DaBella cites to lists a company with the same name *located in Arizona*, rendering DaBella's own evidence *internally contradictory* on face. Those websites do not establish (1) the accuracy of the information on them, (2) the age of the information on them, or (3) where they even obtained the information.

That is textbook improper judicial notice.

---

[1] The website DaBella cites is yellow-pages.us.com, not the traditional Yellow Pages website, located at YellowPages.com.

Opposition to Request

The Ninth Circuit has made clear that "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). DaBella's random websites are *precisely* the type of unverified, open-source internet pages that courts *routinely refuse* to judicially notice. In *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015), the court clearly held that "information appearing on the third party websites is not a proper subject of judicial notice because it is not capable of accurate and ready determination." The *Gerritsen* court went on to explain that references to press releases on websites like "Answers.com, Deadline.com, and Slashfilm.com" was inappropriate because "courts are hesitant to take notice of information found on third party websites and routinely deny requests for judicial notice, particularly when the credibility of the site's source information is called into question by another party." *Id.* at 1028 (citing cases).

DaBella goes one step further still. It does not ask this Court to notice simply that these websites *exist*. It asks the Court to accept the *truth* of the information on them, specifically, that Plaintiff's telephone number is "publicly available and advertised," RFJN at 3, while at the same time making no allegations, either in its Request or any of its motions, that it ever relied on *any* of the websites in even calling the Plaintiff as an initial matter. That is *precisely* the kind of improper use of judicial notice that courts consistently reject. *Khoja*, 899 F.3d at 999 (drawing a bright line between noticing the fact of a publication's existence and the truth of its content).

DaBella cites *Spy Optic*, *Towantic*, and *Victaulic Co. v. Tieman*, 499 F.3d 227, 237 (3d Cir. 2007) for the proposition that a court may consider a company's own website as properly the subject of judicial notice. But DaBella conspicuously *omits* the *actual holding* of *Victaulic*: the Third Circuit held that "private corporate websites, particularly when describing their own

2

Opposition to Request

business, generally are ***not*** the sorts of 'sources whose accuracy cannot reasonably be questioned,'" *Victaulic*, 499 F.3d at 236 (3d Cir. 2007) (emphasis added). DaBella quotes this language in its brief but apparently hopes the Court will not notice that it *defeats* DaBella's argument, rather than supports it. But even *if* the cases DaBella cites actually stood for the proposition that a court may take judicial notice of a company's own website (they don't), there's just one problem with all the exhibits DaBella cites to here: *none of them* are *actually* the website for Merlin Home Magic.

Instead, they are random third-party websites. If private corporate websites describing their *own* business are unreliable for purposes of judicial notice, *a fortiori*, random third-party sites, which scrape data from unknown sources, at unknown times, and over which the listed entity has no editorial control, cannot satisfy Rule 201's reliability standard. And, critically, *nowhere* in *either* of its motions does DaBella ever claim it relied on *any* of the websites it cites to, let alone Merlin Home Magic's website, in determining whether or not to contact the Plaintiff's telephone number as an initial matter. This makes clear that DaBella is trying to bootstrap in irrelevant evidence that it did not even rely on when it made its illegal calls to Plaintiff in attempting to weasel out of that conduct based on random information it found online. DaBella's reliance on *Victaulic* is not merely unpersuasive, it is self-refuting.

Indeed, DaBella's *very own exhibits* show that Merlin Home Magic's website *was* likely https://www.merlinhomemagic.com/. *E.g.*, Exhibit 1 (link to https://www.merlinhomemagic.com/); Exhibit 2 (🌐 https://www.merlinhomemagic.com/). This court *can* take judicial notice that *that* website no longer exists, as reflected in Plaintiff's Exhibit 1 to this opposition, which supports the inference that Merlin Home Magic itself no longer exists and that its telephone number would accordingly have been reassigned. *Harty v. Nyack Motor*

Opposition to Request

*Hotel Inc.*, No. 19-CV-1322 (KMK), 2020 WL 1140783, at \*3 n.1 (S.D.N.Y. Mar. 9, 2020) ("The Website is indeed defunct, and the Court may take judicial notice of this fact.").

This is *precisely* the indicia of unreliability that courts in the Ninth Circuit hold is sufficient to defeat a request for judicial notice. *Est. of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1004 (N.D. Cal. 2012) (refusing to take judicial notice of information on a website when the proponent provided no information about who maintained it or how, and further observing that it was "inappropriate for the Court to take judicial notice of facts on a webpage whose source and reliability are unknown"). The internet is open source. Anyone may purchase an internet address and create a website. *United States v. Kane*, No. 2:13-CR-250-JAD-VCF, 2013 WL 5797619, at \*9 (D. Nev. Oct. 28, 2013). As the old adage, attributed to Abraham Lincoln in 1868, goes, "you can't believe everything you read on the internet."[2]

Moreover, this Court *can* (and should) also take judicial notice and believe the Oregon Secretary of State's business entity data, which confirms that Merlin Home Magic has been *defunct* since *at least 2021* owing to a failure to renew its corporate registration, as reflected in Exhibit B. *Smelt v. Cnty. of Orange*, 447 F.3d 673, 676 n.4 (9th Cir. 2006); 1 Clifford S. Fishman & Anne T. McKenna, Jones on Evidence § 2:86 (7th ed. 2013) ("Because judicial notice may be taken of public or official records, a court may take judicial notice of a corporate defendant's articles of incorporation which were filed with the Secretary of State.").

DaBella's true purpose is transparent. It seeks to use judicial notice as an end-run around its evidentiary burden at summary judgment and in seeking to affirmatively deny class certification. The questions of the Plaintiff's use of his number, whether or not DaBella even

---

[2] Apropos of the issues raised here, the precise origin of this apocryphal internet joke is itself a mystery. *Episode #300*, THE SKEPTICS' GUIDE TO THE UNIVERSE (Apr. 9, 2011), https://www.theskepticsguide.org/podcasts/episode-300.

Opposition to Request

relied on any of this evidence at all, and whether or not it is even sufficient to grant summary

judgment or defeat class certification, are all uniform, disputed factual issues that go to the

merits of both the individual and class claims. Judicial notice is not the vehicle for adjudicating

those claims. In *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1312 (S.D. Cal. 2003), the

court confronted an identical gambit and rejected it in no uncertain terms:

> In the instant case, Plaintiff requests that the Court take judicial notice of a multitude of assertions relating to: the use of the Sprint trademark; failure to disclose other parties; Sprint PCS common stock; Sprint being the alter ego of Sprint PCS; Sprint being the principle in an agency relationship; Sprint Corporation's control over the PCS group; Sprint's targeting of California residents; minimum contacts; Sprint's not being solely a holding company; and Plaintiff's suffering from cardiovascular disease.
>
> It would be improper, at best, for this Court to take judicial notice of such assertions. Many of the "facts" Plaintiff would have this Court take notice of are not only disputed, they form the essence of the controversy at hand. Taking judicial notice of such assertions would have the effect of preventing Defendant from participating in the adversary process. . . . It appears that Plaintiff misuses this Rule of Evidence to effectively circumvent Plaintiff's burden of proof and duty to litigate this case.

So too here. DaBella is misusing Rule 201 as a way to effectively circumvent its burden

of proof at summary judgment and its duty to litigate this case. Whether Plaintiff's number

appeared on various third-party websites, whether those listings were accurate, whether they

were placed there by Plaintiff, and whether such listings constitute the Plaintiff holding his

telephone number out to the world as an allegedly business number under the case law DaBella

cites, must all be resolved through *actual* evidence. DaBella has not even begun to meet its

burden of demonstrating how it relied on any of these websites before it contacted the Plaintiff or

why their accuracy cannot reasonably be questioned. Those questions, including how DaBella

used the information, the legal significance of using it, and what it allegedly proves, might be

answered through discovery that has not yet occurred, but it cannot be answered now by judicial

fiat based on taking judicial notice of some information on the websites of five odd randos.

5

Opposition to Request

B.  *Government "FAQs" and "Q&As" are not properly the subject of judicial notice, and the Court must exercise its discretion with any facts contained in Exhibit 8.*

"When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 653 (2020). Exhibits 6 and 7, the FTC's FAQ and Q&A pages on the TCPA, are government publications. Courts treat government websites more permissively than private sites because of their institutional reliability. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010). However, even for government websites, courts do not notice the *truth* of their contents as a matter of course. *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1321 (C.D. Cal. 2023) (holding a court cannot take judicial notice of disputed facts contained in public records).

To the extent DaBella seeks to have this Court accept the content of FTC's pages (or, to a lesser extent, the FCC's order) as establishing *legal propositions or disputed facts*, that goes beyond what judicial notice permits. *See Bostock*, 590 U.S. at 653. The Court may take notice that these documents were published by the respective agencies, but any factual or legal conclusions drawn from them must be established through proper argument and evidence, including by reference to the actual statutory text, not through the shortcut of judicial notice of accepting as true the matters contained within them. *See Khoja*, 899 F.3d at 999 (holding that a court must identify the specific facts it is noticing, rather than broadly accepting an entire document sought to be noticed). "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id.* This is especially so given the death of wholesale agency deference and the non-binding nature of agency orders after *Loper Bright* and *McLaughlin*.

6

Opposition to Request

**CONCLUSION**

DaBella's Request for Judicial Notice is an improper attempt to smuggle disputed facts into the record through the back door of Rule 201. This is precisely the kind of misuse of judicial notice that courts in this Circuit routinely reject. For the foregoing reasons, Plaintiff respectfully requests that this Court deny DaBella's Request for Judicial Notice and strike the exhibits contained therein in their entirety. In the alternative, Plaintiff requests that the Court deny the Request as to Exhibits 1 through 5 and strike them and limit any judicial notice of Exhibits 6 through 8 to the fact of their existence and publication, not the truth of any matter or legal conclusions asserted therein.

RESPECTFULLY SUBMITTED AND DATED this March 23, 2026.

s/Andrew Roman Perrong
Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Lead Attorney for Plaintiff and the Proposed Class

**CERTIFICATE OF PAGE COUNT**

This brief complies with the applicable page-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains fewer than 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: March 23, 2026.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

7

Opposition to Request

**<u>CERTIFICATE OF SERVICE</u>**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: March 23, 2026                          _/s/ Andrew Roman Perrong_
                                                  Andrew Roman Perrong, Esq.

8

Opposition to Request