Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>    Plaintiff<br><br>vs.<br><br>DABELLA EXTERIORS LLC<br><br> Defendant. | Case No. 3:25-cv-00396-SI<br><br><br>OPPOSITION TO DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION AND STRIKE CLASS CLAIMS<br>TCPA (47 U.S.C. § 227)<br>DEMAND FOR JURY TRIAL |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DENY CLASS CERTIFICATION AND STRIKE CLASS CLAIMS**

**TABLE OF CONTENTS**

I.     **Introduction** .................................................................................................... **1**

II.    **Factual Background** .......................................................................................... **2**

III.   **Legal Standard** ................................................................................................. **4**

IV.    **Argument** .......................................................................................................... **5**

   A.    Defendant's motion should be denied as premature, because DaBella asks the Court to resolve fact-intensive Rule 23 certification issues in its favor before class discovery. ............... 5

   B.    Defendant's motion is procedurally improper because it smuggles merits disputes into a Rule 23 certification analysis. .................................................................................... 10

   C.    Defendant's Rule 23 arguments fail. ...................................................................... 15

      1.    There is no ascertainability requirement. ......................................................... 16

      2.    Numerosity is not seriously disputed. ............................................................. 18

      3.    Defendant fails to show a lack of commonality. ............................................... 19

      4.    Defendant fails to show a lack of typicality. .................................................... 21

      5.    Defendant fails to show inadequacy. .............................................................. 24

      6.    Defendant fails to show individual issues predominate. ..................................... 27

      7.    Defendant does not seriously dispute a class action is superior. ........................... 35

V.     **Conclusion** ..................................................................................................... **35**

Opposition to Motion to Deny

# TABLE OF AUTHORITIES

**Cases**

*A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 C 2513, 2018 WL 488257 (N.D. Ill. Jan. 18, 2018) ................................................................................................29

*Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952 (9th Cir. 2013)....................................................6

*Aley v. Lightfire Partners, LLC*, No. 5:22-CV-00330, 2024 WL 4007345 (N.D.N.Y. Aug. 30, 2024) ............................................................................1, 13, 19, 21, 22, 25, 31

*Allison v. Dolich*, No. 3:14-CV-01005-AC, 2019 WL 921436 (D. Or. Feb. 25, 2019) ...............18

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)...................................................................16

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) ...............................5, 10

*Anthony v. Fed. Sav. Bank*, No. 21 C 2509, 2025 WL 3101827 (N.D. Ill. Nov. 6, 2025)..1, 13, 19, 26, 28

*Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 3d 850 (N.D. Ill. 2016) ...........................26

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010)...............................................14

*Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318 (D. Or. 2014) ..............................4, 6, 16

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ..........................................22

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)...........................................................................6

*Bradley v. DentalPlans.com*, 2024 WL 2865075 (D. Md. June 6, 2024).......................................26

*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016)..................................29

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) .............................................16, 17

*Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-CV-03309-JD, 2022 WL 867256 (N.D. Cal. Mar. 23, 2022)...........................................................................................20, 22

*Clark v. Via Renewables, Inc.*, No. 24-CV-00568-JSC, 2025 WL 2968027 (N.D. Cal. Oct. 21, 2025) .............................................................................................11, 12, 22

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ..............................................................................5

*Connor v. ServiceQuick Inc.*, No. 1:24-CV-02286-CNS-NRN, 2025 WL 2855393 (D. Colo. Oct. 8, 2025) ................................................................................................................33

*Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017)...25

*Davidson v. O'Reilly Auto Enters.*, 968 F.3d 955 (9th Cir. 2020)..............................................4, 10

*Davis v. Cap. One, N.A.*, No. 1:22-CV-00903, 2023 WL 6964051 (E.D. Va. 2023).....................30

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ....................................................21

*Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008) ........................................30, 31

*Granados v. OnPoint Cmty. Credit Union*, No. 3:21-CV-847-SI, 2023 WL 3570039 (D. Or. May 18, 2023) ..........................................................................................................4, 5, 6

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)...........................................21, 32, 33

*Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996 (N.D. Cal. 2010)..........................................24

Opposition to Motion to Deny

*Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852 (N.D. Ill. 2024)...................9, 11, 12, 17, 28, 34

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019)..........................................24

*Jackson v. Athena Bitcoin, Inc.*, No. 4:24CV331-MW/MJF, 2025 WL 2237453 (N.D. Fla. June 18, 2025) .................................................................................................................32, 33

*Jammeh v. HNN Assocs., LLC*, No. C19-0620JLR, 2020 WL 5407864 (W.D. Wash. Sept. 9, 2020) .............................................................................................................................10

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ...............................17, 18, 34, 35

*Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376 (D. Mass. 2024) .................................. passim

*Mattson v. New Penn Fin., LLC*, No. 3:18-CV-01893-YY, 2018 WL 6735088 (D. Or. Nov. 6, 2018) ...........................................................................................................................4, 5

*Mattson v. Rocket Mortg., LLC*, No. 3:18-CV-00989-YY, 2024 WL 4794710 (D. Or. Sept. 16, 2024) .............................................................................................................................33

*McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-CV-1921-SI, 2020 WL 1970812 (D. Or. Apr. 24, 2020)..................................................................................................6, 16

*McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2018 WL 692105 (N.D. Cal. Feb. 2, 2018) .............................................................................................................................15

*Ms. L. v. U.S. Immigr. & Customs Enf't*, 330 F.R.D. 284 (S.D. Cal. 2019)..................................10

*Murch v. GPS Cap. Markets, LLC*, No. 3:24-CV-01854-SB, 2025 WL 2466576 (D. Or. June 6, 2025) ...............................................................................................................................7

*Murch v. GPS Cap. Markets, LLC*, No. 3:24-CV-01854-SB, 2025 WL 2770190 (D. Or. Sept. 26, 2025) ...............................................................................................................................7

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006)....................................................25

*Physicians Healthsource, Inc. v. A–S Medication Sols., LLC*, 318 F.R.D. 712 (N.D. Ill. 2016).27–28

*Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378 (E.D. Pa. Apr. 5, 2019) ...........................................................................................................................26

*Stoops v. Wells Fargo Bank*, 197 F. Supp. 3d 782 (W.D. Pa. 2016) .............................................25

*Story v. SEFCU*, No. 118CV764MADDJS, 2021 WL 736962 (N.D.N.Y. Feb. 25, 2021).....21–22

*Thrower v. Citizens Disability, LLC*, No. CV 20-10285-GAO, 2022 WL 3754737 (D. Mass. Aug. 30, 2022) .................................................................................................1, 13, 19, 31

*Toney v. Quality Res., Inc.*, 323 F.R.D. 567 (N.D. Ill. 2018) .................................................28, 29

*True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923 (9th Cir. 2018)...........16, 28, 29

*Updike v. Clackamas Cnty.*, No. 3:15-CV-00723-SI, 2015 WL 7722410 (D. Or. Nov. 30, 2015).6

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017)..............................11, 26

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ........................................4

*Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022) .....................................................14, 35

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .....................................................5, 15, 16, 19

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000)......................................29

iv

Opposition to Motion to Deny

*Weingrad v. DaBella Exteriors, LLC*, No. 3:25-CV-396-SI, 2026 WL 496609 (D. Or. Feb. 23, 2026) .................................................................................................................... passim

*Wilkes v. CareSource Mgmt. Grp. Co.*, No. 4:16-CV-038 JD, 2016 WL 7179298 (N.D. Ind. Dec. 9, 2016) .................................................................................................................28

*Williams v. PillPack LLC*, 343 F.R.D. 201 (W.D. Wash. 2022) .......................................... passim

*Wilson v. Safeway, Inc.*, No. 3:24-CV-01427-SI, 2025 WL 2496010 (D. Or. Aug. 29, 2025) .......5

## Statutes

47 U.S.C. § 227(b) ...........................................................................................................2, 12

47 U.S.C. § 227(c) ..................................................................................................................2

47 U.S.C. § 227(c)(5)............................................................................................................24

## Regulations

47 C.F.R. § 64.1200(c)(2) ........................................................................................................2

47 C.F.R. § 64.1200(d) .........................................................................................................20

47 C.F.R. § 64.1601(e)................................................................................................3, 15, 21

## Rules

Fed. R. Civ. P. 23 .......................................................................................................... passim

Fed. R. Civ. P. 23(a) .............................................................................................................15

Fed. R. Civ. P. 23(a)(1)..........................................................................................................18

Fed. R. Civ. P. 23(a)(2)..........................................................................................................16

Fed. R. Civ. P. 23(b)(2)..........................................................................................................15

Fed. R. Civ. P. 23(b)(3)...............................................................................................16, 27, 29

Fed. R. Civ. P. 23(c)(1)(C) .....................................................................................................10

Opposition to Motion to Deny

## I.    INTRODUCTION

DaBella asks this Court to strike Plaintiff's class allegations before class discovery has begun in earnest, while simultaneously filing a motion for summary judgment raising much the same arguments. Its two motions are designed to force the Court to resolve contested factual questions before Plaintiff has had any opportunity to develop the class record. That approach has been rejected by this Court and by the Ninth Circuit. At bottom, DaBella's instant motion conflates two distinct inquiries.

The first issue with DaBella's motion is that DaBella presupposes that it can sneak contested merits questions and its own interpretation of what the facts show into the instant motion as some basis for denying certification. And the second is that the very evidence DaBella attempts to prematurely sneak in and adjudicate here, which has not even been fully developed yet, may yet support class certification. Importantly, courts across the country have held that a TCPA National DNC class may still be certified, even when the defendant possesses some form of claimed consent, and even when it possesses that same (faulty) evidence for every class member. *See, e.g., Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376 (D. Mass. 2024); *Aley v. Lightfire Partners, LLC*, 2024 WL 4007345 (N.D.N.Y. 2024); *Williams v. PillPack LLC*, 343 F.R.D. 201 (W.D. Wash. 2022); *Anthony v. Fed. Sav. Bank*, No. 21 C 2509, 2025 WL 3101827, at *8 (N.D. Ill. Nov. 6, 2025); *Thrower v. Citizens Disability, LLC*, No. CV 20-10285-GAO, 2022 WL 3754737 (D. Mass. Aug. 30, 2022). DaBella has filed a premature motion raising consent it refuses to take discovery on, and which its vendors have ignored subpoenas on.

DaBella's purported evidence of "consent" is also fatally flawed on its own terms, showing that a class may appropriately be certified on one of multiple uniform issues with the purported consent evidence on a class basis. For example, the consent form upon which DaBella relies on its motion claims to obtain consent to contact individuals "by automatic dialing system

and pre-recorded calls and artificial voice messages." (MDCC at 12). But the problem with that language is that it tracks the TCPA's § 227(b)'s prerecorded call provisions, not the Do Not Call Registry permission required by § 227(c) and 47 C.F.R. § 64.1200(c)(2) for DNC violations. Whether this form language satisfies the DNC consent standard, which must obtain consent explicitly in a manner that makes clear applies even if a number is on the Registry, is a common legal question that applies to every class member who was called based on these forms, and it is a question that cuts across all of DaBella's lead sources on which this particular registration form appeared, not just searchrenovation.us. This is to say nothing of the fact that DaBella's purported issues under which it affirmatively seeks to deny certification addresses only the National DNC class. DaBella barely engages the other two classes, which have no reliance on "consent."

But most importantly, this Court has already denied DaBella's Motion to Strike Class Allegations in this very action. *Weingrad v. DaBella Exteriors, LLC*, No. 3:25-CV-396-SI, 2026 WL 496609, at *7 (D. Or. Feb. 23, 2026). DaBella should not be permitted to achieve through a pre-discovery Rule 23 motion what it could not achieve on a motion to strike that it now seeks as alternative relief. The motion should be denied in its entirety.

## II.    FACTUAL BACKGROUND

Plaintiff Leon Weingrad's telephone number is on the National Do Not Call Registry. Despite that registration, DaBella contacted Mr. Weingrad at least eight times last year, including at least one time after he filed suit. On February 6, 2025, DaBella sent two unsolicited text message calls to Mr. Weingrad, one displaying DaBella's logo and another addressing him as "Robert" and marketing a home improvement estimate. The same day, DaBella placed four voice calls to Mr. Weingrad. Mr. Weingrad missed the first two calls. When he answered the second two, he heard only dead air before the call disconnected. The following day, DaBella called again. A representative named "Teresa" attempted to sell Mr. Weingrad windows and to

2

Opposition to Motion to Deny

schedule an in-home estimate. Mr. Weingrad engaged the caller to ascertain the identity of the company contacting him, a common and understandable response when receiving unwanted calls from unknown numbers. He subsequently cancelled the appointment and filed suit.

Yet DaBella placed at least one additional call to Mr. Weingrad on at least September 11, 2025, six months after DaBella knew of this lawsuit, and after Mr. Weingrad had cancelled the appointment. The caller again referred to Mr. Weingrad as "Robert" and asked if he was still interested in getting a quote for windows. When Mr. Weingrad asked why he was getting a call from DaBella, the representative said, "Well, looks like I . . .," and then hung up. In response to Defendant's Motion to Dismiss, this Court has already observed that "DaBella makes no argument that Mr. Weingrad did not, in effect, communicate with the company that he wanted the communications to stop." The telephone numbers DaBella used to contact Mr. Weingrad are not associated with a caller ID naming DaBella. And two of them cannot be used to make a "do not call" request during regular business hours. These are independent violations of the TCPA's Caller ID provision, 47 C.F.R. § 64.1601(e), which this Court has already held is actionable.

DaBella claims it obtained a "consent form" to call Plaintiff's number from two third party companies, SBBNet, who sold it to Richardson Marketing Group, who sold it to DaBella. Neither has responded to subpoenas. To this day, DaBella refuses to produce any evidence of consent to contact any other class member. It is also not even clear what precise evidence DaBella has produced for the "form" DaBella relies upon with respect to Plaintiff, although it purports to claim to know the language contained on that form. In any event, DaBella claims that this "form" was submitted under the name "Robert Bronson." DaBella subsequently deposed the subscriber of record for the IP address it claims was associated with that "form," who confirmed that he never visited the website claimed, did not submit the consent form, does not know the

3

Opposition to Motion to Deny

Plaintiff, and suspected his phone may have been hacked. This individual, who lives alone, also testified that nobody else in his house had access to his IP address. Moreover, DaBella's motion reveals, perhaps inadvertently, the systemic nature of its lead acquisition practices, having readily ascertained not only that the Plaintiff's lead originated from a company called Richardson Marketing Group (which has not responded to discovery), but that this very same lead generator has been implicated in four other lawsuits against DaBella, which caused DaBella to pause all traffic from them in October of 2025.

DaBella has now moved to prematurely deny class certification or, in the alternative, strike the class claims, relief which this Court has already denied. This response follows.

### III.     LEGAL STANDARD

A court "may strike class allegations at the pleading stage but abuses its discretion if it does so prematurely." *Granados v. OnPoint Cmty. Credit Union*, No. 3:21-CV-847-SI, 2023 WL 3570039, at *2 (D. Or. May 18, 2023) (Simon, J.) (citing *Davidson v. O'Reilly Auto Enters.*, 968 F.3d 955, 963 (9th Cir. 2020)). "[O]ften the pleadings alone will not resolve the question of class certification and that some discovery will be warranted." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). In *Granados*, this Court held that pre-discovery motions to strike class allegations are disfavored and appropriate only where the class is "obviously defective in some way." *Id.* at *8. This Court has further noted that courts in this district repeatedly deny such motions as premature. *Id.* (citing *Mattson v. New Penn Fin., LLC*, 2018 WL 6735088, at *2-3 (D. Or. Nov. 6, 2018)). Both *Ott* and *Mattson* were TCPA DNC cases.

And where a defendant moves to strike before the close of class discovery, "it is properly the defendant who must bear the burden of proving that the class is *not* certifiable." *Id.* at *2 (citing *Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1340–41 (D. Or. 2014)). This Court reiterated these principles just last month in this very case, holding that "[c]ourts in the

4

Opposition to Motion to Deny

Ninth Circuit routinely deny motions to dismiss or strike class allegations at the pleading stage." *DaBella*, 2026 WL 496609, at \*6-\*7 (quoting *Wilson v. Safeway, Inc.*, 2025 WL 2496010, at \*5 (D. Or. Aug. 29, 2025) and citing *Mattson*, 2018 WL 6735088).

This Court applies a similar standard in determining whether to deny or certify a case under Rule 23. In determining whether to deny or certify a class, a court must conduct a "rigorous analysis" that "will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). But that rigorous analysis "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* A developed record is typically required, and that is why an affirmative motion for certification is the "proper procedural context" to "resolve [DaBella's] arguments" on a complete record, not a motion to strike. *Granados*, 2023 WL 3570039, at \*8.

## IV.    ARGUMENT

A.    *Defendant's motion should be denied as premature, because DaBella asks the Court to resolve fact-intensive Rule 23 certification issues in its favor before class discovery.*

DaBella filed this motion before any meaningful class discovery has occurred. At the same time, DaBella has resisted discovery into any putative consent and its vendors have ignored subpoenas about consent. Despite having no evidence, DaBella has filed a motion for partial summary judgment on the Plaintiff's individual claims, raising much the same consent and number usage arguments. This strategy is impermissible for two reasons. First, it is designed to collapse the merits inquiry into the class certification inquiry, which asks not whether or not the class will prevail on its claims, but instead asks whether there are common legal and factual

5

Opposition to Motion to Deny

questions that will drive common answers as to who should prevail. *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). Second, it forces the court to resolve contested factual questions as to the propriety of certification before Plaintiff has had an opportunity to develop the class record to determine whether or not there exists common evidence susceptible to providing common answers to this litigation. This Court rejected a variation of that approach in *Granados*.

And in *Updike v. Clackamas Cnty.*, in which the County attempted to affirmatively seek to deny class certification at the Rule 12(b)(6) stage based on a purported inability to meet Rule 23's requirements, Judge Simon remarked that "district courts have held that even when a plaintiff's class allegations appear suspicious at the pleading stage, a plaintiff should at least have an opportunity to make the case for class certification following appropriate discovery." No. 3:15-CV-00723-SI, 2015 WL 7722410, at *11 (D. Or. Nov. 30, 2015) (citing cases). That being the case here, this Court should do the same. Indeed, this Court has already denied DaBella's Motion to Strike Class Allegations in this very action. *DaBella*, 2026 WL 496609 (D. Or. Feb. 23, 2026). In doing so, the Court applied this same Ninth Circuit framework. *Id.* at *6-*7. As this Court put it, citing *Ott*, "motions *for* class certification are the more appropriate vehicle for arguments about class definitions." (emphasis added). Put differently, "[d]istrict courts, however, have greater discretion to certify a class than to deny certification." *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-CV-1921-SI, 2020 WL 1970812, at *1 (D. Or. Apr. 24, 2020) (Simon, J.) (citing *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013)).

As this Court also correctly noted, when seeking to deny certification or strike a class, particularly before discovery, the defendant bears "the burden of proving that the class is not certifiable." *Id.* at *6 (quoting *Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1341 (D. Or. 2014)). In other words, as the party affirmatively seeking a certification decision on the basis

6

Opposition to Motion to Deny

that certification ought to be *denied*, the defendant bears the burden of showing that the Plaintiff cannot meet any one of the Rule 23 elements. As will be explained below, DaBella has not met that burden. Having already denied DaBella's attempt to dispose of the case at the pleadings stage on much the same grounds, the Court should not allow DaBella to achieve the same result through a pre-discovery motion styled as a Rule 23 challenge.

In this respect, DaBella's reliance on *Murch v. GPS Cap. Markets, LLC*, No. 3:24-CV-01854-SB, 2025 WL 2770190 (D. Or. Sept. 26, 2025), is misplaced. As an initial matter, DaBella sought the same relief that the Court granted in *Murch*, but this Court denied it. It cannot now seek to relitigate a denial of a motion to strike class claims. But even so, in striking the class claims in *Murch* without prejudice and with leave to amend, the *Murch* court recognized that the defendant was a was a business-to-business foreign exchange brokerage that "does not market its products or services to the general public or consumers like Plaintiff." *Murch v. GPS Cap. Markets, LLC*, No. 3:24-CV-01854-SB, 2025 WL 2466576, at *15 (D. Or. June 6, 2025). On that basis, the *Murch* Court held that the plaintiff pled insufficient facts alleging a certifiable telephonic marketing campaign, lead generation system, or pattern of calling consumers to demonstrate that class treatment was appropriate. *See id.* at *15-*16.

Here, by contrast, DaBella pleads itself out of the very relief it seeks and the very theory on which the *Murch* court relied. DaBella states that it is a consumer-facing home improvement company that makes "hundreds of thousands of calls[] per month." (MDCC at 16). It does so across several "lead forms" and "data sources." (*Id.*). Of the whopping *seven* "demands/lawsuits" in which DaBella has been involved with "over the last year" *alone*, a whopping *fifty seven* percent of those issues have arisen from the "same website here https://searchrenovation.us, owned by Richardson Marketing Group." (*Id.* n.2). Plaintiff has alleged a systematic pattern of

7

Opposition to Motion to Deny

calling DNC registered numbers based on a common lead generation process, mostly all of which had originated from the same source, precisely the factual allegations that were absent in *Murch*, which the court recognized was a curable deficiency. Here, no such deficiency exists.

DaBella's own motion shows why class certification may be *appropriate* here. DaBella pleads that it recognized how bad of a problem Richardson's lead generation practices were that ultimately caused them to "pause[] all traffic from Richardson . . . on October 8, 2025." It admits it is now dealing with *four* class action lawsuits arising from that very lead generation conduct. If anything, this shows that class treatment is appropriate because it shows a wide-ranging compliance problem; if *four* individuals have decided to file suit, there are potentially millions more, who are ignorant of their rights under the TCPA, who did not.

Moreover, the limited evidence adduced thus far has demonstrated that if anybody here is the problem, it is Richardson and DaBella for continuing to work with Richardson and its subvendors for *months* during the pendency of this lawsuit and despite their refusal to respond to subpoenas or provide consent evidence. The subscriber of the IP address claimed here has denied visiting the subject website and testified that his phone may have been hacked. SBBNet and Richardson, the proponents of that information, now refuse to respond. Upon information and belief, other plaintiffs have made similar allegations surrounding leads generated by Richardson. As such, there may exist common evidence of a systemic problem with DaBella's lead generation and evidence gathering practices, which are *precisely* the kind of common, classwide issues that warrant class discovery and eventual certification.

Nor can DaBella use uncertainty about other lead sources and vendors it uses as a reason to force a premature narrowing of the Plaintiff's claims. As an initial matter, DaBella seeks to affirmatively deny certification based on a *purely speculative* consent defense that it *provides no*

8

Opposition to Motion to Deny

*admissible evidence* for, let alone evidence sufficient to show it has consent information. Indeed, as explained in the Declaration of Andrew Perrong, Plaintiff issued and served subpoenas seeking consent information on SBBNet, the website operator, who then sold information to Richardson Marketing Group, whom Plaintiff also subpoenad, who then sold it to DaBella. But with neither entity responding to those subpoenas, DaBella will be unable to meet its affirmative defense of proving consent because it has maintained *no evidence of its own* to substantiate that any website visit even took place. *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 873 (N.D. Ill. 2024) (denying motion for summary judgment on consent defense when the only evidence of a website visit was a hearsay spreadsheet and where the website operator provided no evidence). Simply put, DaBella can claim the existence of a consent defense all it wants, but it cannot go to the Court seeking to deny certification on that basis while simultaneously having *any evidence* for its claimed defense on which basis it seeks to deny certification. At this stage, any putative consent is purely speculative, and DaBella cannot seek to deny certification based on speculation into evidence it hasn't even produced and may not exist.

At various points in its motion, DaBella proposes limiting or narrowing the class to at least seven alternatives, including a single website, IP address, or state, among other criteria. (MDCC at 33-34, 39-43.) But each of these requires discovery that has not yet occurred. These proposals (1) seek the Court to prematurely evaluate the data and evidence itself, which DaBella refuses to produce and which will be the subject of an imminent motion to compel, and (2) amounts to asking the Court to pre-define the class based on criteria and purported issues with narrowing based on the Defendant's own say-so instead of an actual review of the evidence itself (as opposed to what DaBella merely says the evidence shows). Refinements to the class definition are more properly addressed at the certification stage based on whatever the evidence

Opposition to Motion to Deny

reveals with respect to the Rule 23 elements, not before. Defendant provides no basis for narrowing the class allegations to any one of its proposals before discovery. What's more, some of DaBella's own proposals are facially uncertifiable because they plainly require the very same individualized merits determinations that DaBella claims are present here, such as the one that would define the class by whether any lead is "fraudulent."

If DaBella believes the class definition should be narrowed after discovery, it may raise those arguments in opposition to a motion for class certification. The proper course is to permit class discovery and then address the scope of the class sought to be certified through ordinary certification briefing. This is particularly so because a court may *sua sponte* alter a class definition to conform to the evidence, even at certification. Fed. R. Civ. P. 23(c)(1)(C). *Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*, 330 F.R.D. 284, 287 (S.D. Cal. 2019); *Jammeh v. HNN Assocs., LLC*, No. C19-0620JLR, 2020 WL 5407864, at *10 (W.D. Wash. Sept. 9, 2020) (altering the start date of two classes). Striking class allegations now would deprive Plaintiff of the opportunity to present a motion for class certification on a full evidentiary record, an outcome the Ninth Circuit has held constitutes an abuse of discretion. *Davidson*, 968 F.3d at 963.

**B.    Defendant's motion is procedurally improper because it smuggles merits disputes into a Rule 23 certification analysis.**

DaBella's motion relies on much the same core factual arguments on which it relies in its motion for summary judgment. This shows that it is smuggling merits arguments regarding the propriety of evidence and what it shows into a Rule 23 certification analysis. But Rule 23 simply asks whether or not there exists common evidence making class certification proper, not whether that evidence will ultimately be decided in the plaintiff's favor. Rule 23 does not authorize "free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 466. But that's precisely what DaBella does here, repackaging merits arguments dressed in Rule 23 clothing.

10

Opposition to Motion to Deny

DaBella proceeds from the assumption that its consent defense is valid and then reasons backward. For example, it assumes that, if consent is valid, then each class member's consent must be individually assessed; therefore individualized issues predominate. This gets the analysis exactly backward. Consent is an *affirmative defense* under the TCPA for which the defendant bears the burden of proof. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). This means that DaBella must produce evidence of consent and point to the presence of individualized issues within it to affirmatively deny class certification; as explained above, DaBella cannot seek to deny certification based on purportedly individualized issues present in evidence it can't even produce. And its entire consent argument relies on a chain of hearsay.

On this point, *Hossfeld* is instructive. In *Hossfeld*, Allstate relied on a spreadsheet containing the Plaintiff's information, which was purportedly obtained from an entity called KP Leads, who itself stated that it obtained the information from website submissions. *Hossfeld*, 726 F. Supp. 3d at 873. Just as in *Hossfeld*, DaBella has not laid an evidentiary predicate for its claims of consent. The website operator, SBBNet, and purchaser/reseller of the website data, Richardson Marketing Group, have produced *no evidence* of classwide consent information and have not even proffered *any* evidence substantiating even the Plaintiff's lead. This is little surprise, as it is likely that either SBBNet or Richardson simply made up the IP address it claimed visited the website. All DaBella has is a hearsay statement, compounded by multiple levels of hearsay, that the Plaintiff's information was submitted from a website. Without the lead generators, SBBNet and Richardson, providing evidence for the underlying data itself, the lead generators' statements to DaBella are themselves hearsay. *Id.* Defendant relies heavily on *Clark v. Via Renewables*, but even that case recognized that consent is an *affirmative defense*. No. 24-CV-00568-JSC, 2025 WL 2968027, at *2 (N.D. Cal. Oct. 21, 2025). The *Clark* court denied

Opposition to Motion to Deny

certification based on consent because there existed *no uniform legal or factual issues* with the proffered consent evidence rendering the named plaintiff typical of the class, not merely because the defendant had adduced some evidence of consent, which DaBella doesn't even do. *Id.* at \*7.

Because DaBella bears the burden of proving consent, the question for class certification is not whether each individual consented, but whether the *legal validity of DaBella's consent procedures*, which DaBella has not even adduced evidence of presents common questions. But even if it did, it could still present common questions. As illustrative, consider one example of many. The (hearsay) consent language purportedly contained on the searchrenovation.us form authorizes calls "by automatic dialing system and pre-recorded calls and artificial voice messages," MDCC at 12, and *not* to calls on the Do Not Call Registry. As such, the very language on which DaBella relies simply provides consent to receive *prerecorded calls* under § 227(b) of the TCPA; it does not clearly and unambiguously extend that consent to a number on the Do Not Call Registry. The DNC rules require separate proof of consent to *call a number on the Registry*, and the form's language does not address that obligation. *See Mantha*, 347 F.R.D. at 389–93 (granting certification and holding that the consent language itself was legally insufficient to authorize the subject calls and thus susceptible to classwide proof). Similarly, if the evidence of consent is wholesale inadmissible, such as if it's only comprised of hearsay, the Court will simply rule on the admissibility of the evidence, just as in *Hossfeld*, on a class basis.

But even if admissible evidence existed, whether DaBella's form language satisfies any one of the multiple standards and requirements for consent is a common legal question that applies to every class member who was called based on the same language. If the same legal defect undermines the form itself (including any associated arbitration clause), that "consent" cannot legally bind any class members, regardless of whether or not they submitted anything as a

12

Opposition to Motion to Deny

factual matter. This Court can similarly hold if there exist uniform indicia of facial invalidity. DaBella's own motion intimates that the lead may have been submitted at a Boost Mobile store when the IP address subscriber purchased it "on February 31, 2025." (MDCC at 15). That's precisely the kind of factual impossibility and evidentiary deficiency that would render class treatment appropriate and which likely would also result in judgment in the Plaintiff's favor.

Mantha is part of a long line of authority in which courts have certified classes when the same uniform deficiency undermined the defendant's admissible putative consent information to warrant class treatment appropriate, including on predominance grounds. Williams, 343 F.R.D. at 208 (certifying and holding predominance was satisfied when defendant did not appear on the website it relied upon for consent); Aley, 2024 WL 4007345, at *5 (certifying and holding predominance was satisfied because the legal sufficiency of consent procedures on a website was capable of classwide assessment); Mantha, 347 F.R.D. at 393 (certifying and identifying a "list of questions of law or fact that are common to the putative Class"); Anthony, 2025 WL 3101827, at *10-*11 (certifying and holding as a matter of law that consent to being transferred to the defendant was insufficient because the "TCPA serves to stop unwanted calls from being made in the first place" and because "any potential harm has already occurred" by the time the call was placed); Thrower, 2022 WL 3754737, at *5 (certifying and holding that, despite the use of multiple lead generators, the legal analyses would only require "[a] few determinations of whether the wording of a given form conveyed express consent").

To this end, DaBella's refinement argument implicitly concedes that the (unproduced) evidence may show that class treatment is appropriate because of the deficiencies it concedes exist, albeit on a narrower scope. If DaBella believed the class were truly uncertifiable, it would not be suggesting narrowed alternatives based on uniform issues that may render class treatment

13

Opposition to Motion to Deny

appropriate. But even so, DaBella's proposals to narrow the class before meaningful class discovery has taken place amounts to a request for the Court to predefine the class to the predominant legal issues of its choosing, a task properly reserved for the certification stage on an evaluation of the evidence adduced. Nor will allowing discovery into a supposedly "overbroad" class create unfair settlement pressure. (MDCC at 37-38).

The possibility of large aggregate damages as a result of a uniform legal or factual issue identified through class discovery is not a reason to prematurely deny certification. It is a consequence of the defendant's conduct at scale. The Ninth Circuit has squarely rejected this argument. In *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 710 (9th Cir. 2010), the Ninth Circuit reversed the denial of class certification where the district court had relied on the "enormity" of potential statutory damages and their alleged disproportionality to actual harm. The Ninth Circuit held that "[t]o limit class availability merely on the basis of 'enormous' potential liability that Congress explicitly provided for would subvert Congressional intent." *Id.* at 723. And in *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1119 (9th Cir. 2022), the Ninth Circuit largely affirmed class certification and a billion-dollar Oregon jury award when defendant was unable to meet its affirmative defense of consent. Settlement pressure from lawful class treatment is the ordinary operation of Rule 23, not "in terrorem" coercion.

Finally, it must also be observed that DaBella's motion, which, as has been explained, improperly presupposes that it obtained legally sufficient consent to contact class members in the first place and further improperly presupposes that there exist no uniform legal or factual issues pertaining to the same, does not address the Plaintiff's Internal DNC or Caller ID claims, and for good reason. *Consent is not a defense to those claims*. DaBella filed a separate motion to dismiss these classes, which the Court denied, yet simultaneously asks this Court to affirmatively deny

14

Opposition to Motion to Deny

certification on grounds that this Court already rejected, a further indication that DaBella is simply shopping around for procedural vehicles to try and wiggle itself out of a class action rather than presenting a coherent argument against certification at the appropriate time.

It's easy to see why consent does not apply to these claims. First, the Internal DNC class is based on the very fact that DaBella did not honor do not call requests themselves, including by filing suit. *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2018 WL 692105, at *6 (N.D. Cal. Feb. 2, 2018); *Mantha*, 347 F.R.D. at 394. Given that any purported consent may be revoked at any time and by any reasonable means, it's easy to simply use the Defendant's own records to ascertain who was called after they asked to stop, precisely as in *Mantha*. Relatedly, consent is irrelevant to the caller ID class, as the applicable regulations do not establish consent as a defense to those claims. 47 C.F.R. § 64.1601(e). Whether DaBella used unlawful caller ID practices to place telephone solicitations, even those made with arguable consent, is entirely independent of whether any class member consented to the underlying call. DaBella's motion offers no meaningful analysis of either class and should be denied with respect to these two classes on this basis alone. And, with respect to the National DNC claim, this Court must evaluate the actual consent evidence to determine whether or not uniform factual or legal questions exist and not merely take the Defendant's say-so that none exist at this stage.

## C.    *Defendant's Rule 23 arguments fail.*

To certify any class under Rule 23, a plaintiff must demonstrate that the four prerequisites of Rule 23(a) are satisfied, (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *Wal-Mart*, 564 U.S. at 345. For a Rule 23(b)(2) class, a plaintiff need only demonstrate that the party opposing the class "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). For a Rule 23(b)(3) class,

15

Opposition to Motion to Deny

the plaintiff must additionally show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Wal-Mart*, 564 U.S. at 345; Fed. R. Civ. P. 23(b)(3).

Commonality under Rule 23(a)(2) requires that the class claims "depend upon a common contention" whose resolution "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Predominance under Rule 23(b)(3) is related to commonality but is a more demanding standard. The predominance element "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). Even so, predominance does not require a plaintiff to show that every question of law or fact is common to every member of the class, and a class may still satisfy the predominance element, particularly on a consent defense, "by simply examining the product registrations and the EULAs." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018). On this posture, the court has far less discretion than it would when certifying a class. *See McKenzie*, 2020 WL 1970812, at *1. Here, because DaBella is the party affirmatively moving to deny certification or strike class claims before discovery, DaBella bears the burden of proving that the class is not certifiable. *Bates*, 993 F. Supp. 2d at 1341; *DaBella*, 2026 WL 496609, at *7. Defendant has not met that burden as to any Rule 23 requirement, particularly when any evidentiary questions should be drawn in the non-movant's favor in the procedural posture here.

1. <u>There is no ascertainability requirement.</u>

The Ninth Circuit has recently held that Rule 23 imposes no implied ascertainability requirement. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.3, 1133 (9th Cir. 2017). DaBella ignores *Briseno* in arguing there is (allegedly) "no methodology to identify class

Opposition to Motion to Deny

members without individualized inquiries" because its records show only whether a consent form was received, not whether it was fraudulently submitted. (MDCC. at 14–15, 21–23.) This argument fails for two reasons. First, the class is not defined by consent. Instead, it is defined by objective, record-based criteria: DNC registration status (verifiable through federal data) plus calls from DaBella's own call logs. That is the opposite of an "unascertainable" class, even if that requirement existed in the Ninth Circuit, which it does not. Second, even if there existed consent evidence that only showed whether consent was received, that's insufficient for DaBella to meet its burden of affirmatively proving consent, because merely relying on a third party's say-so that someone consented is inadmissible hearsay. *Hossfeld*, 726 F. Supp. 3d at 873.

Relatedly, the Ninth Circuit has rejected any freestanding "administrative feasibility" prerequisite to class certification. *Briseno*, 844 F.3d at 1125 (holding that Rule 23 contains no "separate administrative feasibility prerequisite" and that plaintiffs need not "proffer a reliable way to identify [class] members" at the certification stage). DaBella's ascertainability concerns are properly addressed through Rule 23's express requirements, and not through a freestanding inquiry that the Ninth Circuit has repudiated. To this end, the *Williams* Court expressly held that individual determinations of membership can be handled using "computer records, clerical assistance, and objective criteria," rather than mini-trials. 343 F.R.D. at 208.

And even so, DaBella's "no methodology" argument is a variation on a similar argument the Fourth Circuit rejected in *Krakauer*, holding that DNC classes are not unworkable but instead that they "offer[] many advantages for class-wide adjudication" because the "problems that so often plague class actions under Rule 23(b)(3) are wholly absent from this scheme." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019). This is because the DNC Registry is a single, centralized database and whether the defendant called someone on that list without

17

Opposition to Motion to Deny

appropriate consent is usually determinable from the defendant's own records. *Id.* The class here is identified from DaBella's call logs cross-referenced with the NDNCR, exactly the methodology *Krakauer* endorsed. Whether some class members may have consented is a merits issue for DaBella to prove as an affirmative defense, not a barrier to ascertaining the class, were that even a requirement (which it is not).

> 2. Numerosity is not seriously disputed.

"To certify a class, Rule 23(a)(1) requires a plaintiff to demonstrate the proposed class is too numerous for joinder to be practicable. The rule does not impose a bright-line numerical threshold at which the numerosity requirement is met; rather, the court must evaluate the facts of each case." *Allison v. Dolich*, No. 3:14-CV-01005-AC, 2019 WL 921436, at *14 (D. Or. Feb. 25, 2019), *aff'd*, 815 F. App'x 135 (9th Cir. 2020). "Generally, classes composed of 40 members or more are considered sufficiently numerous to meet the requirement, while classes of 15 or fewer are not." *Id.* DaBella makes "hundreds of thousands of calls[] per month." (MDCC at 16). Of the *seven* telemarketing lawsuits in which DaBella, a serial Defendant, has found itself engaged in the past year, over *fifty seven percent* of those involve allegations with respect to the same website and lead generator at issue here. Given that, by DaBella's own admission, at least four separate individuals have bothered to sue it over telephone calls using numbers obtained from that same lead source, it is fair to assume that a substantial percentage of the "hundreds of thousands" of calls DaBella made in a month involve at least the same lead generator at issue.

This is to say nothing of the other lead generators from which DaBella potentially obtained information to make nonconsensual calls, of which it admits there are "dozens." (MDCC at 16). DaBella's argument that only a "handful" of similarly situated individuals exist (MDCC at 28–29) confuses people who have *formally complained* via demand letter or lawsuit with the number of people who *were called on the DNC without valid consent*. The class should

18

Opposition to Motion to Deny

be ascertained from DaBella's call records and any putative consent evidence, combined and cross-referenced with NDNCR data, not from the number of people who have hired lawyers and bothered to sue. Thus, the numerosity threshold is easily met for all three proposed classes.

3.    Defendant fails to show a lack of commonality.

With respect to the National DNC class, common questions in this litigation include: (1) whether DaBella's lead generation forms and website disclosures were legally sufficient to convey prior express written consent to receive telemarketing calls to numbers on the NDNCR; (2) whether DaBella was identified with sufficient seller specificity on those forms; (3) whether DaBella even *possesses* admissible evidence of consent; (4) whether DaBella's TCPA compliance policies were adequate; and (5) whether DaBella's consent defenses can be shown through common proof. Each is "capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350 (discussing commonality). *Williams*, *Aley*, *Thrower*, and *Anthony* exemplify certified classes based on common questions applicable to the classes on one or more of these identified bases.

DaBella's assertion that its consent forms were obtained from "dozens of unique lead forms," MDCC at 16, does not defeat commonality. As in *Thrower*, the presence of multiple lead generation entities is insufficient to defeat commonality, since that simply involves looking to the legal sufficiency of a handful of lead generation forms, not individual mini-trials as to whether or not someone submitted information to those forms. 2022 WL 3754737, at *5. Thus, even if DaBella's "dozens" of lead sources used slightly different language, the threshold legal questions will be the same for each: did they adequately obtain consent to call numbers on the DNCR in compliance with the DNCR's consent regime? That is a legal question, not a factual one, and it is resolvable on a classwide basis. In fact, DaBella has shown that it engages in a common *practice* of purchasing leads from third-party websites, which is the very system whose legal adequacy Plaintiff may yet be able to challenge through classwide proof.

19

Opposition to Motion to Deny

In essence, all DaBella does is raise "grab bag of objections to commonality and predominance" based on purported consent while simultaneously ignoring that the plaintiff can "focus on common evidence to show that [DaBella] agents made unwanted calls," including the adequacy of DaBella's own consent and do not call policies. *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-CV-03309-JD, 2022 WL 867256, at *7 (N.D. Cal. Mar. 23, 2022). And even beyond the consent language issue, common questions exist about DaBella's overall TCPA compliance infrastructure, including whether DaBella even scrubbed its calling lists against the NDNCR, how frequently it updated its scrub data, and whether its post-complaint September 11, 2025 call demonstrates systemic noncompliance. *See id.* All of these are classwide questions. *Id.*

Common questions also exist as to the internal DNC and Caller ID claims, as well. With respect to the internal DNC claims, these questions include whether DaBella maintained an internal DNC list as required by 47 C.F.R. § 64.1200(d), whether it had written policies and training with respect to the use of that list, whether its systems were properly configured to suppress numbers on its internal DNC list, or whether it even honored opt-out requests as an initial manner. Moreover, being that consent may be revoked at any time through an internal do not call request, consent to initial contact is irrelevant. The September 11, 2025 call, placed during the pendency of this lawsuit, after Plaintiff had clearly communicated his desire not to be contacted, as this Court itself and other have observed, illustrates the common nature of the internal DNC claim. *DaBella*, 2026 WL 496609, at *7; *Mantha*, 347 F.R.D. at 392 (D. Mass. 2024) (observing that the internal DNC claims were analyzed based on defendant's own "internal DNC files"). So too with the caller ID claims: proving these will simply require the Court to determine what telephone numbers it used to call class members, and then determine whether each number transmitted as caller ID name the telemarketer or seller's name. 47 C.F.R.

Opposition to Motion to Deny

§ 64.1601(e). As such, there exist common questions about DaBella's uniform calling infrastructure and consent procedures, provable from DaBella's own records of the same, which are justiciable on a class basis, satisfying commonality.

    4.   Defendant fails to show a lack of typicality.

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). In other words, the typicality requirement simply asks whether "defenses unique to the purported class representative threaten to subsume the litigation with inquiries unique to that representative." *Id.*

DaBella argues Plaintiff is atypical because he denies visiting the website. That is insufficient to defeat typicality. For example, the *Aley* Court held, on nearly identical facts, that a named plaintiff's denial of visiting the relevant website did *not* render her atypical for three reasons. *Aley v. Lightfire Partners, LLC*, No. 5:22-CV-00330 (AMN/TWD), 2024 WL 4007345, at *4 (N.D.N.Y. Aug. 30, 2024). First, it determined that it is likely "that other Proposed Class Members may similarly claim they never visited Myjobscorner.com." *Id.* Second, it noted that denying visiting the website was only relevant to the "Defendant's affirmative defense of consent, not 'prov[ing] all the elements of the cause of action'" *Id.* (quoting *Story v. SEFCU*, No. 118CV764MADDJS, 2021 WL 736962, at *5 (N.D.N.Y. Feb. 25, 2021)). Finally, it noted that, like in the Ninth Circuit, the "typicality prerequisite is a low, flexible bar." *Id.* Moreover, the *Aley* court also held that common legal questions as to the sufficiency of the consent evidence existed, so even *if* the plaintiff were atypical on the basis of her having denied a visit to the

Opposition to Motion to Deny

website, the question of whether or not a website visit even took place would be irrelevant and moot. *Id.* at *5 ("[S]hould the Court subsequently rule that the consent procedures were inadequate under the law, such a determination would render moot the individualized assessment of whether individual Proposed Class Members visited [the website].").

DaBella's reliance on *Clark v. Via Renewables* is misplaced. As an initial matter, DaBella has adduced *no* admissible evidence of *any* website visit at all. And in *Clark*, the plaintiff, who denied that he had visited a website, sought to represent an amorphous universe of call recipients who *did* visit the website, which Defendant produced admissible evidence of. *Clark v. Via Renewables, Inc.*, No. 24-CV-00568-JSC, 2025 WL 2968027, at *7 (N.D. Cal. Oct. 21, 2025).

Relatedly, Defendant's reliance on *Berman* neglects its subsequent procedural history. In *Berman*, the plaintiff denied visiting the website but attempted to challenge the website's compliance with the TCPA's clear and conspicuous disclosure requirements. However, the Ninth Circuit later permitted plaintiffs who *did* visit the website to challenge the website's compliance with the disclosure requirements, which it found lacking under applicable law. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022). In any event, *Clark* is both not binding and an outlier, particularly insofar as courts in this Circuit have certified TCPA cases based on legal deficiencies in consent websites that the plaintiffs nevertheless denied visiting. *Williams*, 343 F.R.D. at 213; *Bumpus*, 2022 WL 867256, at *5. Whether or not Mr. Weingrad actually visited or did not visit the website is irrelevant and does not threaten to pose a "defense unique to the purported class representative." The truth or falsity of this factual question doesn't matter if the website itself is inadequate as a legal matter. As the *Williams* court explained:

> Even if Williams had, in fact, submitted an opt-in consent for a "Michael Morgan" at the web address identified by PillPack, Williams alleges, and PillPack does not appear to contest, that the website on which Mr. Morgan submitted a consent form did not list PillPack as one of its marketing partners. Thus Williams, like all proposed class

Opposition to Motion to Deny

members, received an avatar or prerecorded call from a third-party telemarketer who allegedly lacked express written consent to contact Williams as to PillPack's offerings and a critical question for the case is "whether consent for calls from the telemarketer (as opposed to the seller) is valid consent under the TCPA."

343 F.R.D. at 213.

Plaintiff is a typical representative of the other classes he seeks to represent, as well. He, like all class members in the Internal DNC Class, made a request that DaBella stop calling, in this case, through the filing of this lawsuit and subsequent communications. DaBella then called again on September 11, 2025, six months after being served. DaBella also sent goons to the Plaintiff's house during the pendency of this litigation in mid-October 2025, for what it claims were attempts to continue to solicit the Plaintiff in person. This further raises questions as to the adequacy of its internal do not contact procedures. And, this Court has already observed that "DaBella makes no argument that Mr. Weingrad did not, in effect, communicate with the company that he wanted the communications to stop" or that "DaBella was unaware of Mr. Weingrad's desires." *Weingrad*, 2026 WL 496609, at *7. It also cited to *Mantha's* grant of class certification on the same basis. *Id.* The question of whether DaBella maintained adequate internal DNC procedures and honored opt-out requests is the same for Plaintiff as for every other class member. DaBella's consent defense is irrelevant to this class, since consent to an initial contact does not excuse the failure to honor a subsequent opt-out request. *See Mantha*, 347 F.R.D. at 394 (rejecting typicality challenge on identical grounds).

The same is true of the Caller ID class. Plaintiff, like all class members, received calls from various Caller ID numbers utilized by DaBella. Those numbers either transmitted DaBella's name as the caller ID name or they did not, and DaBella's telephone carrier would have business records of the caller ID that was transmitted, as well as the dates on which any caller ID was changed, if at all. These systemic deficiencies in DaBella's calling infrastructure

Opposition to Motion to Deny

would apply uniformly to all calls placed by DaBella. Consent is entirely irrelevant to the Caller ID class, and this Court has already held that these claims are actionable under § 227(c)(5), so the Plaintiff's caller ID claims are not atypical, either.

5.   Defendant fails to show inadequacy.

DaBella's attacks on Plaintiff's adequacy fall into two categories, neither of which defeats class representation. To determine legal adequacy, we resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019). Only "confirmed examples of dishonesty" are relevant to a class representative's adequacy. *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010). DaBella points to no evidence that the Plaintiff has any conflict of interest with the class nor any reason why he would not prosecute the action vigorously on behalf of the class, and Mr. Weingrad vehemently denies the same. Nor, for that matter, does DaBella claim any confirmed example of dishonesty. Instead, all DaBella seems to take issue with are the Plaintiff's previous litigation conduct and his conduct on the February 7 call in which he investigated DaBella. Neither is availing, and the court should not "countenance vague aspersions otherwise." *Williams*, 343 F.R.D. at 213.

*The serial-litigant attack.* DaBella devotes several pages to Plaintiff's litigation history. (MDCC at 16-18, 20 n.5). But filing multiple TCPA lawsuits does not create a conflict with the class. "[N]othing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. . . . The district judge did not cite a single decision

24

Opposition to Motion to Deny

supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders.") (Easterbook, J.). The sole case DaBella cites in support of this argument is *Stoops v. Wells Fargo Bank*, but, as more fully argued in opposition to DaBella's motion for summary judgment, Stoops involved a plaintiff who purchased over 35 burner phones she kept in a shoebox specifically to manufacture TCPA litigation. 197 F. Supp. 3d at 788 (W.D. Pa. 2016). As explained in Plaintiff's opposition to the MSJ, Mr. Weingrad has done nothing of the sort. He uses one phone for personal, residential, and household purposes. Relatedly, nothing about Plaintiff's litigation history at all serves as a viable attack on Plaintiff's credibility. Credibility problems are insufficient to establish inadequacy for class certification purposes. Even if true, such conduct is insufficient to establish that Plaintiff is inadequate for purposes of class certification. *Aley*, 2024 WL 4007345, at *4; *Williams*, 343 F.R.D. at 213.

The call-conduct attack. DaBella next argues that Plaintiff provided false information during the February 7 call. (MDCC at 13, 19.) But Plaintiff's conduct on a single call does not even go to the merits of his individual claim, let alone his adequacy as a class representative. Whether Plaintiff said "yes" when asked if he was "Robert" is irrelevant to whether DaBella called him illegally as an initial matter, it does not change the fact that the calls were illegal to begin with, nor does it deprive him of standing. "Contrary to Defendant[']s argument that demonstrated that [Weingrad] did not find the calls unwanted by engaging with the call, the concrete injury lies in the fact that the class as a whole is comprised of individuals with phone numbers registered on the Registry but who were contacted anyway. This alone makes the contact unwanted, warranting a finding that every proposed class member has Article III standing." *Anthony*, 2025 WL 3101827, at *10; *Bradley v. DentalPlans.com*, 2024 WL 2865075, at *15 (D. Md. June 6, 2024) (holding consent cannot be provided during an illegal call nor

Opposition to Motion to Deny

immunize illegal conduct after the fact); *Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 3d 850, 858–59 (N.D. Ill. 2016) ("[E]ven plaintiffs who completed the survey, spoke with a CCL representative, and accepted defendants' vacation offer had a right to be free from unsolicited telemarketing calls, just as a homeowner has a right to be free from trespass even if she accepts a gift from the trespasser after he commits the offense.").

To the extent DaBella's adequacy argument is really a standing argument, the injury in TCPA cases is the unwanted telemarketing call itself. A plaintiff alleging a violation under the TCPA "need not allege any additional harm beyond the one Congress has identified.'" *Van Patten*, 847 F.3d at 1043. Moreover, Plaintiff engaged with the caller to ascertain who was calling him, precisely the kind of interaction that does not constitute consent. *Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *4 (E.D. Pa. Apr. 5, 2019) ("The fact that he "play[s] along" with telemarketing scripts to 'find out who [they] really are' is not as devious as Defendant suggests. A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it, and the content of the message can help prove that it was a solicitation.").

The Plaintiff's interests are fully aligned with those of his other classes, as well. As in *Mantha*, the Plaintiff made a do-not-call request through the filing of this lawsuit, DaBella was served, and DaBella called again (and sent goons to his house to allegedly continue selling him things) anyway. There is no conflict between Plaintiff's interests and those of class members who made their do-not-call requests through other means, such as at his door step, as in this case, Weingrad Dec. ¶ 19, 22, 23, responding "STOP" to a text message call, or calling back, also as in this case, Weingrad Dep. 45:3-9. The key question is whether DaBella honored those requests, not how they were communicated. *See Mantha*, 347 F.R.D. at 394 (rejecting typicality and

26

Opposition to Motion to Deny

adequacy challenges where named plaintiff communicated opt-out by filing lawsuit rather than by responding to text). So too with the Caller ID class. The Plaintiff received calls from DaBella that did not transmit compliant caller ID information, just as all class members did. The Caller ID claim is entirely independent of the consent defense and turns on DaBella's calling infrastructure, not on any individual class member's interactions with DaBella. There is no conflict between Plaintiff's interests and those of that class, either. For these reasons, Defendant has failed to show that the Plaintiff is inadequate to justify denial of certification.

6. <u>Defendant fails to show individual issues predominate.</u>

DaBella's predominance argument, like its commonality argument, rests on its purported consent defense. But, as with commonality, the mere presence of purported consent does not defeat predominance when the proof of consent (or its absence) is ascertainable through classwide, as opposed to individualized, sources of proof, such as when the consent concerns common website forms, common records, or common legal defects in the consent pathway. "Courts determine whether issues of individualized consent defeat commonality and predominance in . . . TCPA cases on a case-by-case basis after evaluating the specific evidence available to prove consent." *Physicians Healthsource, Inc. v. A–S Medication Sols., LLC*, 318 F.R.D. 712, 725 (N.D. Ill. 2016). An affirmative defense like consent does not defeat predominance unless the defendant demonstrates that the defense would require individualized proof as to each class member, and even then, the defendant must show that such individualized issues would overwhelm the common ones. *True Health*, 896 F.3d at. 931-32.

In *Anthony*, the court certified a National DNC class involving millions call recipients, holding that where all numbers came from the same commercial source and defendants pointed to no evidence of consent, consent was suitable for classwide resolution. In *Hossfeld*, the court

Opposition to Motion to Deny

denied summary judgment based on a purported consent defense because it held that the putative consent evidence was inadmissible hearsay. In *Thrower*, the court certified despite the defendant's argument that all recipients had consented through lead-generator websites, holding that the legal sufficiency of those forms was a classwide issue. In *Williams*, the court held that whether or not the website actually named the defendant was a classwide issues.

Further citations apart from those already cited by the Plaintiff abound. They all confirm that, if the defendant obtained the class members' consent for calls in a uniform manner, consent can be resolved on a class-wide basis. *See, e.g.*, *Wilkes v. CareSource Mgmt. Grp. Co.*, No. 4:16-CV-038 JD, 2016 WL 7179298, at *7 (N.D. Ind. Dec. 9, 2016) (observing that the "predominance requirement [is] met where the defendant collect[s] . . . phone numbers in a common manner" and reasoning that consent could be resolved on a class-wide basis if the plaintiffs provided their consent through standardized forms). In particular, *Toney v. Quality Res.* is particularly instructive as to why a court cannot deny certification based on an alleged lack of predominance at this stage. As in *Toney*, Defendant has not adduced any specific evidence to prove consent. Rather, it offers only vague assertions about consent without actual evidence. Individualized issues thus do not predominate. *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 587 (N.D. Ill. 2018). In *Toney*, defendant, as the Defendant here, did not proffer any *actual* evidence of consent; instead, it merely pointed to its website privacy policy and online order forms. *Id.* at 588. This is no different than DaBella claiming in its motion that it has "policies" on its website relating to consent and that it posts its "policies" in every cubicle. (MDCC at 16.) It is also no different from DaBella's claim that it is its "policy to obtain express consent from any lead on the National DNC before calling them." (MDCC at 19.) These claims are not evidence.

28

Opposition to Motion to Deny

Those facts underscore why affirmative denial of class certification at this stage is premature. "[The defendant] has not presented any specific evidence of consent by any class member and argues instead that the very specter of possible consent by any class member demands an individualized inquiry too burdensome for the [c]ourt to bear if it certifies [the plaintiff's] proposed class. Case law disapproves of [the defendant's] reasoning." *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 C 2513, 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018). "The mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)." *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016). "[A]llowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases wide latitude to inject frivolous issues to bolster or undermine a finding of predominance." *Id.* DaBella has done nothing more than assert in the abstract that consent issues exist. It has not identified a single class member who actually consented through any of its forms. It has not produced evidence that any class member's consent was validly obtained. This Court cannot allow "speculation and surmise to tip the decisional scales in a class certification ruling." *True Health*, 896 F.3d at 932 (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)).

To the contrary, DaBella's own evidence adduced thus far demonstrates the opposite: the *single* consent form it has produced, one purportedly for Plaintiff, was submitted under (1) a false name, (2) through a website whose owner has not responded to discovery, (3) from an IP address whose subscriber denied visiting the website, who (4) speculated that his phone was hacked. This is not evidence of consent. Rather, it is evidence of a systematic failure in DaBella's process for generating leads.

Opposition to Motion to Deny

DaBella's reliance on *Gene & Gene* and *Ginwright* is also misplaced. DaBella cites these cases for the proposition that consent issues defeat predominance. (MDCC at 27-30.) But *Gene & Gene* is a Fifth Circuit fax case whose holding turned on the fact that the fax numbers in the defendant's list were collected "over time and from a variety of sources" with no common process or indication from where they were originally obtained. *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008). Thus, "individual inquiries of the recipients are necessary to sort out which transmission was consented to and which was not," particularly as there was no evidence of a common legal or factual infirmity with the purported consent evidence. *Id.* Here, DaBella admits that it maintains a centralized system for obtaining telephone numbers and records the sources and consent information for each, which is precisely the uniform source that distinguishes this case. And *Ginwright* involved individualized *revocation* of consent, a genuinely person-specific inquiry, not a uniform deficiency in the consent *form* or the Defendant's *processes* for processing such requests themselves. Neither case is analogous.

DaBella quotes at length from *Davis v. Cap. One, N.A.*, No. 1:22-CV-00903 (AJT/IDD), 2023 WL 6964051 (E.D. Va. 2023), which collects *Wilson*, *Hunter*, *Sandoe*, *Ung*, *Shamblin*, and *Newhart* for the proposition that consent inquiries and wrong-number issues may defeat predominance. (MDCC at 22.) Those cases are all distinguishable for various reasons, including because in *none of them* did any of the plaintiffs identify uniform factual or legal deficiencies with the purported consent evidence that predominated over individualized issues. For example, some of the cases held that individualized issues predominated when there was oral consent, in-person consent, or complicated wrong number calls. For example, *Ung* involved auto loans where consent was obtained through hundreds of individual dealerships, which is a far cry from DaBella's online lead generation system through which it is able to attribute visit sources. And in

30

Opposition to Motion to Deny

*Shamblin*, consent to receive calls for a political campaign was obtained through such individualized and untracked ways as signups, campaign contributions, and petitions, which is nothing like DaBella's online lead generation system that it can readily attribute to a specific vendor and source. That is precisely the uniform process that the authorities Plaintiff cites hold is amenable to classwide proof. The *Davis* line of authority supports Plaintiff's position, not DaBella's, on the facts that DaBella itself has pled.

DaBella's other authorities, including *Connelly*, *Piotrowski*, *Sliwa*, *Brodsky*, *Hirsch*, and the cases it cites in its Footnote 7, are all variations on the same theme already addressed above. Like in *Gene & Gene*, *Connelly* involved genuinely dissimilar consent opportunities, with some consumers having consented in person, some by telephone, some through written agreements, with no unifying process for the court to evaluate classwide. *Piotrowski* was similar, although with customer revocations. *Silwa* dealt with oral consent. The other cases dealt with similar demonstrated evidentiary maladies. But here, all the leads flowed through DaBella's systems, and DaBella apparently has the ability to readily attribute each lead to its lead generator. That is a uniform process, not the dissimilar patchwork in *any* of the cases Defendant cites. Indeed, many cases *certifying* TCPA classes in the lead-generation context, including *Thrower*, *Aley*, *Mantha*, and *Williams*, all involved consent allegedly obtained through online forms, which courts have consistently treated as amenable to common proof precisely because the forms are uniform. Where, as here, the consent all flows through a uniform online process, the question of that process's legal adequacy is a common one for all class members.

Notably, DaBella's own authorities undercut its position. DaBella cites *Mohamed* and *Agne* as "contrast" cases showing when certification is proper. (MDCC at 30-31.) But these cases prove Plaintiff's point, not DaBella's. In *Mohamed*, predominance was met because the

31

Opposition to Motion to Deny

defendant could not identify "a single instance" where consent was obtained, just as DaBella has

not identified a single class member who actually consented here. And in *Agne*, predominance

was satisfied because all putative class members consented in the identical manner (a pizza

purchase) and the validity of consent could be resolved "in one stroke", just as the legality of

DaBella's websites can be resolved in one stroke. Under DaBella's own authorities, certification

is appropriate where consent comes from a uniform source, which is exactly the situation here.

DaBella's remaining predominance authorities are equally inapposite. DaBella cites

*Hanon* for the proposition that "class certification is inappropriate where a putative class

representative is subject to unique defenses which threaten to become the focus of the litigation."

(MDCC at 33.) It then claims that the Plaintiff's alleged business use of his number threatens to

become the focus of the litigation. It does not. As an initial matter, as more fully explained in the

Plaintiff's motion to dismiss, and as the Plaintiff himself explains in his Declaration, the

Plaintiff's number is *not* a business number and he does *not* hold it out to the world as a business

number. (Weingrad Dec.) On this point, the case of *Jackson v. Athena Bitcoin, Inc.*, is

instructive. There, Defendant claimed that the "issue of whether the [class] members have

residential phone numbers requires individualized inquiry." No. 4:24CV331-MW/MJF, 2025

WL 2237453, at *6 (N.D. Fla. June 18, 2025). The *Jackson* Court rejected that argument, citing

*Mantha*, and reasoning that "Defendant offers no evidence to support the idea that there are

business phone numbers within the class list. It also seems unlikely the class includes a

significant amount of business numbers because Plaintiff alleges . . . that many of the subject text

messages were sent to numbers provided by individual customers for verification purposes at

Bitcoin ATMs." *Id.* And even if DaBella's data included business numbers, its own data can be

Opposition to Motion to Deny

analyzed by an expert to "reliably exclude[] business phone numbers." *Id.* at *7. As explained above, the calls were all placed to sell residential home improvements, including windows.

Relatedly, DaBella argues Plaintiff's phone number is a "business line," relying on three *Mattson* decisions from this district. (MDCC at 10-11.) Those decisions are not controlling here for multiple reasons. First, they all involved the same plaintiff whose business use of the number was "hotly contested," and thus would "predominate the litigation." *E.g.*, *Mattson v. Rocket Mortg., LLC*, No. 3:18-CV-00989-YY, 2024 WL 4794710, at *2 (D. Or. Sept. 16, 2024). *Hanon* is instructive here. That case involved securities fraud where the named plaintiff, an insider trader, was trying to represent non-insiders. Mr. Mattson was like that, an individual with a business number seeking to represent residential class members. That is not this case here, since Mr. Weingrad does not use his number for business purposes and is seeking to represent persons just like him. This case is more in line with *Jackson's* reasoning, particularly as cell phones are presumptively residential. If anything, more discovery is needed into this issue. As explained in Plaintiff's opposition to the MSJ, Plaintiff has no connection to the business formerly associated with the number, and the number was simply reassigned to him. *See Connor v. ServiceQuick Inc.*, No. 1:24-CV-02286-CNS-NRN, 2025 WL 2855393, at *2 (D. Colo. Oct. 8, 2025) (rejecting business-line argument where number was reassigned to plaintiff but remained on Google as business listing and noting this was a factual dispute). And, like in *Jackson*, DaBella was calling about *home improvement services*, residential, consumer-oriented services.

Nor does DaBella's claimed EBR defense establish the existence of an individualized issue, either. As explained in Plaintiff's opposition to Defendant's motion for summary judgment, any EBR defense is time-based and likewise based on DaBella's own records. Thus, all an expert will be called to do is to analyze DaBella's own calling records to ascertain which

Opposition to Motion to Deny

calls were placed after the 90 day EBR period, and cross reference that list with lists of customers who had requested not to be called earlier than that period. The Fourth Circuit has already held that an EBR is subject to precisely this type of classwide-proof analysis. *Krakauer*, 925 F.3d at 655 ("[T]he existence of a business relationship between the solicitor and the recipient of the call, are likely to be proven by records kept by the defendant company."). The EBR question can be assessed from DaBella's own records, not individualized mini-trials.

Finally, Defendant's own rogue lead generator argument cuts in Plaintiff's favor. DaBella simultaneously asks to (prematurely) limit the class to leads from *the same website*, MDCC at 42, while at the *same time* claiming that the Plaintiff is allegedly subject to "individualized" issues traced to *that very same website*. (MDCC at 20, 29.) This is the same website that DaBella concedes it is facing four TCPA lawsuits over. (MDCC at 16 n.2.) DaBella assumes that the alleged website issues are unique to Plaintiff. They are not. If four people *sued*, how many more of the "hundreds of thousands of calls[] per month," MDCC at 16, were made to numbers obtained through that very same defective website? Discovery will answer that question, which is precisely why pre-discovery adjudication is inappropriate. Moreover, Richardson Marketing Group, the owner of searchrenovation.us, has not responded to discovery and cannot authenticate the consent records on which DaBella relies. *Hossfeld*, 726 F. Supp. 3d at 873. DaBella bears the burden of proving consent, yet its sole evidence traces to a non-cooperating lead generator whose records DaBella cannot authenticate, which will be a classwide evidentiary deficiency, not an individual one. This is a paradigmatic common issue that warrants class treatment.

Nor are there any individualized issues with respect to the other classes. This Court has already ruled the Plaintiff's internal DNC and caller ID claims were proper. They all have common questions susceptible to classwide, as opposed to individualized, resolution. Defendant

Opposition to Motion to Deny

has advanced no arguments for why the internal DNC claims or caller ID classes are subject to individualized issues, and this Court has already noted that "DaBella makes no argument that [it] was unaware of Mr. Weingrad's desires." *DaBella*, 2026 WL 496609, at *7. These are systemic questions about DaBella's procedures, records, and post-opt-out conduct, as well as the Caller ID information it sent, all provable from DaBella's (or its phone company's) own records.

    7.  <u>Defendant does not seriously dispute a class action is superior.</u>

Given the relatively small statutory damages per violation, individual lawsuits under the TCPA would be impractical for most class members. DaBella's argument that it would need to call "tens of thousands of witnesses at trial" (MDCC at 33) assumes the very individualized-inquiry premise that Plaintiff disputes, that *Krakauer* rejected, and simply shows why adjudication of these matters in a class action is clearly superior. A class action is the precise vehicle Congress contemplated to deal with the problem of high volume, low dollar litigation, and it is for this reason that both the Ninth and Fourth Circuit have held that TCPA class actions easily satisfy superiority. *Krakauer*, 925 F.3d at 655; *Wakefield*, 51 F.4th at 1120.

## V.   CONCLUSION

DaBella's bid to prematurely deny certification ought to be denied, class discovery proceed in earnest, and a jury trial scheduled posthaste.

RESPECTFULLY SUBMITTED AND DATED this March 23, 2026.

> s/Andrew Roman Perrong
> Andrew Roman Perrong, OSB No. 243320
> a@perronglaw.com
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> 215-225-5529
> Lead Attorney for Plaintiff and the Proposed Class

35

Opposition to Motion to Deny

**CERTIFICATE OF WORD COUNT**

This brief complies with the applicable page-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains exactly 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: March 23, 2026.

> /s/ Andrew Roman Perrong
> Andrew Roman Perrong, Esq.

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: March 23, 2026                              /s/ Andrew Roman Perrong
                                                   Andrew Roman Perrong, Esq.

36

Opposition to Motion to Deny