Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
SNELL & WILMER L.L.P.
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
Telephone:  503.624.6800
Facsimile:  503.624.6888
*Attorney for Defendant, DABELLA EXTERIORS, LLC*

Diane J. Zelmer, Esq. (pro hac vice)
FL Bar No. 27251
BERENSON LLP
4495 Military Trail, Suite 203
Jupiter, Florida 33458
Telephone: 561-429-4496
Email: djz@berensonllp.com
*Attorney for Defendant, DABELLA EXTERIORS, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated, | Case No. 3:25-CV-00396-SI |
| Plaintiff, | |
| vs. | REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S FIRST CLAIM |
| DABELLA EXTERIORS LLC, | |
| Defendant. | |

**TABLE OF CONTENTS**

Contents

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iv

I.    EVIDENTIARY OBJECTIONS AND FACTUAL CONSIDERATIONS ........................... 1

  A.    *Plaintiff Failed to Comply with Federal Rule 56(c)(1) and Local Rule 56-1* .................... 1

  B.    *Plaintiff's DNC Registry Record Remains Unauthenticated and Lacks Evidence to Demonstrate that Plaintiff's Telephone Number was on the DNC Registry on the Dates that Defendant Called him* ................................................................................................ 1

  C.    *The Court Should Consider Defendant's Facts Undisputed Unless Specifically Noted* .... 2

  D.    *Additional Factual Discovery is Unnecessary for Determination of the Motion* .............. 2

  E.    *Defendant Submitted Sufficient Evidence to Prove Consent* ............................................. 3

MEMORANDUM ................................................................................................................ 4

II.    SUMMARY OF ARGUMENT .................................................................................. 4

III.    ARGUMENT ......................................................................................................... 5

  A.    PLAINTIFF DOES NOT HAVE STANDING BECAUSE HE DID NOT REGISTER HIS NUMBER ON THE DNC. ............................................................................................................. 5

  i.    Plaintiff Failed to Submit Evidence Sufficient to Show that His Telephone Number was Registered on the DNC Registry at the Time that Defendant Called Him ................................ 5

  ii.    Plaintiff's Number was Required to be Removed from the DNC Registry Upon Disconnection and Reassignment ........................................................................................... 8

  iii.    Plaintiff Failed to Personally Register His Number on the DNC Registry ...................... 10

  B.    PLAINTIFF'S TELEPHONE NUMBER WAS HELD OUT TO THE WORLD AS A BUSINESS NUMBER. .......................................................................................................................... 11

  C.    PLAINTIFF FAILED TO SUBMIT EVIDENCE OF MORE THAN ONE CALL IN VIOLATION OF THE DNC REGISTRY IN A TWELVE MONTH PERIOD ...................................................... 13

i.    Plaintiff Failed to Submit Evidence to Dispute Consent ..................................................... 13

ii.    The Text Messages and September 11 Call Should Not Be Considered as a Violation of the DNC Registry ............................................................................................................. 15

D.    PLAINTIFF DOES NOT HAVE ARTICLE III STANDING. .......................................................... 17

IV.    CONCLUSION........................................................................................................................... 19

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - iii

## TABLE OF AUTHORITIES

**Cases**

*Binetti v Colorado Technical University, Inc.*, No. 6:25-CV-01049-AP, 2026 WL 812365 (D. Or. Jan. 21, 2026) (citations omitted) .......................................................................................... 17

*Chennette v. Porch.com, Inc.*, No. 1:20-CV-00201-SRB, 2020 WL 9078129 (D. Idaho Nov. 2, 2020) .................................................................................................................................. 12

*Connor v. Servicequick Inc.*, No. 1:24-CV-02286-CNS-NRN, 2025 WL 2855393 (D. Colo. Oct. 8, 2025) .............................................................................................................................. 13

*Garvey v. Kellar Williams Realty, Inc.*, No. 2:23-CV-00920-APG-DJA, 2024 WL 1857216 (D. Nev. Apr. 26, 2024) ....................................................................................................... 16

*Gillam v. Reliance First Cap., LLC,* No. 21-4774, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ............................................................................................................................................ 17

*Heinemann v. Satterberg*, 731 F.3d 914 (9th Cir. 2013) .................................................................. 2

*Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852 (N.D. Ill. 2024) ................................................ 3

*Hughes v. Pac. Univ.*, No. 3:21-CV-991-SI, 2023 WL 7497106 (D. Or. Nov. 13, 2023) .............. 1

*Johansen v. Efinancial LLC*, No. 220CV01351RAJBAT, 2021 WL 7161969 (W.D. Wash. June 11, 2021), report and recommendation adopted, No. 2:20-CV-01351-DGE, 2022 WL 168170 (W.D. Wash. Jan. 18, 2022) ............................................................................................... 4, 14

*Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17-cv-587, 2018 WL 3933472 (S.D. Ohio Aug. 16, 2018) .............................................................................................................................. 15

*Leyse v. Bank of Am. Nat'l Asss'n*, 804 F.2d 316 (3d Cir. 2015) ................................................. 18

*Morris v. Copart*, No. 4:15-CV-724, 2016 WL 6608874 (E.D. Tex. Nov. 9, 2016) ...................... 7

*Olney v. Job.com, Inc.*, No. 1:12-CV-01724-LJO, 2014 WL 1747674 (E.D. Cal. May 1, 2014) .. 3

*Orr v. Bank of Am.*, NT & SA, 285 F.3d 764 (9th Cir. 2002) ....................................................... 1

*Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-cv-15, 2022 WL 2713278 (N.D. Iowa June 9, 2022) ............................................................................................................................ 11

*Selby v. Ocwen Loan Servicing, LLC*, No. 3:17-CV-973-CAB-BLM, 2017 WL 5495095 (S.D. Cal. Nov. 16, 2017) .............................................................................................................. 18

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - iv

*Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485 (E.D. Pa. Mar. 14, 2025)............................................................................................................................ 12

*Shelton v. Target Advance LLC*, No. CV 18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019)18

*Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937 (C.D. Cal. 2015) ............. 13

*Tomlinson v. City of Portland*, No. 3:23-CV-188-SI, 2026 WL 926144 (D. Or. Apr. 6, 2026)..... 2

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017)................................... 18

*Weingrad v. Top Healthcare Options*, 2024 WL 4228149 (E.D. Pa Sept. 17, 2024)................... 17

**Rules**

Federal Rule 56(c)(1)................................................................................................................. 1

Local Rule 56-1......................................................................................................................... 1

**Statutes**

47 C.F.R. § 64.1200(c)(2)......................................................................................................... 11

## I.    EVIDENTIARY OBJECTIONS AND FACTUAL CONSIDERATIONS

### A.    *Plaintiff Failed to Comply with Federal Rule 56(c)(1) and Local Rule 56-1*

Local Rule 56-1 provides that "[a] party's factual positions must be supported by citations, by page and line as appropriate, to the particular parts of materials in the record."  Throughout the motion, Plaintiff makes certain references to factual statements, however, most of the factual positions are not supported by any pinpoint citations.  As such, the Court "need not paw over the files without assistance from the parties." *Hughes v. Pac. Univ.*, No. 3:21-CV-991-SI, 2023 WL 7497106, at *4 (D. Or. Nov. 13, 2023) (Simon, J. Michael) (citing *Orr v. Bank of Am.*, NT & SA, 285 F.3d 764, 775 (9th Cir. 2002); *see also* LR 56-1(a) ("A party's factual positions must be supported by citations, by page and line as appropriate, to the particular parts of materials in the record.")). Thus, the Court may strike any unsupported factual statements in the Opposition.

### B.    *Plaintiff's DNC Registry Record Remains Unauthenticated and Lacks Evidence to Demonstrate that Plaintiff's Telephone Number was on the DNC Registry on the Dates that Defendant Called him*

At the deposition of Plaintiff, Defendant's counsel specifically asked Plaintiff questions concerning the DNC registration email produced during discovery.  [ECF No. 35, Zelmer Decl., Ex. 1 (Weingrad depo 33:20-36:16, Ex. 6)].  The DNC registration email fails to provide the date on which the DNC registration was verified. *Id*.  The undersigned received objections from Plaintiff's counsel to this inquiry; Plaintiff's counsel advised that he would provide the date of obtaining the document, but no subsequent information was received. *Id*.  Further, in opposition to Plaintiff's motion for summary judgment, Plaintiff makes no attempt to authenticate this document either personally or through his counsel who apparently obtained the document.  [ECF Nos. 53-54].  Moreover, in his Declaration Plaintiff states that his number *is* on the DNC Registry; he does not state that his number *was* on the DNC Registry at the time that Defendant made calls to him.  [ECF No. 54, ¶ 4].  Plaintiff further does not state whether or not his number was ever

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR
SUMMARY JUDGMENT - 1

removed from the DNC Registry upon disconnection and reassignment.   [ECF No. 54].

Accordingly, since the DNC Registry email marked as Exhibit 6 to the deposition of Plaintiff is

not authenticated, this Court should disregard it for purposes of any opposition to Defendant's

partial motion for summary judgment.

C.   *The Court Should Consider Defendant's Facts Undisputed Unless Specifically Noted*

An "opposing party's failure to respond to a fact asserted in the motion permits a court to

consider the fact undisputed for the purposes of the motion," *Heinemann v. Satterberg*, 731 F.3d

914, 917 (9th Cir. 2013) (quotations omitted).   Thus, the Court should consider Defendants'

statement of facts in its Motion to be undisputed unless otherwise noted.   *Tomlinson v. City of

Portland*, No. 3:23-CV-188-SI, 2026 WL 926144, at *2 (D. Or. Apr. 6, 2026) (Simon, J. Michael).

D.   *Additional Factual Discovery is Unnecessary for Determination of the Motion*

It is unnecessary for additional discovery to be pursued for determination of the legal issues

presented in Defendant's Motion.   This is especially true, where as here, Plaintiff's subpoena to

SBBNet, Inc. was issued back in July 2025, and Plaintiff's last and only email communication

attached to the Declaration of Andrew Perrong was on July 9, 2025, and no further evidence of

any efforts to obtain discovery from that subpoena are attached.   [ECF No. 53, ¶¶ 11-12; ECF No.

53-1].

Further, Plaintiff states that he requires evidence as to whether "DaBella subscribes to or

uses the RND." [ECF No. 53, ¶¶ 7-8].   However, Defendant never submitted evidence in support

of its motion that it *used* the RND, and thus, that is not an issue before this Court.   Defendant's

arguments centered around the reasoning that *Rombough* decision should be upheld under the

circumstances of this case because (1) Plaintiff is relying on a DNC registration of a prior owner;

(2) Defendant had a consent form to contact the prior owner; (3) Plaintiff's number was

disconnected and reassigned; (4) Plaintiff never himself registered the telephone number on the

DNC, and (5) the RND does not and would never show the reassignment; therefore, it would be impossible for a company to protect itself against a violation of the TCPA. To the extent that Plaintiff seeks to benefit from the prior registration, then he should also be subject to the consent exemption of the prior owner. The unfair circumstances are further exacerbated by the fact that Plaintiff's number is held out to the world as a business number, while he continues to file multiple class actions using this telephone number. A company should not be held responsible for strict liability under the TCPA when faced with an impossibility to avoid liability.

Moreover, further evidence of consent for the alleged class members [ECF No. 53, ¶ 14] is entirely unrelated and irrelevant to this Motion, which asks the Court to grant summary judgment against the Plaintiff himself, which, in turn, eliminates any representative action.

E. *Defendant Submitted Sufficient Evidence to Prove Consent*

Plaintiff argues based on *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 874 (N.D. Ill. 2024) that Defendant's evidence of consent is hearsay. However, *Hossfeld* is entirely distinguishable. There, Allstate could not testify to the source of the spreadsheet, and there were multiple levels of hearsay because the recipient indicated that the spreadsheet came from Atlantic and then KP Leads, and the underlying email was unauthenticated and there was no action taken to confirm the source of the spreadsheet. *Id*. To the contrary, here, Defendant relies on the lead data that it obtained that identifies the website address and webform[1] completed that is captured in realtime on a trustedform and issued a "Certificate of Authenticity." [ECF No. 34, Decl. McMillan, ¶¶ 3-6, Ex. A]. The certificate identifies the date, time, amount of time on the page, IP address, and captures the screen shot of the actual inputs of the name, telephone number, and

---

[1] An individual may indirectly provide a third party with express consent to be called under TCPA. *Olney v. Job.com, Inc.*, No. 1:12-CV-01724-LJO, 2014 WL 1747674, at *6 (E.D. Cal. May 1, 2014).

consent language. *Id*. It also includes a link to the playback of the webform the live inputs. *Id*. This type of verification is not comparable to a spreadsheet that was sent via an unauthenticated email.[2] Defendant also stated that it has a "policy to obtain consent from every number before it calls any person on the National Do Not call registry." [ECF No. 34, Decl. McMillan, ¶ 15].

**MEMORANDUM**

## II.    SUMMARY OF ARGUMENT

Defendant's motion for partial summary judgment should be granted. First and foremost, Plaintiff failed to submit any evidence in opposition that his telephone number was on the DNC Registry ***at the time that Defendant made the calls to him***. This is fatal to Plaintiff's DNC Registry claim.

Second, even if Plaintiff's telephone number was registered on the DNC Registry, Plaintiff cannot rely on that DNC registration. Plaintiff's telephone number undisputedly was disconnected and reassigned, and thus, the statute ***mandates*** removal from the DNC Registry. Further, Plaintiff himself never personally registered the telephone number on the DNC Registry, and thus, has no standing under the TCPA.

Finally, Plaintiff's actions in verifying the consent information on the first call and engaging in a conversation with Defendant, including by making an appointment, constituted consent for Defendant to call him, and thus, any calls thereafter would not have been in violation of the DNC Registry. To the extent that Plaintiff contends that the lawsuit constituted a request to stop calling him, then the violation that Plaintiff alleges for the September 11 call falls under his

---

[2] Moreover, the evidence in this case demonstrates that Plaintiff *confirmed* consent in his first phone call with Defendant. *Johansen v. Efinancial LLC*, No. 220CV01351RAJBAT, 2021 WL 7161969, at *7 (W.D. Wash. June 11, 2021), report and recommendation adopted, No. 2:20-CV-01351-DGE, 2022 WL 168170 (W.D. Wash. Jan. 18, 2022) (holding that act of "playing" along with detailed responses after vendor has already identified itself constitutes consent).

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 4

Internal DNC Registry class, and not the DNC Registry class. Further, the failure of Plaintiff to provide proof that his number was on the DNC Registry at the time of the September 11 call is fatal. Therefore, Plaintiff did not receive more than one call in violation of the DNC Registry.

Finally, although Plaintiff alleges that he does not use his number as a business number, Plaintiff has entirely failed to show that he made any attempt to have his number removed from the websites, all while Plaintiff actively pursues litigation against multiple entities regarding alleged TCPA violations with calling his number. Plaintiff is not entitled to have his cake and eat it too – allege that he is entitled to the protection of a DNC Registry used by a prior registrant who used the number as a business, and then disregard the very exemptions to the DNC created by that prior registrant. To hold otherwise, would place a creative legal tool in the hands of a serial litigant to create TCPA liability against companies who have no way to defend against it. This does not strike the balance that Congress intended.

For the foregoing reasons, the Court should enter summary judgment in favor of Defendant on Count I, and hold that Plaintiff's individual claims are barred.

### III.    ARGUMENT

A. **PLAINTIFF DOES NOT HAVE STANDING BECAUSE HE DID NOT REGISTER HIS NUMBER ON THE DNC.**

      **i. Plaintiff Failed to Submit Evidence Sufficient to Show that His Telephone Number was Registered on the DNC Registry at the Time that Defendant Called Him**

When the non-moving party has the burden at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Instead, the moving party's burden is met by pointing out there is an absence of evidence supporting the non-moving party's case. *Id*. The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR
SUMMARY JUDGMENT - 5

resolved at trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Asics Am. Corp. v. Lutte Licensing Grp. LLC*, No. SACV131993JGBJPRX, 2014 WL 10538912, at \*3 (C.D. Cal. Apr. 28, 2014).

In its Motion, Defendant argued that it was "undisputed that Plaintiff did not register his telephone number on the DNC." [ECF No. 31, p. 19]. Defendant stated that the "one and only document upon which Plaintiff relies to verify the DNC registration does not indicate the date." *Id*. at 19-20 (citing [Zelmer Decl., Ex. 1 (Weingrad depo 33:20-36:16, Ex. 6)]). Defendant further stated that "there is no proof that Plaintiff's number was registered on the DNC on February 7. 2025." *Id*. at 14.

In response, Plaintiff asserts in his declaration that his telephone number "***is*** on the National Do-Not-Call Registry." [ECF No. 54, ¶¶ 4, 37] (e.s.). However, notably, Plaintiff makes no statement that his telephone number was on the National Do-Not-Call Registry ***at the time that Defendant called him***. Nor does Plaintiff attach any document to his declaration to support the assertion that his telephone number was on the DNC Registry at the time that he called him. Although Plaintiff's counsel advised that he would provide the date of obtaining the document from the DNC Registry produced in discovery, ***no subsequent information has been received as of this date, and Plaintiff certainly did not submit direct evidence on this issue in his Opposition***. [ECF No. 54].[3] Plaintiff's counsel, who stated that he collected the DNC registry document, does not make any effort in his Declaration to authenticate it or explain how or when he obtained the document reflecting a DNC Registry for Plaintiff's telephone number. [ECF No. 53]. Indeed, the DNC registry email produced in this matter remains unauthenticated as Plaintiff could not testify

---

[3] This demonstrates the incredible imbalance of Plaintiff's requests in demanding classwide discovery, where as here, Plaintiff did not even produce evidence of the DNC Registry that would show he was registered ***on the date(s) that Defendant called him***.

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 6

to it at his deposition.  [Zelmer Decl., Ex. 1 (Weingrad depo 33:20-36:16, Ex. 6)].  The failure to provide sufficient evidence to demonstrate that Plaintiff had his telephone number registered on the DNC Registry *at the time that Defendant called him* alone is dispositive at the summary judgment stage as the Court may deem the Defendant's facts as undisputed.  *Tomlinson v. City of Portland*, No. 3:23-CV-188-SI, 2026 WL 926144, at *2 (D. Or. Apr. 6, 2026) (J. Michael Simon).

In his declaration, Plaintiff also states that he attempted to re-register his number, but was unable to do so.  He does not state the date when this occurred, nor does he attach the "message telling [him] that the number was already registered."  [ECF No. 54, ¶ 5].  Moreover, at his deposition, he was unable to state when he attempted to re-register his phone number.  [Zelmer Decl., Ex. 1 (Weingrad depo 36:1-16)].  Given the clear *mandate* requiring Congress to remove the telephone number from the DNC Registry upon disconnection and reassignment (see, *infra* Part III.B.), it is plausible that Plaintiff's number was removed from the DNC Registry at some point in time, and not registered at the time that Defendant placed one or more of the calls to him.  Plaintiff does not state in his Declaration whether or not his number was ever removed from the DNC Registry.  [ECF No. 54].

Regardless, Plaintiff's self-serving testimony about the substance of his DNC Registry should be discarded since he failed to produce evidence showing that his DNC Registry was in effect on the dates that Defendant called him.  *Morris v. Copart*, No. 4:15-CV-724, 2016 WL 6608874, at *3 (E.D. Tex. Nov. 9, 2016) ("[t]he law is very clear: evidence that was not properly produced during discovery cannot be used to support or oppose summary judgment.").  Further, Plaintiff is now barred from submitting evidence that his number was on the DNC Registry at the time that Defendant called him.  *BHI Energy I Power Servs., LLC v. KVP Energy Servs., LLC*, No. 3:22-CV-1981-L-BN, 2024 WL 3988828, at *8 (N.D. Tex. Aug. 29, 2024), *aff'd sub nom.*

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 7

*BHI Energy I Power Servs., L.L.C. v. KVP Holdings, L.L.C.*, No. 24-10899, 2025 WL 1249899 (5th Cir. Apr. 30, 2025) (prohibited introduction of new evidence where Plaintiff was obligated to provide such evidence in its Rule 26(a) disclosures or in response to discovery requests). Thus, for this reason alone summary judgment should be granted in Defendant's favor.

> ### ii. Plaintiff's Number was Required to be Removed from the DNC Registry Upon Disconnection and Reassignment

Plaintiff cites to the Do-Not-Call Improvement Act of 2007, arguing that his number "shall not" be removed from such registry. [ECF No. 52, p. 11]. However, this very same citation states that it shall not be removed "***except*** as provided for in subsection (b)" – and that exception contained in subpart (b) of Section 5, provides:

> (b) REMOVAL OF INVALID, DISCONNECTED, AND REASSIGNED TELEPHONE NUMBERS.—The Federal Trade Commission shall periodically check telephone numbers registered on the national 'do-not-call' registry against national or other appropriate databases **and *shall* remove from such registry those telephone numbers that have been disconnected and reassigned**. Nothing in this section prohibits the Federal Trade Commission from removing invalid telephone numbers from the registry at any time.".

DO–NOT–CALL IMPROVEMENT ACT OF 2007, PL 110–187, February 15, 2008, 122 Stat 633, Sec. 5(b) (e.s.). The express language of the statute ***mandates*** removal by use of the word "***shall.***" **Therefore, it is <u>not</u> an option for the FTC to allow disconnected and reassigned numbers to remain on the DNC Registry.** The legislative history supports this position:

> This bill corrects this and would make numbers on the registry permanent, but at the same time require the Federal Trade Commission to keep the list accurate by simply **removing invalid and disconnected phone numbers**. As further assurance of this, the Federal Trade Commission must study and report to Congress on the accuracy of these numbers. **I think that's important**.

153 Cong. Rec. H15267-01, 153 Cong. Rec. H15267-01, H15267, 2007 WL 4325409 (Rep. Stearns) (e.s.) Indeed, the bill was amended specifically to require removal, as follows:

> On October 30 the bill **was amended at the full committee markup to require the FTC to periodically scrub the do-not-call registry to remove phone**

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 8

**numbers that have been disconnected or reassigned** and further requires the commission to report to Congress on the accuracy of the registry. As such, H.R. 3541 ensures that the do-not-call list is fair and accurate and that only those American consumers who do not wish to be called by telemarketers are on the registry.

153 Cong. Rec. H15267-01, 153 Cong. Rec. H15267-01, H15267, 2007 WL 4325409 (Rep. Butterfield).

To that end, H.R. 3541 will eliminate the automatic removal of telephone numbers registered on the Registry, subject to certain common sense exceptions, such as at the request of the individual to whom the number is assigned. To maintain the accuracy of the Registry, H.R. 3541 directs the FTC to " periodically" check telephone numbers on the Registry against national or other appropriate databases, **and remove from such Registry telephone numbers that have been disconnected and reassigned**. The Committee intends for the FTC or any subcontractor to check these numbers at least once a month and preferably more frequently as technology allows. Nothing in this bill prohibits the FTC from removing invalid telephone numbers from the Registry at any time. The Committee expects the FTC to work with industry and technology experts to ensure the accuracy of the Registry.

153 Cong. Rec. H15267-01, 153 Cong. Rec. H15267-01, H15269, 2007 WL 4325409 (Rep. Dingell) (e.s.).

At the same time, we direct the FTC **to keep the list accurate** by periodically **"scrubbing" the list of invalid and disconnected numbers**. I think this strikes the **right balance for consumers and the industry**.

153 Cong. Rec. E2553-02, 153 Cong. Rec. E2553-02, E2553, 2007 WL 4335102 (e.s.) (Hon. Barton).

Indeed, the congressional record shows that the original bill was amended on October 30, 2007 to *require* scrubbing and removal of disconnected and invalid numbers. It was important to keep the list accurate, *and create the right balance for consumers and the industry*. The black letter express *mandate* of Congress that *required* removal of Plaintiff's number from the DNC Registry cannot be ignored.

The imbalance of failing to remove Plaintiff's number is clearly seen by the circumstances

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 9

here. Plaintiff would like to have his cake and eat it too – be protected by the DNC Registry – and yet not be subject to prior exemptions created under that DNC registration by the prior owner – not to mention the ***enormous*** financial gain presented to Plaintiff in litigating and suing multiple company targets created under this factual scenario. Indeed, Plaintiff has filed eleven (11) other TCPA lawsuits utilizing this particular telephone number.[4]

There is no dispute that Plaintiff's number was ***disconnected***[5] from the prior owner, Joe Arnold, and ***reassigned*** to Leon Weingrad. [ECF No. 54, ¶¶ 15, 10] (Plaintiff acknowledges that Joe Arnold is the previous subscriber, and further asserts that he obtained the number in July of 2024). Thus, the statute ***requires*** by the use of "shall" that Plaintiff's number should have been removed from the DNC Registry.

### iii. <u>Plaintiff Failed to Personally Register His Number on the DNC Registry</u>

There is no dispute that Plaintiff did not personally register his telephone number on the National DNC. As seen by the Congressional mandate in 122 Stat 633, Sec. 5(b), although telephone numbers are to remain indefinitely for the user ***who*** subscribed on the DNC Registry, telephone numbers that are disconnected and reassigned are ***required*** to be removed. Thus, the *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-cv-15, 2022 WL 2713278 at *2 (N.D.

---

[4] *Weingrad v. Yelp Inc.* (M.D. Pa. 24-cv-01330) (voluntary dismissal without prejudice); *Weingrad v. SmartMatch Insurance Agency, LLC* (M.D. Pa. 1:24-cv-02067) (voluntary dismissal with prejudice); *Weingrad v. Quotewizard.com, LLC* (M.D. Pa. 1:25-cv- 00002) (voluntary dismissal individual claims with prejudice); *Weingrad v. BuyerLink Inc. et al* (D. Or. 3:24-cv-02114) (voluntary dismissal with prejudice); *Weingrad v. CHW Group, Inc.* (D. Or. 3:25-cv-00370) (dismissal of individual claims with prejudice); *Weingrad v. LifeWave, Inc.* (D. Or. 3:25-cv-00752); *Weingrad v. Exact Care Pharmacy, LLC* (E.D. Pa. 2:25-cv-01843) (order of dismissal with prejudice upon settlement); *Weingrad v. Feel the World, Inc.* (D. Or. 3:26-cv-00001-SB) (pending); *Weingrad v Denny's, Inc..* (D. Or. 3:26-cv-00342-JR) (pending); *Weingrad v. Hammer Contractors, LLC* (D. Or. 3:26-cv-00708-AR) (pending).

[5] If the telephone number was never disconnected, then essentially Joseph Arnold would still be the subscriber.

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 10

Iowa June 9, 2022) decision was correctly decided.  Any other Court that has not followed *Rombough* did not consider the express **mandate** of Congress to remove the number from the DNC Registry upon removal and reassignment, nor did it consider the statutory regulatory text that prohibits telephone solicitations to residential subscribers **who** have personally registered their number on the DNC Registry.  47 C.F.R. § 64.1200(c)(2).

Plaintiff requests the Court to ignore the express language of the regulation that clearly states that "a person or entity cannot initiate a telephone solicitation" to a "residential telephone subscriber **who** has registered his or her telephone number on the national do-not-call registry. . . ."  47 C.F.R. § 64.1200(c)(2) (e.s.).  However, the Court cannot ignore this express language, nor can it re-write the regulation.  Plaintiff's reliance on 16 C.F.R. 310.4(B)(1)(III)(b) is misplaced as Plaintiff filed suit alleging violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c), not under 16 C.F.R. 310.4(B)(1)(III)(b), which is a regulation on abusive telemarketing practices.  Thus, respectfully, Defendant requests the Court to follow *Rombough* under the facts of this case.

B. **PLAINTIFF'S TELEPHONE NUMBER WAS HELD OUT TO THE WORLD AS A BUSINESS NUMBER.**

Plaintiff argues that since Plaintiff "himself" has no connection with the business on the websites, that his number cannot be considered a business number.  However, in *Chenette*, the District Court of Idaho considered whether the Court should consider Plaintiff's number a business number.  There, the Court, on motion to reconsider, re-emphasized its decision that Plaintiff's number was a business number when it was listed on several business websites, as follows:

> Plaintiffs do not allege in their complaint that their numbers were accidently placed on these business listing websites, only that they could not control Defendants obtaining such information. **The fact that Plaintiffs did not directly provide their contact information to Defendants does not impact this Court's finding that the numbers at issue, which were held out as business numbers on numerous online business directory websites, are business numbers**.

*Chennette v. Porch.com, Inc.*, No. 1:20-CV-00201-SRB, 2020 WL 9078129, at *3 (D. Idaho Nov.

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 11

2, 2020) (e.s.).  The same is true here.  The fact that Plaintiff does not control the website, does not impact the status of Plaintiff's number as a business number.  Indeed, although Plaintiff states that he did not authorize the business internet listings [ECF No. 54, ¶ 29], Plaintiff does not indicate that he requested the removal of his number from those websites either despite using his telephone number since July 2024 [ECF No. 54, ¶ 10], and the telephone numbers continue to be held out to the world as a business number simultaneously while Plaintiff continues to file multiple TCPA actions utilizing this telephone number.  *See fn*. 2.  If Plaintiff did not want to be called as he states in his Declaration [ECF No. 54, ¶ 38], then Plaintiff would have taken some action to remove his number from the business websites.

Plaintiff relies on *Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *4 (E.D. Pa. Mar. 14, 2025) for the proposition that one who ceases business use of his phone is thereafter still entitled to protections under the DNC Registry.  Notably, in *Shelton*, the number was never disconnected and reassigned, as it was here.  *Id*.  The Court acknowledged that "registrations" are required to "be honored indefinitely" but expressly stated that the FTC does remove numbers from the DNC Registry when "disconnected and reassigned."  *Id.*  If, as here, Shelton's number had been "disconnected and reassigned" then it would no longer have been included on the DNC Registry, and the outcome of *Shelton* under the same facts here would have been much different.  Thus, the specific facts of this case under *Shelton* **_support_** Defendant's position that Plaintiff's number (1) was no longer on the DNC Registry upon disconnection and reassignment, and (2) is a business number.  Plaintiff wants to have his cake and eat it too – he wants to rely on a prior DNC Registry, but deny any exemptions created by the prior registrant.  This is exactly why Congress **_required_** removal of any prior DNC registration upon disconnection and reassignment.  *See, supra* Part III.A.ii.  To hold otherwise, would place an artful legal tool for

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 12

a serial litigant to pursue TCPA claims against companies when it is impossible to technically avoid such claims.

Plaintiff's reliance on *Conner v. ServiceQuick, Inc.* and *Thomas & Dun & Bradstreet Credibility Corp.* are misplaced as both cases were considered in the motion to dismiss stage when the Court had to construe allegations in Plaintiff's favor, and did not rely on any factual information. *Connor v. Servicequick Inc.*, No. 1:24-CV-02286-CNS-NRN, 2025 WL 2855393, at *2 (D. Colo. Oct. 8, 2025) (denying motion to dismiss, noting that Defendant raised a factual issue by arguing that the number was listed on Google, which was not appropriate at the motion to dismiss stage); *Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937, 943 (C.D. Cal. 2015) (at this stage of the proceedings, the Court must construe the allegations in Plaintiff's favor). In contrast, here, the undisputed evidence demonstrates that Plaintiff's telephone number is being held out to the world as a business number on several websites.

**C. PLAINTIFF FAILED TO SUBMIT EVIDENCE OF MORE THAN ONE CALL IN VIOLATION OF THE DNC REGISTRY IN A TWELVE MONTH PERIOD**

### i. Plaintiff Failed to Submit Evidence to Dispute Consent

In its Motion, Defendant argued that Plaintiff's false affirmation excused subsequent calls because he acknowledged consent and interest in Defendant's products and made an appointment. [ECF No. 31, pp. 30-31]. In response Plaintiff argues that "[c]onsent cannot be obtained on and during the course of an illegal call . . ." and that "Plaintiff engaged DaBella's representative only to ascertain who was calling him illegally, precisely the kind of investigation that does not constitute consent." [ECF No. 52, p. 29]. Plaintiff also attempts to distinguish between an 18 month and a 90 day established business relationship. [ECF No. 52, p. 35].

Regardless, all those arguments are trumped by the evidence in this matter that Plaintiff provided his express consent to call. This case is very similar to *Johansen,* 2021 WL 7161969, at

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 13

*7. Here, it is undisputed that Defendant received Plaintiff's telephone number from a submission on the website https://searchrenovation.us. [ECF No. 34, McMillan Decl., ¶ 6, Ex. A]. The notice on the website provided "express written consent to receive marketing communications regarding Solar and Home services" by……. "one or more of its Marketing Partners at the phone number and e-mail address provided by you, including wireless numbers, if applicable, even if you have previously registered the provided number on the Do Not Call Registry." *Id*.

Here, as in *Johansen*, Plaintiff argues that he "spoke with the DaBella agent" "to ascertain who was calling me illegally and for no other reason." [ECF No. 54, ¶ 17]. However, "the transcript reflects that Plaintiff had no need to investigate source of the caller because" the DaBella "representative immediately identified himself as calling" from DaBella *twice*. *Id*.; [Zelmer Decl., Ex. 2, (Weingrad depo, Ex. 7, 43:2-3, 44:3-4)]. Plaintiff again asks for the company to identify itself, and DaBella provides that information. [Zelmer Decl., Ex. 2, (Weingrad depo, Ex. 7, 44:21-25)]. If Plaintiff did not submit the webform, "he could have said so at that point and ended the call." *Johansen,* 2021 WL 7161969, at *7. "Instead, Plaintiff engaged in conversations" with DaBella. *Id*. "In addition to confirming the personal information submitted online, Plaintiff provided" DaBella "with his home address," email address, and provided "personal details" about his home. *Id*. [ECF No. 35, Zelmer Decl., Ex. 2, (Weingrad depo, Ex. 7, 43:6:-24, 44:15-19, 45:5-17, 46:1-13)]. Plaintiff even scheduled an appointment. [ECF No. 35, Zelmer Decl., Ex. 2, (Weingrad depo, Ex. 7, 46:14-20)].

As in *Johansen,* Plaintiff argues that he was investigating the call to determine who was calling him. *Id*. [ECF No. 54, ¶ 17]. However, in his Declaration, "Plaintiff also provides no explanation for why he engaged in a lengthy discussion" with the DaBella representative "and why Plaintiff provided so much personal information." *Id*. The "provision of this information was not

necessary to conduct any 'investigation,' and there was no reasonable basis for Plaintiff to provide this" "private information." *Id*.

Further, this type of 'bait-and-switch' playing along behavior results in "deceptive conduct gave [the defendant] an objectively reasonable basis for believing that [plaintiff] had established a business relationship with [defendant]. *Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17-cv-587, 2018 WL 3933472 (S.D. Ohio Aug. 16, 2018). Indeed, Plaintiff's consent and affirmation of the windows inquiry is established by DaBella stating that it was "reaching out to [him] in regards to a windows inquiry" and Plaintiff's answering the question of how many windows he was looking into as "10." [ECF No. 35, Zelmer Decl., Ex. 2, (Weingrad depo, Ex. 7, 43:6-12)]. Like in *Johansen,* although Plaintiff states that he did not visit the website [ECF No. 54 ¶ 24], he "provides no facts or supporting evidence, i.e., the internet browser history for his computer and/or other devices" or "other information regarding his whereabouts or activities to show that it was impossible for him to have submitted the online form." *Id*. The fact that the IP address reflects another address is not a reliable indicator of physical location, and provides no meaningful information about who submitted the online form . . . ." *Id*. (citations omitted). As such, courts have concluded that summary judgment is warranted under such circumstances as "no reasonable jury could find someone other than Plaintiff submitted the online request" and "provided consent to be called." *Johansen*, 2021 WL 7161969, at *7.

### ii. <u>The Text Messages and September 11 Call Should Not Be Considered as a Violation of the DNC Registry</u>

As indicated *supra* in Part III.C.i., Plaintiff consented to receive any calls. Moreover, Plaintiff's allegations as to any text messages[6] should be disregarded for purposes of violating the

---

[6] Moreover, although Plaintiff relies on the content of the text message in his Motion, that statement does not appear in Plaintiff's Declaration. (ECF No. 52, p. 32).

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 15

National DNC as it was never pled. Specifically, Plaintiff's allegations in the Amended Complaint on the DNC Class only include "telephone solicitation call(s)" as follows:

> National Do Not Call Registry Class: All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendant or any third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

[ECF No. 23, ¶ 62].    In addition, under the First Cause of Action, Plaintiff alleges violations of the TCPA for "making telephone calls" [ECF No. 23, ¶¶ 79, 82]. *Cf.*, with the Telemarketing Caller ID Class and Internal DNC Class which includes "telemarketing calls or text messages." *Id*. Therefore, text messages should not be considered for purposes of the First Cause of Action for the DNC Class. *Garvey v. Kellar Williams Realty, Inc*., No. 2:23-CV-00920-APG-DJA, 2024 WL 1857216, at *4 (D. Nev. Apr. 26, 2024) (denying motion to dismiss as moot because Plaintiff "includes facts about text messages he allegedly received" however, "these messages do not form the basis of either of his claims.").

> As Plaintiff himself recognized:

> Both *Top Healthcare* and *Gillam* turned on a single dispositive fact: the plaintiffs answered only one call and alleged nothing whatsoever about the content or purposes of the remaining missed or declined calls, **leaving the court no basis to infer those unanswered calls were solicitations**.

[ECF No. 52, p. 31] (e.s.). The same is true here. Plaintiff does not provide evidence of the content of the remaining calls, nor proof that the unanswered calls were solicitations. Rather, Plaintiff relies on statements that are not included in his Declaration, arguing that he "heard dead air before disconnection" on two calls. [ECF No. 52, p. 32]. Regardless, Plaintiff's statements only affirm that there was no solicitation on any other calls as it confirms Defendant did not engage in any solicitation to Plaintiff on any calls other than the one placed on February 7. This is precisely why the Pennsylvania Eastern District Court dismissed the Plaintiff's case in *Weingrad v. Top*

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 16

*Healthcare Options*, 2024 WL 4228149 (E.D. Pa Sept. 17, 2024) (citing *Gillam v. Reliance First Cap., LLC,* No. 21-4774, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) (call recipient failed to plausibly state a claim because blocked, missed, or declined calls are not "telephone solicitations" under the Act).

Finally, any call made after this lawsuit (the September 11 call), is raised in the Amended Complaint as a violation of the Internal DNC, not the National DNC Registry.[7]   Therefore, the September 11 call[8] should not be considered as part of the analysis of the violation of the DNC Registry.  In any event, because Plaintiff has not submitted sufficient evidence to demonstrate that he was registered on the DNC Registry on September 11, 2025 (or on any other date that Defendant called him), the September 11, 2025 call cannot be considered in violation of the DNC.  *See supra* Part III.A.i.

### D.  PLAINTIFF DOES NOT HAVE ARTICLE III STANDING.

Plaintiff does not present any meaningful evidence to support that he has suffered any injury.  His Declaration simply states that he was "harmed" and that the calls are "frustrating, obnoxious, and annoying" and that they "are a nuisance and disturbed [his] solitude."  [ECF No. 54, ¶ 36].  However, Plaintiff's actions in verifying consent and actively engaging in a conversation with Defendant and making an appointment conflict with Plaintiff's alleged statements of harm.

---

[7] In addition, although the Court denied the Defendant's Motion to Dismiss the Internal DNC Class at the *pleading* stage [ECF No. 40, p. 14], allowing for further discovery, the Court should take note that Plaintiff has not alleged more than one call from Defendant after the lawsuit was filed. [ECF No. 54, ¶¶ 20, 21].

[8] Also, the Amended Complaint states a very different rendition of the call than Plaintiff's Declaration as it simply states that "When Plaintiff asked why he was getting a call from DaBella, the DaBella representative said, "Well, looks like I . . .," and then hung up." [ECF No. 23, ¶ 40]. *Cf.*, ECF No. 54, ¶ stating that DaBella "asked if I was still interested in getting a quote for windows, and then hung up . . ." If Defendant simply hung up as stated in the Amended Complaint, then Defendant did not engage in any telephone solicitation. *Binetti v Colorado Technical University, Inc.*, No. 6:25-CV-01049-AP, 2026 WL 812365, at *3 (D. Or. Jan. 21, 2026) (citations omitted).

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 17

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (Article III standing only applies "absent consent" to call). *See supra* Part III.C.i. Further, Plaintiff has no Article III standing, where as here, only one call can be identified as having engaged in telemarketing. *Selby v. Ocwen Loan Servicing, LLC*, No. 3:17-CV-973-CAB-BLM, 2017 WL 5495095, at *3 (S.D. Cal. Nov. 16, 2017) (Article III standing under the TCPA requires calls to be made for telemarketing purposes).

Finally, Plaintiff cannot have standing to sue due based on a harm he alleges when he is well aware that very number is held out to the world on the internet inviting calls to him, and has done nothing to remove his number. *Shelton v. Target Advance LLC*, No. CV 18-2070, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019) (business numbers may not be registered on the DNC; thus, plaintiff has not suffered an injury in fact and lacks Article III standing). This is especially true, where as here, Plaintiff has affirmatively continued to file suit against companies utilizing the very same number that is the subject of this lawsuit and held out to the world as a business number. *Id*. (someone with generalized interest in punishing telemarketers does not suffer injury on that basis alone) (quoting *Leyse v. Bank of Am. Nat'l Asss'n*, 804 F.2d 316, 323 (3d Cir. 2015); *See*, fn 3. Further, Plaintiff cannot have standing to assert any harm, where as here, he did not register his number on the DNC, nor has he submitted sufficient evidence of any alleged attempts to re-register his number on the DNC. *See supra* Part III.A.i.

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 18

## IV.    CONCLUSION

WHEREFORE, DABELLA respectfully requests the Court to enter judgment in its favor on Plaintiffs' first claim and for such other relief as the Court deems just and advisable.

Dated:  April 27, 2026

Respectfully submitted,

Drew L. Eyman, OSB No.: 163762
Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, OR 97204-3229
T: (971) 213-1070
Email:  deyman@swlaw.com
*Counsel for Dabella Exteriors LLC*

-and-

/s/ Diane J. Zelmer, Esq.
Diane J. Zelmer, Esq., *pro hac vice*
BERENSON LLP
4495 Military Trial, Suite 203
Jupiter, Florida 33458
Tel:  (561) 429-4496
Fax: (703) 991-2195
Email:  djz@berensonllp.com
Secondary Email: hcc@berensonllp.com
*Attorneys for Dabella Exteriors LLC*

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT - 19