Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated, | |
| Plaintiff | Case No. 3:25-cv-00396-SI |
| vs. | |
| DABELLA EXTERIORS LLC | MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER |
| Defendant. | TCPA (47 U.S.C. § 227) DEMAND FOR JURY TRIAL |

**PLAINTIFF'S MOTION TO QUASH SUBPOENA
AND FOR A PROTECTIVE ORDER**

Plaintiff Leon Weingrad respectfully moves this Court, pursuant to Federal Rules of Civil Procedure 45(d)(3) and 26(c), for an order (1) quashing in its entirety the subpoena that Defendant DaBella Exteriors LLC served on non-party Toyota of Portland (the "Subpoena"), (2) in the alternative, modifying the Subpoena and entering a protective order limiting the scope, use, and disclosure of any material produced, and (3) awarding Plaintiff his reasonable expenses, including attorney's fees, incurred in bringing this Motion. This Motion is based on the following memorandum, and the discovery, records, and filings in this action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The attached Subpoena is a textbook abuse of Rule 45. Defendant did not direct it at any genuine repository of relevant evidence. It instead directed it at Plaintiff's *employer*. And it demands sweeping categories of material that have nothing to do with the claims or defenses in this case: every website Plaintiff visited on a workday, every application he used, every IP address "available" to him, *seventeen months* of his complete online activity "on any devices" at his work, all surveillance video of Plaintiff at his job on a particular day, and every communication "to or from" Plaintiff regarding his TCPA litigation and his supposed "profits." None of this is proportional to the needs of the case, and most of it is wholly irrelevant.

Compounding the impropriety, Defendant served the Subpoena even after Plaintiff, within two hours of receiving notice, informed Defendant that it intended to move to quash, asked if it was served, and took the position that serving the subpoena would be improper. Defendant served it anyway, *shortly after the parties had agreed to a discovery extension.* There was nothing exigent that justified racing to serve a contested subpoena on Plaintiff's employer.

Mot. Quash                                     1

What little Defendant might claim to need, IP address and online activity information, has already been obtained from other, less intrusive sources. Defendant already possesses the single IP address on which it has built its theory, which has crumbled. Understandably frustrated that is conspiracy theory has turned to shambles after deposing the verified owner of the IP address from which it claims the website visit originated, DaBella now continues in its pattern of harassing the Plaintiff by now seeking the aforementioned records from Plaintiff's employer.

The relevant internet service provider, Comcast, was already subpoenaed in this litigation, and the trail led to an unrelated third party who was deposed and disclaimed any connection to Plaintiff or to the opt in at issue. For purposes here, that individual also testified that he worked the night shift at a local bakery, not Toyota of Portland. Critically, not a single iota of evidence has implicated the Plaintiff's employment with Toyota of Portland in this litigation, and certainly not to justify the fishing expedition through Rule 45 that Defendant is seeking. Rather than pursue the actors actually responsible for the manufactured information, the lead seller, Richardson Marketing Group, and the website operator, SBBNet, both of which have refused to respond to subpoenas, Defendant has trained its discovery on Plaintiff's livelihood. The purpose and effect of the Subpoena are to harass Plaintiff and jeopardize his employment. It should be quashed in its entirety, and a protective order should issue.

## II.   FACTUAL BACKGROUND

Plaintiff brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), against Defendant DaBella Exteriors LLC. Plaintiff is employed by Toyota of Portland, which is not a party to this action. Defendant served the Subpoena on Toyota of Portland, commanding production of eight categories of documents. The subpoena is also

facially defective in that it does not list the civil action number. A true and correct copy of the subpoena and the information it requests is attached herein as Exhibit A.

At the parties' Local Rule 7-1 meet and confer on the issue, Defendant contends that the subpoenaed information is necessary for discovery into the IP address and purported consent information Defendant claims. But the IP address issue has already been run to ground through other sources. Defendant's case rests on evidence of an alleged website submission from a *single IP address*. The relevant internet service provider, Comcast, was subpoenaed to identify the subscriber associated with that address. The subscriber turned out to be an unrelated third party. That third party was deposed in this action and testified that he had nothing to do with the opt in at issue, nothing to do with Plaintiff, and worked night shift at a bakery. The IP address question, in other words, has already been answered through the proper channels, the ISP and the subscriber of record, and the answer exonerates Plaintiff.

The entities actually responsible for generating the purported consent, Richardson Marketing Group, the lead seller, and SBBNet, the website operator, are the natural and proper targets of discovery on the consent and origination issues. But both have refused to respond to subpoenas. Rather than seek its own discovery from those parties who have ignored Plaintiff, Defendant has redirected its discovery at Plaintiff's employer. The Subpoena is the latest in a course of conduct aimed at pressuring Plaintiff. In October 2025, DaBella dispatched goons to Plaintiff's home, which resulted in the police being called and DaBella trespassed from the Plaintiff's residence. Before that, a salesman was sent to Plaintiff's home in connection with the very appointment Plaintiff had cancelled when he first received the calls at issue, and looked through the windows of the Plaintiff's home while his wife was naked and at home, under the pretext he was "measuring" them.

Mot. Quash                                3

### III.  LEGAL STANDARD

On a timely motion, the court for the district where compliance is required *must* quash or modify a subpoena that "subjects a person to undue burden" or "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). The party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the court "must enforce this duty and impose an appropriate sanction," including "lost earnings and reasonable attorney's fees," on a party that fails to do so. Fed. R. Civ. P. 45(d)(1).

Both Rule 45 and Rule 26 govern the analysis. *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (applying both Rule 26 and Rule 45 standards to a motion to quash). "Courts have 'broad latitude' to issue a protective order to 'protect a party or person from annoyance, embarrassment, oppression, or undue burden.' This includes the need to prevent disclosure of information that 'could be damaging to reputation and privacy.'" *Pegatron Tech. Serv., Inc. v. Zurich Am. Ins. Co.*, 377 F. Supp. 3d 1197, 1202 (D. Or. 2019) (quoting *deBarros v. Walmart Stores, Inc.*, 857 F.Supp.2d 1109, 1113 (D. Or. 2012)). Under Rule 26(b)(1), discovery must be "relevant to any party's claim or defense and proportional to the needs of the case." The proportionality inquiry "focuses, at bottom, on analyzing the marginal utility of the discovery being sought." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 314 n.11 (D. Nev. 2019). "Overbroad subpoenas seeking irrelevant information may be quashed or modified." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006).

In assessing undue burden, courts weigh the burden on the subpoenaed party against the value of the information to the requesting party, considering the relevance of the information, the requesting party's need, the breadth of the request, and the burden imposed. *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014).

Mot. Quash                                          4

"Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight." *Id.* Separately, Rule 26(c) authorizes the court, for good cause, to issue an order protecting "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Courts have "broad latitude" to do so. *deBarros*, 857 F. Supp. 2d at 1113. Good cause requires a showing that "specific prejudice or harm will result" absent the order. *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011).

## IV.  ARGUMENT

### A.  Plaintiff has standing to challenge the Subpoena.

While a party ordinarily has no standing to quash a subpoena served upon a third party except as to claims of privilege, *California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 642 (E.D. Cal. 2014), a party may challenge a third-party subpoena where it has a "personal right or privilege" to its subject matter. *Wickersham v. Eastside Distilling, Inc.*, 692 F. Supp. 3d 1052, 1066 (D. Or. 2023).

Ninth Circuit courts have repeatedly found that an individual possesses a personal right with respect to information contained in employment records sufficient to confer standing. *See, e.g.*, *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 974 (C.D. Cal. 2010) (citing cases for the proposition that a party has a personal interest in subpoenaed bank records, personnel files, employment records, and email accounts). And in *Rugo v. Hardwick*, the court held that there was "no question" that Plaintiffs had standing to quash a subpoena directed to employment records and payroll information to their employers. No. 2:16-CV-00444-SMJ, 2017 WL 2623771, at *2 (E.D. Wash. June 16, 2017).

Plaintiff plainly holds a personal right in the (irrelevant and harassing) material the Subpoena demands, including his own time and employment records, the record of his own computer use and browsing, surveillance footage of himself, and communications concerning his

Mot. Quash                                    5

own litigation (to the extent that any exists to his employer). He therefore has standing under Rule 45. Independently, Plaintiff may move under Rule 26(c) as a party, since the court's power to protect a "party or person" from undue burden "is not limited to circumstances in which the burdened party is the party from whom discovery is sought." *Blotzer v. L-3 Commc'ns Corp.*, 287 F.R.D. 507, 510 (D. Ariz. 2012).

### B.   The Subpoena seeks irrelevant material that is not proportional to the needs of the case and must be quashed.

This is a TCPA action. The contested questions are who consented or opted in, who made or initiated the calls, and Defendant's responsibility for them. Measured against those issues, and particularly considering the limited probative value of the subpoenaed records and its severe *in terrorem* effect on the employment relationship, the Subpoena's demands collapse. Plaintiff will address each category in turn.

**Time records and surveillance video.** Whether Plaintiff clocked in, took breaks, or appears on his employer's security cameras on a single day has no bearing on consent, origination, or Defendant's liability. Workplace surveillance footage of a plaintiff at his job is the paradigm of irrelevant, harassing employer discovery. Its probative value is nil. The "marginal utility" of this material, *V5 Techs.*, 334 F.R.D. at 314 n.11, is zero.

**Online activity, applications, VPN, and IP addresses.** Even assuming some theory connecting Plaintiff's workplace internet use to the opt-in, these requests are grossly overbroad. Request 6 alone demands the complete history of "any website or online activit[y] on any devices" over a *seventeen-month* period, a sweep that bears no reasonable proportion to a dispute about a single opt-in event on a single date with respect to a single IP address. That is notwithstanding the fact that the IP address inquiry has already been run down to its core from the *very assignor of the IP address itself*, Comcast, who identified a third party who testified that

Mot. Quash                                    6

he was not involved in any sort of lead generation. The IP address inquiry was fully available and discovered from other sources, eliminating any need to burden the employer.

**Communications regarding Plaintiff's TCPA litigation and "profits".** Demanding from an employer automobile dealership every communication "to or from" Plaintiff "regarding the [TCPA,] telemarketing calls, his lawsuits under the TCPA[,] or profits in connection with telemarketing calls" is a fishing expedition untethered to any claim or defense. It is calculated to portray Plaintiff to his employer in a negative light and is wildly disproportional to the needs of this case. Defendant has adduced no evidence, and Plaintiff is certainly unaware of any, that he has had any communication with his employer regarding the TCPA, and expressly testified under oath that he did not tell any non-privileged third party (to include his employer) about this particular litigation. Such overbroad, untailored employer subpoenas are routinely quashed. *See, e.g.*, *Blotzer*, 287 F.R.D. at 510 (quashing overbroad employer subpoenas seeking, *inter alia*, inadmissible character material to demonstrate that plaintiff lied on an employment application and on time sheets); *E.E.O.C. v. Serramonte*, 237 F.R.D. 220, 223 (N.D. Cal. 2006) (quashing, in an employment action, records of work performance with other employers). Because the burden on a non-party is entitled to "special weight," *Amini*, 300 F.R.D. at 409, and the restriction on discovery "may be broader when a non-party is the target," *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980), the balance tips decisively toward quashing each request.

### C.   The information Defendant might claim to need is available from other sources and has already been obtained.

A court "may prohibit a party from obtaining discovery from a non-party if that same information is available from another party," and "[i]f the party seeking information can easily obtain the same information without burdening the non-party, the court will quash the subpoena." *Amini*, 300 F.R.D. at 409-10. A subpoena should not be enforced where the

Mot. Quash                                          7

information was "of uncertain relevance" and available from other sources. *In re Christian Life Ctr.*, 23 B.R. 770, 771 (B.A.P. 9th Cir. 1982); *see also Amini*, 300 F.R.D. at 409 (quashing where plaintiff had already produced equivalent information in a deposition).

Those principles are dispositive here. The IP address and online activity questions are obtainable, and have already been pursued, through far more appropriate channels. Defendant already possesses the single IP address on which its theory depends. Comcast, the ISP, was subpoenaed and traced that IP address to an unrelated subscriber who was deposed and disclaimed any connection to Plaintiff or to the opt-in. What's more, the actors genuinely responsible for the purported consent and who are in the best (and likely only) position to explain this discrepancy are Richardson Marketing Group and SBBNet. Defendant's remedy for their noncompliance with Plaintiff's subpoena is seek their own discovery *them*, not to burden Plaintiff's employer with a duplicative and unnecessary subpoena.

**D.    The Subpoena is a tool of harassment that threatens Plaintiff's livelihood. It should be quashed or, at minimum, governed by a protective order.**

Rule 26(c) exists precisely to stop discovery designed merely to annoy, harass, and oppress. *Priest v. Rotary*, 98 F.R.D. 755, 761 (N.D. Cal. 1983) (granting protective order in employment harassment case for testimony eliciting information about prior relationships). Commentators and courts recognize that "a subpoena sent to [a plaintiff's] current employer under the guise of a discovery request could be a tool for harassment and result in difficulties for [the plaintiff]." *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 256 (S.D. Ind. 2002); *see also* 9A Wright & Miller, Federal Practice and Procedure § 2459. In such a circumstance, a party seeking to subpoena the counterparty's employer must generally "present independent evidence" of a reasonable basis that the employer has material that bears on the case. *Id.* Here, the material

Mot. Quash                                            8

is not merely sensitive but irrelevant, which calls for the stronger remedy of quashing. *See Blotzer*, 287 F.R.D. at 509; *Serramonte*, 237 F.R.D. at 224.

The improper purpose is evident from the face of the Subpoena and the surrounding conduct. The Subpoena seeks surveillance video of Plaintiff at work and a recitation of his TCPA litigation, material whose only function is to signal to Plaintiff's employer that he is embroiled in litigation and to pressure him through his job. That is of a piece with the dispatch of goons to Plaintiff's home in October 2025 and the salesperson sent to his home in connection with the cancelled appointment. The resulting prejudice, the risk to Plaintiff's employment, reputational harm, and the disruption of Plaintiff's work with a non-party employer, is "specific prejudice" establishing good cause. *In re Roman Catholic Archbishop*, 661 F.3d at 424. The Court should quash the Subpoena, or at a minimum, modify the Subpoena and enter a protective order.

**E.    Plaintiff is entitled to his reasonable expenses and sanctions under Rule 45(d)(1).**

Rule 45(d)(1) imposes an affirmative, mandatory duty: a "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and "[t]he court … *must* enforce this duty and impose an appropriate sanction," which "may include lost earnings and reasonable attorney's fees." Fed. R. Civ. P. 45(d)(1). Defendant breached that duty twice over: by deploying a facially overbroad, irrelevant subpoena against Plaintiff's employer for an improper purpose, and by serving it under circumstances that confirm the harassing intent.

The circumstances of service are themselves a sufficient basis for sanctions. Within two hours of receiving notice of the Subpoena, Plaintiff advised Defendant it intended to move to quash. Defendant served it anyway. And it did so on shortly after the parties had agreed to extend discovery deadlines, eliminating any conceivable claim of exigency. Defendant thus

Mot. Quash                                              9

served a contested subpoena on a third-party employer with full knowledge that the purpose was disputed, that a meet and confer had been requested, that a motion to quash was forthcoming, and that no deadline required it to act. Taking "reasonable steps to avoid imposing undue burden," Fed. R. Civ. P. 45(d)(1), at a minimum required pausing to confer. Defendant's refusal to do so is precisely the conduct Rule 45(d)(1) is designed to deter.

That refusal cannot be squared with any legitimate need. Had Plaintiff issued an equivalent subpoena to a DaBella employee, to its principals, or to a family member of its ownership, demanding seventeen months of internet history, workplace surveillance footage, and every communication touching this litigation, Defendant would not have quietly complied. The asymmetry underscores that the Subpoena was issued not to obtain proportional discovery but to pressure Plaintiff through his livelihood. *See Priest*, 98 F.R.D. at 761. Accordingly, Plaintiff respectfully requests that the Court enforce Defendant's Rule 45(d)(1) duty and award Plaintiff the reasonable expenses, including attorney's fees, incurred in bringing this Motion.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court quash the Subpoena to Toyota of Portland in its entirety. In the alternative, Plaintiff respectfully requests that the Court modify the Subpoena and enter a protective order as described above. Plaintiff also requests that the Court award Plaintiff his reasonable expenses and attorney's fees under Rule 45(d)(1) and grant such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED AND DATED this May 26, 2026.

<div style="margin-left:50%">

s/Andrew Roman Perrong
Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038

</div>

Mot. Quash                                                10

215-225-5529
Lead Attorney for Plaintiff and the Proposed Class

## LR 7-1 CERTIFICATION

On May 26, 2026, Plaintiff's counsel Andrew Perrong conferred with Defendant's counsel, Diane Zelmer, via telephone. The motion is opposed.

Dated: May 26, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong

## CERTIFICATE OF PAGE COUNT

This brief complies with the applicable page-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains exactly 10 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: May 26, 2026.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: May 26, 2026.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

Mot. Quash                              11