Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
SNELL & WILMER L.L.P.
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
Telephone:  503.624.6800
Facsimile:  503.624.6888
*Attorney for Defendant, DABELLA EXTERIORS, LLC*

Diane J. Zelmer, Esq. (pro hac vice)
FL Bar No. 27251
BERENSON LLP
4495 Military Trail, Suite 203
Jupiter, Florida 33458
Telephone: 561-429-4496
Email: djz@berensonllp.com
*Attorney for Defendant, DABELLA EXTERIORS, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>       Plaintiff,<br><br>vs.<br><br>DABELLA EXTERIORS LLC,<br><br>       Defendant. | Case No. 3:25-CV-00396-SI<br><br><br><br>RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER |

## I.     SUMMARY OF ARGUMENT

Plaintiff has no standing to quash the subpoena directed to a third party, Toyota of Portland. First, he has failed to show that any privilege exists with respect to the requested documents. Second, Plaintiff has not been able to show any privacy interest that would prevent disclosures as his online activities at work. Indeed, any online activities performed at work would have occurred in a public forum where no privacy expectation exists. Even if Plaintiff had a privacy interest, Defendant's subpoena directed to Plaintiff's employer, Toyota of Portland, is entirely relevant, and not an abuse of process. It remains unknown *who* completed the online consent form. Plaintiff himself testified that he would have been at work at the time that the consent form was completed, and Plaintiff has not produced any discovery related to his online activities on the date in question on February 6, 2025. Discovery related to the party who did complete the online consent form on February 6, 2025 is central to this case.

Moreover, Plaintiff has entirely failed to show any undue burden. Certainly, there is no burden at all on Plaintiff, as he is not the party required to respond – Toyota of Portland is. Plaintiff has offered no evidence that Toyota of Portland faces any hardship in responding. Second, six of the eight requests in the Defendant's subpoena seek activities of the Plaintiff on one day -- February 6, 2025 – the date that the online consent form with Plaintiff's telephone number was completed. The other two requests seek discovery of online activities and communications of Plaintiff relating to other telemarketing lawsuits and profits. These discovery requests are entirely relevant to the issue of consent and whether or not Plaintiff is engaging in a profit making scheme. Therefore, Plaintiff's motion to quash should be denied.

## II.    MEMORANDUM

### A. *Legal Standard*

In general, the Federal Rules of Civil Procedure permit relatively broad yet tailored and proportional discovery of relevant material. *See generally* Rule 26(b).  Indeed, the Rules expressly allow the discovery of matter that may ultimately be inadmissible as evidence. *Id*. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.  Fed. R. Civ. P. 26(b)(1).

The Federal Rules of Civil Procedure promote a "broad and liberal" policy of discovery.  *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  Rule 45 governs discovery subpoenas directed at nonparties, *Del Campo v. Kennedy*, 236 F.R.D. 454, 457 (N.D. Cal. 2006), and provides that a subpoenaed non-party "may file written objections" or "file a motion to quash or modify [a] subpoena," *Thomas v. FAG Bearings Corp.*, 846 F. Supp. 1382, 1399 (W.D. Mo. 1994).

### B. *Standing*

The Ninth Circuit has not yet ruled on whether a party has standing to bring a motion to quash a subpoena served on a third-party. "The general rule, however, is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." *Harbord v. Home Depot U.S.A. Inc.*, No. 3:16-CV-2179-SI, 2017 WL 1102685, at *2 (D. Or. Mar. 24, 2017) (Simon, J.) (quoting. *California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D. Cal. 2014)).; *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997).  Plaintiff does not assert that any of the

RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH SUBPOENA - 2

documents subject to Defendant's third-party subpoenas are privileged, and indeed none of the requests seek privileged documents.

Some courts, however, also recognize that a party may move to quash a third-party subpoena upon a showing that there is an applicable privacy interest, even if that interest does not rise to the level of a privilege. *Id.; see also Broadcort Capital Corp. v. Flagler Securities,* Inc., 149 F.R.D. 626 (D. Colo. 1993); *Smith v. Midland Brake, Inc.,* 162 F.R.D. 683, 685 (D. Kan. 1995). Here, Plaintiff cannot show that he has an applicable privacy interest in the documents sought in the subpoena from his employer. The documents requested seek information and online activities he would have performed at work in a public place that has no expectation of privacy. Moreover, his online activities on the day that the consent form was completed, whether private or not, are necessary to show whether or not he had any connection involved with completing the online consent form. Accordingly, even if a privacy interest existed, the needs of the case weigh in favor of denying the motion to quash. *See, e.g., Estrada v. Avalon Health Care Hearthstone, LLC,* No. 1:21-CV-00688-CL, 2022 WL 4125644, at *2 (D. Or. Aug. 19, 2022) (denying motion to quash and explaining "Plaintiff's privacy interest in her employment records must be weighed against the defendants' need for the challenged information, particularly in light of the fact that . . . Plaintiff seeks to be the representative of an entire class and collective of plaintiffs asserting claims for relief against the defendants.").

Because the documents are neither privileged nor seek documents that impede on any applicable privacy interest, Plaintiff does not have standing to challenge the subpoena. Absent a specific showing of either a privilege or privacy interests, a court may not quash a subpoena duces tecum. *Harbord*, No. 3:16-CV-2179-SI, 2017 WL 1102685, at *2 (denying motion to quash since plaintiff did not invoke privacy interest).

RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH SUBPOENA - 3

C. *Undue Burden*

Plaintiff has no standing to challenge the subpoena due to undue burden,[1] but even if he did, Plaintiff entirely failed to demonstrate any undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv) ("subjects a person to undue burden" or "requires disclosure of privileged or other protected matter."). The Rule's prohibition recognizes that some degree of burden is permissible. The modifier "undue" limits the scope of the prohibition, indicating that only excessive or unjustified burdens are wrongful, while lesser, justified burdens remain allowable. After all, discovery "is often annoying, time-consuming, and expensive." *E.E.O.C. v. Neches Butane Prods. Co.*, 704 F.2d 144, 148 (5th Cir. 1983). Inconvenience alone, therefore, is not reason enough to quash a subpoena issued to a non-party. *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 407 (D.C. Cir. 1984) (joined by Scalia, J.) ("A reasonable inconvenience must be borne to further the goals of discovery—the making available to litigants all relevant and available information."). Further, good cause requires a showing that "specific prejudice or harm will result" absent the order. *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011).

First, Plaintiff has not sufficiently explained why the burden of the subpoena is undue, and it was his burden to do so. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995) (per curiam). The Movant's"[b]are assertions" that it is unduly burdensome is "insufficient to bar production." *See Cincinnati Ins.*

---

[1] *See, e.g., Anstead v. Va. Mason Med. Ctr.*, 2023 WL 34505, *2 (W.D. Wash. 2023) ("This Court agrees with other district courts in the Ninth Circuit that a party generally lacks standing to object to a subpoena served on a third party on grounds of relevance or undue burden."); *Thao v. Lynch,* 2023 WL 2480860, *2 (E.D. Cal. 2023) (the "general rule" is that a party "lacks standing to object to [third-party] subpoenas on grounds of relevance or undue burden"); *Jiae Lee v. Dong Yeoun Lee*, 2020 WL 7890868, *5 (C.D. Cal. 2020) ("[O]nly the party to which the subpoena is directed has standing to object to the requests on the grounds that they are irrelevant, vague, overbroad, duplicative, unduly burdensome, etc.").

*Co. v. Fine Home Managers, Inc.*, 4:09-cv-0234-DJS, 2010 WL 2990118, at \*1 (E.D. Mo. July 27, 2010) (citing *St. Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511–12 (N.D. Iowa 2000)). They needed to provide "factual evidence regarding the time or expense required" to comply with the subpoena. *Ahlgren v. Bilkey*, 0:19-cv-0306-LIB, 2019 WL 13218326, at \*7 (D. Minn. June 14, 2019) (citing *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002)). They did not do so. *See Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1270 (11th Cir. 2013) ("Statements by counsel in briefs are not evidence." (quoting *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980))). Plaintiff boldly states that the subpoena is meant to "harass" and "jeopardize his employment" but submits no factual evidence how a legally issued subpoena issued to an employer could jeopardize his employment. Because Movant's "claim of harm" is based only on "stereotypical and conclusory statements," he has failed to meet his burden. *See Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999).

Further, the subpoena requests are narrowly tailored. Six of the eight requests in Defendant's subpoena seek activities of the Plaintiff on *one day* – February 6, 2025 – the date that the online consent form that Defendant relied upon was completed. The other two requests seek discovery of online activities of Plaintiff relating to his other telemarketing lawsuits and profits. Thus, these requests are not unduly burdensome.

D. *The Subpoena is Relevant to Defendant's Defense of Consent.*

Rule 45 "does not specifically identify irrelevance as a reason to quash a subpoena." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020). Furthermore, a party does not have a standing to challenge a subpoena on the grounds of relevancy. *See*, fn 1. Nevertheless, the documents requested in the subpoena are relevant to the Defendant's defense of consent.

RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH SUBPOENA - 5

First and foremost, at the deposition of Plaintiff, Defendant's counsel specifically asked Plaintiff where he was at the time and date that the online consent form was completed.  Plaintiff responded that he would have been at work.  [ECF No. 35, Zelmer Decl., Ex. 1 (Weingrad depo 33:20-36:16, Ex. 6)].   Plaintiff stated:

> **Q.  (BY MS. ZELMER:)· Do you know where you were on February 6, 2025?**
> · · · · · · · · · MR. PERRONG:· Objection to form.
> · · · · · · · You can answer to the extent you know.
> · · · · · · · · THE WITNESS:· What time?
> **Q.  (BY MS. ZELMER:)· It would have been around 8:15 a.m. pacific standard time?**
> · · · A.· · That's around the time I'm at work.

Further, evidence of Plaintiff's online activities was first requested from Plaintiff directly. However, Plaintiff testified that – in response to the Defendant's request for production – he did not conduct any investigation to determine what online activities that he performed on February 6 or February 7.  [ECF No. 35, Zelmer Decl., Ex. 1 (Weingrad depo 71:7-23)].  Certainly, Plaintiff could have sought this information from his employer.  Though supposedly not in his possession, the documents remain in Plaintiff's "control" under Federal Rule of Civil Procedure 34. *See* Fed. R. Civ. P. 34(a)(1). "Control" under Rule 34 does not require actual physical possession of the documents. Rather, documents are under a party's control when that party has the right, authority, or practical ability to obtain them. *See Mirlis v. Greer*, 80 F.4th 377, 382 (2d Cir. 2023); *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 254 (D.C. Cir. 2005); *see also* 8B Wright & Miller's Federal Practice & Procedure § 2210 (3d ed.) ("Inspection can be had if the party to whom the request is made has the legal right to obtain the document, even though in fact it has no copy.").  Since these documents are the subject of a direct discovery request to Plaintiff anyway, the burden to provide them cannot be undue.  To

RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH SUBPOENA - 6

date, Defendant has received zero discovery as to the online activities or to the devices or websites that Plaintiff visited on the date that the consent form was completed.

This discovery requested by subpoena is entirely relevant to determine whether Plaintiff had any connection with the completion of the online consent form. Indeed, Plaintiff ***admits*** that the issue of consent is a continuing discovery issue. In fact, he references subpoenas that he issued to SBB.net and Richardson Marketing Group – and while accusing them of being the "actors actually responsible for the manufactured information" -- presents no evidence to substantiate that accusation. [ECF No. 72, p. 3]. Plaintiff appears to only agree on a one-sided discovery track, however, that is not the way the fair and unbiased discovery procedure works. If Plaintiff is allowed to pursue his discovery on the question of consent and who is "responsible for the manufactured information" certainly Defendant is equally entitled to serve discovery on those actors that may have had an incentive to do so, including the Plaintiff.

Further, the discovery is relevant to Defendant's defense that Plaintiff does not have standing because he engaged in a profit scheme. *See Stoops v. Wells Fargo Bank, N.*A., 197 F.Supp.3d 782, 797, 800–06 (W.D. Pa. 2016) (summary judgment granted where plaintiff welcomed calls to profit from bringing TCPA claims and therefore did not have Article III constitutional or "prudential" standing as the calls were not "unwanted"); *see also Shelton v. Target Advance LLC*, No. 18-2070, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019) (summary judgment denied on standing grounds because additional discovery was needed, but strongly suggested that if plaintiff's sole purpose was to "drum up TCPA litigation by inducing … robocalls," then plaintiff's claims would be barred); *Laccinole v. Inter. Union of Police Assoc.*, 638 F. Supp. 3d 110, 116 (D.R.I. Oct. 26, 2022) (accord and dismissed for lack of standing). Defendant has filed at least 35 TCPA cases; 18 of those cases have been dismissed or settled on

an individual basis, and none of them have been certified as a class.  Indeed, this type of litigation behavior suggests that Plaintiff is leveraging class allegations as a method to extract individual settlements.  *Morris v. Unitedhealthcare Ins. Co.*, No. 415-CV-00638, 2016 WL 7115973, at \*6 (E.D. Tex. Nov. 9, 2016) ("TCPA suits have, in many instances, been abused by serial litigants; and going forward each such case merits close scrutiny. . . ."); *see also, Human v. Fisher Investments*, 2025 WL 2614039 (E.D. Miss Sept. 10, 2025) (finding that filing of over 65 actions in a one year period and the idea that Human received so many unsolicited calls "taxes the credulity of the credulous").

This is *not* a case where Defendant called Plaintiff without consent to do so.  Rather, this is a case where there was a consent form submitted with Plaintiff's telephone number, and Defendant simply called Plaintiff in response to an online inquiry received.  In response, Defendant did call Plaintiff, and Plaintiff voluntarily expressed an interest and made an appointment.  Courts have allowed such discovery of Plaintiff's online activities and devices, and permitting discovery of a TCPA Plaintiff's devices has, in certain cases, uncovered fraud.  In *Human v. Fisher Invs., Inc.*, No. 4:24-CV-01177-MTS, 2025 WL 2614039, at \*2 (E.D. Mo. Sept. 10, 2025), the Court permitted a forensic examination of the Plaintiff's phone.  *Id*.  That evidence revealed that the plaintiff was fraudulently submitting requests for contact from dozens of different companies using a dozen different fake names.  *Id*.  Similarly, in *Woodard v. Health Insurance Alliance LLC*, No. 1:23-cv-02630 (N.D. Ill.) counterclaims were asserted, alleging that Woodard or someone acting on her behalf submitted an opt-in form to solicit calls she sued over.  *See also*, *Taylor v. LaserAway*, 25-cv-02157, ECF No. 16 (Aug. 22, 2025) (explaining indicia of fraud in case); *Wilson v. Freeway Insurance Services of America, LLC*, Case No. 6:25-cv-1869-MC, ECF No. 19 (D. Or. May 16, 2026) (allegations of fraud raised).  One way that this information is obtained is

RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH SUBPOENA - 8

through discovery of devices used by plaintiff.  Similarly, here, the devices used by Plaintiff – whether at home or at work or any other location -- are entirely relevant to determine whether or not his online activities reveal any connection with the completion of the online consent form.

E.      *The Court Should Deny Any Request for Sanctions.*

Plaintiff's request for sanctions is entirely improper; Defendant has not imposed any undue burden or expense.  The subpoena issued to Plaintiff's employer is entirely relevant to this action, and Plaintiff has failed to provide any evidence of his online activities or devices, which discovery is directly attributable to the online consent form and any profit making scheme.

Moreover, as previously indicated, the Plaintiff lacks standing to quash the subpoena. Further, the subpoena was already in process of service at the time that Plaintiff indicated he wanted to confer on the subpoena, and the subpoena was already served at the time of the conferral on May 26, 2026.  Plaintiff did not ask Defendant *not* to serve the subpoena; rather, he asked whether or not the subpoena had already been served.  At the meet and confer, Plaintiff was not willing to consider conferring about rephrasing any requests, and disputed the entirety of the subpoena.

Finally, Defendant has advised Plaintiff's employer that a motion to quash was filed and to hold on production of any responsive documents pending a decision by the Court.  Defendant received objections from the employer on each and every discovery requests, and has not obtained any documents in response to the subpoena to date.  Thus, any requests for sanctions should be denied.

F.      *Plaintiff's Unsubstantiated Factual Statements Should be Stricken*

Plaintiff continues to allege that:

In October 2025, DaBella dispatched goons to Plaintiff's home, which resulted in the police being called and **DaBella trespassed from the Plaintiff's residence**.

RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH SUBPOENA - 9

Before that, a salesman was sent to Plaintiff's home in connection with the very appointment Plaintiff had cancelled when he first received the calls at issue, and looked through the windows of the Plaintiff's home while his wife was naked and at home, under the pretext he was "measuring" them.

Defendant has sought written discovery from Plaintiff to justify this assertion and requested all video evidence of this incident, and is still is waiting for responses. Defendant denies that at anytime the police "trespassed [Defendant] from the Plaintiff's residence." Defendant further denies that there was any reason for Plaintiff or Plaintiff's counsel (Mr. Perrong who was also at the Plaintiff's residence) to call the police on Defendant, or approach Defendant while Defendant was already off property. Defendant is not aware of any police record identified with this incident. As to the prior scheduled appointment, it was *Plaintiff* who invited Defendant by initially making an appointment for Defendant to come to his property.[2] Defendant disputes such bold accusations made against Defendant (that have no relevancy to the dispute in the current motion), and requests any such unsubstantiated statements to be stricken.

## III.    CONCLUSION

WHEREFORE, DABELLA respectfully requests the Court to deny Plaintiff's Motion to Quash, and for such other relief as the Court deems just and advisable.

Dated:  June 9, 2026                           Respectfully submitted,

/s/ Diane J. Zelmer, Esq.
Diane J. Zelmer, Esq., *pro hac vice*
BERENSON LLP
1242 SW Pine Island Road, Suite 42-414
Cape Coral, FL 33991
Tel:  (561) 429-4496
Fax: (703) 991-2195
Email:  djz@berensonllp.com

---

[2] It is surprising that Plaintiff is now disclosing such statements regarding Plaintiff's wife in public record when Plaintiff insisted that such statements be redacted from the Plaintiff's transcript. [ECF No. 35, Zelmer Decl., Ex. 1 (Weingrad depo 55:11-15)].

Secondary Email: hcc@berensonllp.com
*Attorneys for Dabella Exteriors LLC*

*-and-*

Drew L. Eyman, OSB No.: 163762
Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, OR 97204-3229
T: (971) 213-1070
Email: deyman@swlaw.com
*Counsel for Dabella Exteriors LLC*

RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH SUBPOENA - 11