**UNITED STATES DISTRICT COURT**
**FOR THE DISCTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| **LEON WEINGRAD**, *on behalf of himself and all others similarly situated,*<br><br>*Plaintiff,*<br><br>v.<br><br>**DEBALLA EXTERIORS LLC.**<br><br>*Defendant.* | Case No: **3:25-cv-00396-SI**<br><br>Presiding:<br>**Hon. MICHAEL H. SIMON** |

# DECLARATION OF EXPERT AARON WOOLFSON

I, Aaron Woolfson, state and declare as follows:

1. I have been retained by the Plaintiff to determine whether there is a reliable methodology for analyzing the call records in this lawsuit reflecting the calling done by or on behalf of the Defendant Dabella Exteriors, Inc. ("Dabella Exteriors" or "Dabella" or "Defendant" as captioned).

2. More specifically, I have been asked to opine whether there is a reliable method to identify which calls and texts in Call Detail Records ("CDRs") maintained by or on behalf of Defendant were sent to, or placed to telephone numbers that were on the national Do Not Call ("DNC") list for more than thirty (30) days and how many of those numbers had received two (2) or more texts or calls within 365 days of one another.

3. Using methodologies that I have applied in over a hundred matters using the DNC list it is my opinion that there is a reliable method to identify texts and calls

with other particular criteria based on the additional types of information included in the CDRs, records of leads, and/or other records maintained by or on behalf of Defendant or in any available database.

4. As described in this Declaration, it is my conclusion that there is a reliable method to identify from the CDR's that have been, or will be, produced in this matter, the numbers to which calls or texts had been sent and whether those numbers had been contained within the National DNC list for more than thirty (30) days, and of those numbers, how many texts or calls had been made or placed to those numbers within 365 days of one another.

5. It is also my opinion that there is a reliable method to identify texts with other particular criteria based on the additional types of information included in the CDRs, records of leads, and/or other records maintained by or on behalf of Defendant or in any available database.

6. This report reflects the results of my study of the underlying facts, independent analysis of the data and documents provided by the Defendant and third parties. My rate is $440.00 per hour for expert engagements, and $675.00 per hour for depositions, trial, and arbitration appearances.

7. I am personally familiar with the matters that are contained within this declaration, and if called to testify, I can accurately and competently testify as to them.

**Qualifications and Expert Engagements.**

8. I have over 25 years of experience in developing and analyzing databases and telephone systems and establishing the interfaces between telephone systems and the networks that convey calls. I have implemented call recording and call data collection and retention systems for commercial, government, aerospace, telecommunications, and payroll industries. My professional experience includes serving as an expert witness in cases where I evaluated the technical aspects of telephone systems, including whether they had a random or sequential number

generator.

9. My qualifications and curriculum vitae are attached to this expert report as Exhibit 1. A list of the other cases in which I have testified as an expert at trial or by deposition during the previous four years is attached as Exhibit 2. I have been qualified by both Federal and State courts.[1] My testimony has been relied upon by courts in both individual and class actions,[2] by plaintiffs and defendants. My opinions have also been relied upon in arbitrations, including TCPA claims.

10. I was the developer of the automated Verification of Deposit ("VOD") and Verification of Mortgage ("VOM") system that was used by Chase, Wells Fargo, Bank of America, as well as some regional banks and mortgage lenders, to facilitate the review of mortgage applications by call center staff. These systems required a great deal of integration between the telephone systems and the financial institution's computer systems, and relied heavily on my deep understanding of database and time keeping integration technologies. It also required me to build interfaces to the ACH[3] exchanges, and with Global Payments and other large automated electronic inter-exchanges of financial information. Other processes necessitated integrating fax and OCR[4]

---

[1] *ABM Industries Overtime Cases* (Case No JCCP 4502, San Francisco Superior Court) (2017) 19 Cal. App. 5th 277, footnote 5, at page 8, ("[T]here was evidence in the record that Woolfson had previously qualified as an expert in both state and federal court ...") *(ABM Industries Overtime Cases, A132387, A133077, A133695, 19 Cal. App. 5th 277 (Dec. 11, 2017; pub. ord. Jan. 10, 2018)).* (Exhibit 3).

[2] "The Court notes that Mr. Woolfson's expert report appears to include information related to the merits of the case in addition to class certification issues." *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, Case No 3:13-cv-01556-JLS-DHB (S.D. Cal.), Sep. 21, 2015 ECF 132 at page 3.

[3] Automated Clearing House ("ACH").

[4] The OCR ("Optical Character Recognition") process as integrated into the automatic monitoring of telephone calls in real time to determine whether the call was a voice or fax call, and if a fax call, decoding the contents of each fax-page into machine readable (footnote continued)

capabilities as well as enhanced call routing – inbound and outbound – including predictive elements of enhanced call processing, and the precise timings of these events.

11. I am the inventor of "Canvas", a programming language that I developed for interfacing between telephone systems and telephone networks, capable of processing hundreds of thousands of calls a day. To date, hundreds of millions of calls have been handled by Canvas on behalf of call centers, financial institutions, conference calling companies, and organizations offering Interactive Voice Response ("IVR") services. [5]

12. I have developed highly available, upwardly scalable databases for use in the telecommunications industry. The databases and telephone systems that I have personally developed and/or coded are used by telephone companies and call centers throughout the United States and Canada to catalogue and index various customer-calling activities. Some of the companies that have used my databases and/or telephone equipment (which I personally created and manufactured) have included Japan Telecom, Experian, Bank of America, Wells Fargo Bank, JP Morgan, Bank of the West, Cogent Communications, Zone Telecom (ANPI), Aion Networks, Smartcall Conferencing, and First National Collection Bureau, Inc., and the United States government, including the Department of Justice.

13. Through my hands-on work experience in developing databases and telephone systems, I have become very familiar with the technology related to telephone systems and their interfaces with the networks through which calls are processed,

---

text *while* a fax was being transmitted to the bank's computers for integration with a database.

[5] IVR is a technology that allows a computer to interact with humans through the use of voice and/or DTMF tones input via a telephone keypad. DTMF ("Dual Tone Multi Frequency") is the signal you generate when you press a telephone's touch keys.

received, and transmitted. I am also familiar with how dialing systems work, and how telephone systems handle inbound and outbound calls.

14. I have been responsible for the design and development of specialized hardware and software systems that are highly dependent upon the capabilities of the computers upon which they run, and are in use at mission-critical applications, including Patriot Missile (SAIC, Patriot RTOS), Air Traffic Control Systems (Kongsberg Geospatial Corporation), and Point Lepreau Nuclear Generating Station, New Brunswick, Canada (Energié NB).

15. I held a CPCN[6] ("Certificate of Public Convenience and Necessity") – a special license and compliance certification granted to companies that provide essential public services, such as telephone corporations. The California Public Utilities Commission granted my most recent CPCN on July 18, 2017. This was a reissue of my initial CPCN granted to TelSwitch on June 10, 1994, which I held for approximately 18 years before taking a hiatus from providing public telephone services. The license originally granted to me in 1994 allowed me to interconnect the equipment that I designed, built, and programmed with the phone network for the purpose of providing wholesale and retail telecommunications services.

16. I have also been qualified as an expert in matters involving the TCPA and have previously been engaged on behalf of defendants and plaintiffs to analyze records of calls (and texts).

17. For example, in *Wright v. eXp Realty, LLC*, No. 6:18-cv-01851-PGB-EJK (M.D. Fla.), I was engaged on behalf of the defendant in a case in which the Court

[6] Certificate of Convenience and Necessity U-5410-C granted to TelSwitch, Inc. on 06-10-1994 (Decision 94-06-022). Reissued as U-7327-C on 07-18-2017 (Decision 17-07-009).

certified a class of consumers who received pre-recorded calls to their cellular telephone numbers.

18. I am not aware of any court that has issued an opinion that I was not qualified as an expert related to my opinions on the use of telephone systems or involving analysis of call records.

**Expertise Specifically Related to Database work.**

19. I was relied upon as an expert witness in the case of *Hines v. KFC*, filed in the United States District Court, Southern District of California (Case No. 09cv2422 JM (POR). In *Hines*, the court granted plaintiff's motion for class certification and certified plaintiff's meal period and rest break claims based on my analysis after finding that I am an "expert in the compilation and analysis of databases …."

20. I was expert for the plaintiffs in *Albert H. Cicairos, Frank A. Daniel, Richard Wheeler and George Thompson v Summit Logistics, Inc.* and *Kenneth Bluford v Safeway Stores, Inc.* (Case No. CV014837 [Consolidated with Case No. CV028541] Superior Court of California, County of San Joaquin). I have been told that, among other cases, *Bluford v Safeway, Inc.* established the framework for what eventually became known as AB1513 and Labor Code section 226.2, which governs compensation in the piece rate context.

21. In addition, I served as an expert in the *ABM Industries Overtime Cases* (Case No JCCP 4502, San Francisco Superior Court). Relying heavily upon my expert finding, the Appellate Court reversed the trial court's ruling and certified the plaintiffs' proposed wage and hour classes. The court noted that there was sufficient evidence contained within my expert report to support certification of the classes and subclasses, and that my experience was sufficient to allow my expert report to be admitted as evidence for that purpose. (Exhibit 3).

22. I was also expert in *Beatriz Aldapa And Elmer Avalos v. Fowler Packing Company, Inc., Ag Force, LLC, Fowler Marketing International LLC,* (Case No. 1:15-CV-00420-DAD-SAB ED, Ca.), where the employer used Datatech to maintain an

accounting of piece-work and non-piece-work hours worked by agricultural workers. The court order in *Fowler Packing* is attached as Exhibit 4.

23. I have applied similar methods to structure large amounts of unstructured data on behalf of defendant *Verizon Wireless* and *Collecto* in *Lofton v. Verizon* (Case No. 3:13-cv-05665) and *Lofton v. Collecto* (Case No. 4:13-cv-03293-YGR). In *Lofton v. Collecto*, I was ordered by the District Court of the Northern District of California to reconstruct a database from information that was in defendant Verizon's possession that Plaintiff stated was "un-structurable" and useless for purposes of analysis and determination of the results of calls that took place. I was able to complete the re-structuring of Verizon's data so that the parties could reach a successful settlement. The portion of the Court's Order from *Lofton v. Verizon* instructing me to create a database from Verizon's unstructured data is attached as Exhibit 5.

24. I engaged on behalf of plaintiff Michael Anthony in *Michael Anthony v. The Federal Savings Bank, National Bancorp Holdings, Inc. and FDE Marketing Group LLC* (Case No. 1:21-cv-02509, ND, Il, Eastern Div.) in which I undertook a comprehensive analysis of the Defendants records in support of class certification. The order granting class certification is attached as Exhibit 6.

25. I was also engaged on behalf of plaintiff Robert Mason in *Robert Mason et al v. Spring EQ, LLC* (Case No. 5:24-cv-01833-MWC-AGR, CD, Ca). In the court's order denying defendant's motion to decertify the class, the course stated that the plaintiff has sufficiently identified a method by which an expert can separate residential from business numbers and that "The fact that most of the numbers identified by Defendant did not appear in the post-Waterfall dataset, as Mr. Woolfson attests, further suggests the method is reliable. Defendant's new evidence does not compel a different result" (ECF 166, page 12 of 14). The court's order is attached as Exhibit 7.

**Materials and Documents Reviewed and Relied Upon.**

26. In conducting my analysis and preparing my conclusions and

opinions, I relied upon the following materials and information:

**I. Materials that I relied upon:**

(a) The Amended Complaint, (ECF 23).

**II. Electronic database resources that are available:**

(a) FTC's National Do-Not-Call Registry ("DNC") Database.

(b) Index of the North American Numbering Administrator's Numbering
Plan Area Codes that are TCPA-eligible, sorted by location ("Numbering Plan, Appendix A").

(c) The National Exchange Carrier Association ("NECA") North American Numbering Plan 1000-block assignments database.

(d) External, publicly available databases, including WDNC[7,8] for use in identifying the type of line (and the carrier) and the Federal TCPA-eligible area code list that is published daily by the FTC[9].

---

[7] FCC order FCC-15-35A1 (03/27/2015) explicitly mandated *continued* availability of wireless DNC data for all purposes related to the TCPA. (¶142). The historical information *does not* contain subscriber information, only carrier of record and line type. Before number portability, this would have been a simple task of looking at the Local Exchange Routing Guide ("LERG"), or absent access to the LERG, finding the area codes and prefixes from an online collection of national phone books.

[8] In *Perrong v Call Identified as Connor* (Case No. 1:22-cv-04479-CPO-EAP, DC, New Jersey, Camden Vicinage), "plaintiff has queried the database of iConectiv, the company charged by the Federal Communications Commission to administer the Number Portability Administration Center, which is the master database which lists which telephone provider services a particular number, among other information required to route telephone calls to the proper provider" (ECF 3) TelSwitch, Inc. was not responsible for providing the data in *Perrong.*

[9] TelSwitch, Inc's FTC Organization ID is 10159990-70991, Subscription Account Number (SAN) 10376173-476173-26.i

**Methods and Tools Used to analyze Records.**

27. I create and analyze databases using Structured Query Language (SQL). A database is a computerized compilation of data organized into tables, each table having columns (attributes), with column headings, and rows of information. Tables that share at least one attribute in common are "related." Tables without a common attribute may still be related via other tables with which they do share a common attribute. The pathways relating those separate tables are called "joins." Once tables have been related by a join, a user may view the combined information in the joined tables to derive new and/or useful information. To access such information, a user sends queries to the database, which executes the queries and retrieves the requested information from the tables in the database. A database, however, only recognizes queries written in complex "query languages." The most common query language is SQL. A proper query in this language consists of one or more "clauses." Common types of clauses are SELECT, WHERE, FROM, HAVING, ORDER BY, and GROUP BY clauses. Thus, to compose a proper inquiry, a user must understand the structure and content of the relational database as well as the complex syntax of the specific query language.

28. When analyzing call records, I start by creating a database to serve as a repository for the call records and any other related records. I then create database tables to accumulate the results of the associated DNC queries that I run against the FTC's national DNC database – queries that tag each call with a "*yes*" in the field indicating that the telephone number been on the DNC registry for more than thirty (30) days.

29. Finally, if asked, I also then create a set of tables to accumulate the results of the other identifiers related to the telephone numbers, such as *isPorted*, *isWireless*, *mostRecentPortDate*, *state*, and *operating (telephone) company*, that can be used to identify whether a number was wireless, or wireline, and if ported, the date when the number had moved, or transitioned from one carrier to another.

30. By using a set of standardized SQL queries, I am able to tag each record according to (a) any data field contained in the text records, including the telephone number called, the date of a telephone call and its' duration (and/or) the disposition of any text; and, (b) any data field contained in any associated leads records; and, (c) whether the telephone number to which the text had been sent was on the national DNC list, and if so, whether the number had been indicated on the DNC list for more than thirty (30) days as of the transmission; and, (d) whether two (2) or more calls had been placed to, or texts has been sent to, that particular number within 365 days while the number had been on the national DNC list for more than thirty (30) days.

31. This is precisely the task that I will undertake for Plaintiff in this matter, guided by my many years of experience with these precise tasks. I construct all SQL statements myself and am the sole author of all work product associated with the methodologies I propose.

**Steps I will take to Organize and Analyze the Calls and Texts.**

32. I will start by opening each of the files that contain call records data (collectively referred to as "Call Detail Records" or "CDRs"). I do this to (a) determine the format that the records are stored in, and then (b) to determine what pre-processing that I would need to conduct in order to achieve an import of the texts.[10]

33. I will then import the CDRs file into SQL database tables using Microsoft SQL™ Enterprise Manager. I will then place the totality of the t into a database called *dbo.calls*, upon which I will run SQL statements.

34. I will then apply a set of filters to include only texts or calls that:

a. that were made either (a) to a number that contained

[10] I typically do not need to apply any pre-process to the CDRs, as most CDRs originate from electronic call data capture systems that are already Electronic Data Interface ("EDI") capable.

precisely ten digits and started with a 2 through 9, or (b) to a number that contained precisely eleven digits and started with a 1 followed by a 2 through 9; and,

b. that were contained within structurable data; and,

c. that had an associated date; and,

d. that contain the disposition indicating the transmission of a text or call; and,

e. Whether the telephone number was on the national DNC for more than thirty days as of the date of the transmission; and,

35. To identify which telephone numbers were sent text messages were on the national DNC list for more than thirty days, I use a database called *isDNC*, which contains FTC's DNC lists going back nearly ten years. Each telephone number is compared against the contents of the DNC files to identify whether the telephone number to which the text was sent was on the DNC list for more than thirty (30) days.

36. I accomplish this by comparing the dates on the calls and/or texts, against the inventory of telephone numbers on the FCC's national DNC list as of the date of the text or call, as well as the list that was from a date greater than thirty (30) days *before* the call or text upon. By doing so, I am able to identify telephone numbers to which texts were sent or calls were placed while the number had been on the national DNC list for more than thirty (30) days.

37. By performing these sets of queries, I am able to identify which texts were transmitted to telephone numbers that were on the DNC for more than thirty (30) days..[11]

**Conclusions.**

---

[11] In 2025, TelSwitch, Inc. successfully tagged 1,175,181,153 call records with isDNC30 status. Between 01/01/2026 and 05/10/2026, TelSwitch, Inc successfully tagged 1,001,008,648 records.

38. According to the national DNC list, the Named Plaintiff's number ending in -6495 was on the national DNC list continuously since at least 08/28/2021. (*See* Exhibit 8). I will apply the same methodology as that which I applied to the named Plaintiff's number ending in -6495 to all telephone numbers appearing in the Defendant's records.

39. It is therefore my opinion that using the information contained in the national DNC list, and comparing it to the call records maintained by or on behalf of Defendant, I will be able to reliably identify those texts or calls in the records that had been placed to, or sent to all telephone numbers of so similarly situated numbers that had been on the DNC list for more than thirty (30) days and received two (2) or more calls within 365 days.

40. And it is also my opinion that there is a reliable method to identify calls and texts with other particular criteria based on the additional types of information included in the CDRs, records of leads, and/or other records maintained by or on behalf of Defendant or in any available database.

41. Finally, I also understand that there is a reliable method to identify the individuals to whom telephone numbers belong. This is because wireless and wireline carriers maintain historical records that can be used to identify the residential or business classification for any particular phone number, as well as contact information, which can be obtained from a number of sources[12], including the carriers themselves.

---

[12] I understand that Carla Peak, expert for Saggio in *Jason Saggio et al v. Medicredit, Inc.* (Case No. 4:22-cv-01005-JAR, ED, Mo, Eastern Div.) described a method that could be reliably applied to further identify those proposed putative class members, using data from PacificEast, Nexxa, or Lexis Nexis" to identify residential class members. *See* decl. Peak, doc. 108-1 at 2-13 (*Jason Saggio et al v. Medicredit, Inc.*) and depo. Peak, doc. 108-2 (*Jason Saggio et al v. Medicredit, Inc.*) The court's order (ECF 126) is attached as Exhibit 9.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed May 18th, 2026 in Pleasant Hill, California.

Aaron Woolfson